1  ROBERT E. NICHOLS (SBN 100028)
2  RICHARD W. COVERT (SBN 34582)
   713 Key Route Blvd.
3  Albany, California 94706
   Telephone: (510) 710-7033
4  renichols01@comcast.net

5  *Attorneys for Plaintiff,*
   *The Lions Club of Albany, California*
6

7

8                    **UNITED STATES DISTRICT COURT**

9              **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11

12                                              Case No. 3:22-cv-05377-WHO

13  **THE LIONS CLUB OF ALBANY,**              **PLAINTIFF, LIONS CLUB OF**
    **CALIFORNIA, A** Nonprofit Corporation,    **ALBANY'S REPLY BRIEF IN SUPPORT**
14                                              **OF MOTION FOR PRELIMINARY**
                  **Plaintiff,**                **INJUNCTION**
15
                                                Date:        November 9, 2022
16       v.                                     Time:        2:00 p.m.
                                                Courtroom: Zoom Calendar
17                                              Judge:       Hon. William H. Orrick
    **THE CITY OF ALBANY,** a Charter City; and Trial Date:  None Set
18  **DOES** 1 through 25;

19                **Defendants.**

20

21

22

23

24

25

26

27

28

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*                 3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………………………………… i

TABLE OF AUTHORITIES …………………………………………………………………... ii

INTRODUCTION …………………………………………………………………..……. 1

ARGUMENT …………………………………………………………………………………... 2

I. The Lions Club is Likely to Succeed on the Merits ……………………………………. 2

   A. The City is Acting with Bias and Prejudice Against the Cross in Condemning the Lions' Easement and Removal of the Cross ………………………………..……... 2

      1. The Disconnection of Electrical Utility Service ……………………..……... 2

      2. The First Federal Law Suit ………………………………………………… 3

      3. Eminent Domain- the Resolution of Necessity ………………………….. 4

      4. Eminent Domain – Motion for Prejudgment Possession ………………….... 5

   B. Taking the Lions Easement and Removal of the Cross Burdens, Interferes with, Deprives and Violates the Lions Club's First Amendment Rights ……………….. 6

   C. The City Has No Compelling Interest Justifying Condemning the Lions Easement or Removing the Cross …………………………………………... 7

II. The Lions will Suffer Irreparable Harm Unless this Court Intervenes ……………… 8

   A. The Loss of First Amendment Freedoms Constitutes Irreparable Injury ……….. 8

   B. The Lions will Suffer Irreparable Injury Both Short Term and Permanently…...  8

III. The Balance of Equities and the Public Interest Favor Protecting the Lions' First Amendment Rights ………………………………………………………………….. 9

   A. Balance of Equities and Hardships ……………………………………….. 9

   B. Public Interest ……………………………………………………………………… 10

IV. The Lions Club Has Standing to Bring This Action …………………………….. 10

V. Abstention is Not Appropriate ……………………………………………………… 12

   A. The Pullman Abstention Doctrine ……………………………………………….. 12

   B. Colorado River Abstention ……………………………………………………… 13

CONCLUSION …………………………………………………………………………… 14

i

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*    3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# TABLE OF AUTHORITIES

**Federal Cases**                                                                                              **Page(s)**

*Allegheny County v. Mashuda Co.,* 360 U.S. 185 (1959) ………………………………… 12

*American Civil Liberties Union v. Ashcroft,* 322 F.3d 240, 247 (3d Cir. 2003) ………….. 10

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520 (1993) ………… 7

*Colorado River Water Cons. Dist. v. U.S.,* 424 U.S. 800 (1976) …………………………. 13, 14

*Confederated Salish v. Simonich,* 29 F.3d 1398, 1407 (9th Cir. 1994) …………………… 12

*Cottonwood Christian Ctr. v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 (C.D. Cal. 2002) …………………………………………………………………………. 7

*Employment Div. v. Smith*, 494 U.S. 872 (1990) ………………………………………… 7

*Fulton v. City of Philadelphia,* 141 S. Ct. 1868 (2021) …………………………………….. 7

*Hartford Courant Co. v. Carroll*, 986 F.3d 211, 224 (2d Cir. 2021) ……………………….. 8

*Kennedy v. Bremerton Sch. Dist.,* 597 U.S. ____ (2022) ………………………………… 6

*Lions Club of Albany v. City of Albany*, 323 F. Supp. 3d 1104 (N.D. Cal. 2018) ………….. 1, 3

*Lujan v. Defs. of Wildlife,* 504 U.S. 555 (1992) ……………………………………………. 10

*Porter v. Jones*, 319 F.3d 483 (9th Cir. 2003) ……………………………………………. 12

*Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 67 (2020) ………………… 7, 8

*Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir. 2002) …………… 10

*Zwickler v. Koota,* 389 U.S. 241 (1967) ……………………………………………………. 12

**State Cases**

*Burbank-Glendale-Pasadena Airport Authority v. Hensler,* 233 Cal.App.3d 577 (1991) ……. 5

*Council of San Benito County Gov. v. Hollister Inn, Inc.*, 209 Cal.App.4th 473 (2013) ……... 5

**State Statutes**

California Code of Civil Procedure §1240.030 …………………………………………….. 5

California Code of Civil Procedure §1245.245(a)(3) ……………………………………….. 4

California Code of Civil Procedure §1245.255 …………………………………………….. 5

California Code of Civil Procedure §1250.350 …………………………………………….. 5

California Code of Civil Procedure §1250.360 …………………………………………….. 5

California Code of Civil Procedure § 1255.410 …………………………………………… 13

ii

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*            3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

**California Public Utilities Regulations**

California Public Utilities Commission General Order 95, Section III Rule....................2

California Public Utilities Commission Electric Rule No 16(A)(3)....................2

iii

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*     3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# INTRODUCTION

The Lions Club of Albany, California constructed a steel and plexiglas lighted cross on Albany Hill on private property in 1971. (Berner Dec. ¶ 3) The Lions Club was granted an easement to maintain the Cross when the property was sold to a developer prior to being transferred to the City of Albany for a public park in 1973. (Berner Dec. ¶ 4) Lions members find religious comfort from the daily display of the Cross which can be seen from many areas in the Albany and Berkeley. (Pope Dec. ¶ 3, 4 and 5) The Cross is visible to thousands when lighted at night. Members of the community gather at the Cross, some on a daily basis, to pray, reflect, worship, read the bible, and spread the good word to others. (Pope Dec. ¶ 3, 8, 9) Every year since 1971 the Lions have illuminated the Cross prior to each Christmas and Easter in celebration of these religious occasions. (Berner Dec. ¶ 5; Pope Dec. ¶ 6) The Lions have established a long-standing community tradition of celebrating Easter Morning services at the Cross. (Berner Dec. ¶ 7) The Easter service attracts local residents who join in the celebration of this Christian holiday. (Pope Dec. ¶ 7)

In 2022, the City of Albany filed an eminent domain action and obtained a Prejudgment Order of Possession allowing the City to remove the Cross and thereby deprive the Lions of their above described First Amendment rights of Free Exercise of Religion and Freedom of Speech. (Nichols Dec. Exhibit 3 and 4) The City asserts it is exercising eminent domain to address an Establishment Clause problem. (Nichols Dec. Exhibit 1) There is an alternative to condemnation that will resolve the City's perceived Establishment Clause concerns and does not require removal of the Cross - selling a parcel containing the cross to a private party. *Lions Club of Albany v. City of Albany*, 323 F. Supp. 3d 1104, 1113 and 1117 (N.D. Cal. 2018) This problem was faced by the City of San Francisco and the City of San Diego who both agreed to sell the property upon which their Crosses were standing to private parties. (Nichols Dec. Exhibit 2) The Lions Club offered to purchase the property the Cross on, but the City, acting out of long-standing atheist / anti-Christian prejudice and bias has chosen to condemn and remove the Cross.

//

//

//

1

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*                              3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# ARGUMENT

## I. The Lions Club is Likely to Succeed on the Merits

### A. The City is Acting with Bias and Prejudice Against the Cross in Condemning the Lions' Easement and Removal of the Cross.

#### 1. *The Disconnection of Electrical Utility Service*

The City of Albany has a seven-year history of abusing its authority in an effort to remove the Cross on Albany Hill. In November 2015, the City received complaints from an atheist group, claiming the Cross was (1) structurally deficient and (2) an electrical utility line was unsafe. The City conducted an investigation and found the Cross structurally sound. However, the City expressed concerns regarding an electrical utility line passing through the branches of a tree. Despite the fact that the utility (PG&E) owned, maintained and was responsible for the line as well as vegetation management of the plants surrounding the line[1], the City demanded the Lions Club disconnected electrical service. The Lions did not. (2nd Nichols Dec. Exhibit 8) The City next demanded the Lions install an intermediate utility pole to carry the wire, promising approval for the pole would be given the same day. In an effort to placate the City, Lions obtained a contractor and prepared specifications for the City's approval. After presenting plans and specifications the City refused to issue a permit for the pole without City Council approval. (2nd Nichols Dec. Exhibit 9) The Lions responded that PG&E was responsible for the utility line. The Lions also pointed out that utility lines pass through trees at numerous locations throughout the City. The Lions expressed concern that the City had singled out the Cross because it is a religious symbol and asked the City to identify other instances of utility wire enforcement undertaken by the City. (2nd Nichols Dec. Exhibit 10) The City did not respond to this December 10, 2015 letter.

Next, on February 1, 2016, the City Council met to discuss and take possible action regarding the "Lions Cross on Albany Hill." The council unanimously expressed the desire that the Cross be removed. A few days later two councilmembers visited the regular Lions Club meeting and expressed the Council's dissatisfaction with the Cross because it was a religious

---

[1] California Public Utilities Commission General Order 95, Section III Rule 35 places the responsibility for "vegetation Management" on PG&E. Furthermore, CPUC Electric Rule No 16(A)(3) also provides that the ownership of line installed for the purpose of delivery of electric energy belongs to PG&E.

2

symbol and wanted the Cross removed and the Lions easement relinquished to the city. (Nichols ¶ 3, 4, and 5.) On April 4, 2016, the City forwarded a "Confidential Settlement Communication" offering to construct a bench in the park in exchange for the Lions removal of the Cross and relinquishing the easement. (2nd Nichols Dec. Exhibit 11)

On August 24, 2016, over eight months after the December 10, 2015, letter with no indication of any electrical problem in the interim, the City sent the Lions a letter stating they were working with PG&E to disconnect power to the cross. (2nd Nichols Dec Exhibit 12) September 1, 2016, without any notice, hearing or other due process the City instructed PG&E to disconnect the utility service. (2nd Nichols Dec. Exhibit 13) Despite the fact that the Lions were not responsible for the electrical utility line, the City refused to reestablish utility service to the Cross for 106 days. Finally, on December 14, 2016, after the City Fire Chief spoke with the attorney for PG&E the City acknowledged the utility, not the Lions Club was responsible for the utility line, and authorized the restoration of electrical service to the Cross. (2nd Nichols Dec. Exhibit 14)

### 2. The First Federal Law Suit

The Lions Club subsequently filed suit against the City pursuant to 42 USC §1983 alleging violation of Due Process, Equal Protection, Free Speech and Free Exercise of Religion. The City chose to attack the Lions easement and Cross by filing a counterclaim for Quiet Title seeking to terminate the Lions easement to maintain the Cross. These claims were dismissed on summary judgment. The Court found the Lion's easement valid and declared in *dicta* that the City must remedy its First Amendment Violation but stated that the Court could not compel the City to do so because no plaintiff with standing had intervened in the case. The Court stated, in *dicta*, that the City had "at least two options either sell a parcel containing the cross to a private party or condemn the easement through its power of eminent domain." *Lions Club of Albany v. City of Albany*, 323 F. Supp. 3d 1104, 1117 (N.D. Cal. 2018) The District Court was sustained by the 9th Circuit Court of Appeal. The Lions' claims against the City were resolved by a $125,000.00 payment to the Lions Club.

City Council members have made statements prior disconnecting electrical service, during the pendency of the first law suit and subsequent to the conclusion of that law suit evidencing the

City's dislike for and desire to remove the Cross. (Nichols Dec. ¶ 3, 4, 5, 6, 7, 8 and 9).

### 3. Eminent Domain - the Resolution of Necessity

The first step in the eminent domain process is the adoption of a valid Resolution of Necessity. The power of eminent domain may be exercised to acquire property for a proposed project *only if all of the following are established:* (a) The public interest and necessity require the project; (b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and (c) The property sought to be acquired is necessary for the project. California Code of Civil Procedure §§1240.030 and 1245.245(a)(3) [emphasis added].

In their March 23, 2022 letter to the City, the Lions Club offered to purchase the lots on which the Cross stands. The Cross would then stand on private property eliminating any perceived Establish Clause problem. (Nichols Dec. Exhibit 2) The City rejected this offer and unanimously approved a Resolution of Necessity to condemn the Lions Club's easement and the Cross, thus depriving the Lions Club of its First Amendment rights – Free Exercise of Religion and Freedom of Speech.

In, the Resolution of Necessity the City did not describe a "project." The word "project" appears in the Resolution seven times: the first four mentions are contained in Section 2 where the City asserts that the "project" is not subject to CEQA; and the final three mentions appear in Section 6 where the City recites in a conclusionary, non-factual manner the required statutory findings. (Nichols Exhibit 1) The City did not establish actual findings justifying the taking.

The City also asserts that it is exercising eminent domain to "provide an unencumbered park to its residents." The phrase "unencumbered park" is an enthusiasm for "remove the Cross." The City's declaration by Jeff Bond lists a plethora of plants and animals that visit or inhabit the Park but it fails to state how the Cross harms, damages or interferes with plant, wildlife or public use of the park. The Cross stand on the eastern side of the park near the edge of a steep slope away from the trail and does not impede pedestrians walking through the park or interfere with wildlife. The Cross and the concrete footing for the Cross occupy less than 50 square feet of the park. (Berner Dec. ¶ 9 and 10) The alleged justification of providing an "unencumbered park" is a sham - it does

4

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                    3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

not establish necessity for the project, or outweigh the significant injury the Lions Club's First Amendment rights will suffer, or establish that the Lions easement and Cross are necessary for any alleged project. None-the-less City Council adopted the Resolution of Necessity without any questions, comments or discussion by the Councilmembers. Berner Dec ¶ 12. The City's flimsy justification for the condemn of the Cross substantiates the City's anti-Christian prejudice and bias against the Cross.

### 4. Eminent Domain – Motion for Prejudgment Possession

Following the passage of the Resolution of Necessity the City promptly filed an action in eminent domain. The City filed its eminent domain action on May 4, 2022. Two days later, with shocking speed, the City filed a motion for prejudgment possession – even though it had no "project" to build. Further evidencing the City prejudice and bias the City seeks to remove the Cross as quickly as possible without regard to the First Amendment injuries that will be suffered by the Lions Club.

Incredibly the City has asserted that its sham Resolution of Necessity conclusively established the "public interest and necessity," "compatibility with the greatest public good and the least private injury," and that "the property is necessary for the project" as required by California Code of Civil Procedure § §1240.030. The Lions Club filed an Answer challenging the City's the City's "right to take" and asserted ten meritorious affirmative defenses. Pursuant to California Code of Civil Procedure § §§1250.350 and 1250.360. No trial date has yet been set none-the-less the City has pushed forward with its motion for prejudgment possession. Contrary to the City's assertions the Resolution of does not have a conclusive effect if its adoption or contents were influenced or affected by gross abuse of discretion by the governing body. California Code of Civil Procedure § §1245.255(b). A gross abuse of discretion may be established by showing that adoption of a resolution of necessity by the governing board of a public entity was arbitrary, capricious, or entirely lacking in evidentiary support, the governing body failed to follow the mandated procedure, or the governing body was irrevocably committed to taking the property regardless of the evidence presented at the resolution of necessity hearing. *Council of San Benito County Governments v. Hollister Inn, Inc.*, 209 Cal.App.4th 473, 485 (2013); *Burbank-Glendale-*

5

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                    3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

*Pasadena Airport Authority v. Hensler,* 233 Cal.App.3d 577, 589 (Cal. Ct. App. 1991)

The totality of the City's actions since 2015- its repeated and unrelenting attacks on the Lions easement, and its current attempt to condemn the Cross proves the City has not acted neutrally – it has favored atheists and/or non-Christian religions in violation of the Lions Club's First and Fourteenth Amendment rights.

### B. Taking the Lions Easement and Removal of the Cross Burdens, Interferes with, Deprives and Violates the Lions Club's First Amendment Rights

The Free Exercise and Free Speech Clauses of the First Amendment work in tandem. Where the Free Exercise Clause protects religious exercises, whether communicative or not, the Free Speech Clause provides overlapping protection for expressive religious activities. *Kennedy v. Bremerton Sch. Dist.,* 597 U.S. ____ (2022). The Lions display of the Cross is a symbolic communication to the community conveying God's presence and providing religious comfort and enjoyment in its daily display to the community. The Cross can be seen from many areas in the Albany and Berkeley communities and is particularly visible when lighted at night. Members of the Lions Club find it religiously rewarding and satisfying when told by individuals in the community about joy and comfort they receive from seeing the Cross on the hill each day. (Pope Dec. ¶ 3, 4, 5) The lighting of the Cross at Christmas and Easter are recognized religious traditions during those holidays. (Pope Dec. ¶ 6) The Cross is also a location and gathering place for religious worship where people in the community come to pray, reflect, talk and spread the good word to others. (Pope Dec. ¶ 7, 8, and 9) For over 50 years the Lions have continued the tradition of Easter Morning services at the Cross. These activities are pure forms of religious expression and free speech.

The City asserts taking possession of the Lions' easement and removing the Cross is not a violation of the Lions First Amendment Right of Free Exercise of Religion because the City 's actions do not prevent individuals from gathering at Albany Hill Park for Easter morning services, to pray, to worship and to participate in religious activities. (City Opposition p. 18:12-19)

However, Supreme Court decisions do not support the City's position. The "exercise of religion" often involves not only belief and profession but the performance of (or abstention from) physical acts: assembling with others for a worship service, participating in sacramental use of

6

**LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY**     3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

bread and wine, proselytizing, abstaining from certain foods or certain modes of transportation. *Employment Div. v. Smith*, 494 U.S. 872 (1990) Similarly, remote viewing or other alternatives are not the same as personal attendance. *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 67 (2020) [Citing *Elrod v. Burns* , 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion).] The City does not justify why depriving the Lions of the ability to display the Cross daily and light the Cross at holidays are not violations of the Free Exercise of Religion and Freedom of Speech.

### C. The City Has No Compelling Interest Justifying Condemning the Lions Easement or Removing the Cross

Courts must apply strict scrutiny when the government "proceeds in a manner intolerant of religious beliefs or otherwise restricts practices because of their religious nature." *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021) see also *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 534 (1993). The City's actions described in detail above establish a clear intolerance toward the Cross. In situations where there are "individualized governmental assessment[s]" strict scrutiny is also appropriate. *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 1223 (C.D. Cal. 2002)[ *Citing Employment Div. v. Smith,* 494 U.S. 872, 884 (1990)]

In applying strict scrutiny, the City's action can stand only if it advances compelling state interests "of the highest order" *and* is "narrowly tailored in pursuit of those interests. *Lukumi*, *supra*, 508 U.S. at 546. The City asserts that it seeks to acquire the Lions easement in order to "unencumber public land and avoid any potential violation of the Establishment Clause arising from Defendant's display of a cross in the park." (City Opposition to Motion for Preliminary Injunction p17:19-18:11)

The City fails to explain how "unencumbering the public land" is a compelling state interest. The City currently has a park which has existed for almost 50 years. The Cross does not interfere with the plant life, wildlife or park patrons.

The City next asserts that it wishes to avoid any potential violation of the Establishment Clause. In this regard the City's actions are not narrowly tailored in pursuit of this interest. The

7

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY           3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  City has opted for a course of action that will burden, interfere and terminate the Lions' First
2  Amendment rights of Free Exercise of Religion and Free Speech.  The City can more effectively
3  address its Establishment Clause problem by exercising the second option of selling a lot of land
4  upon which the Cross stands to a private party.  The Lions have already offered to purchase the
5  property.  The sale of the property completely eliminates the claimed Establishment Clause problem
6  and does not burden, interfere or hinder the Lions Club's First Amendment rights.

7  The City's action of condemning the Lions easement and Cross is not narrowly tailored and
8  cannot withstand the strict scrutiny analysis.

9  In light of the foregoing, the Plaintiff is likely to succeed on the merits of this case.

10 **II.    The Lions will Suffer Irreparable Harm Unless this Court Intervenes**

11 **A. The Loss of First Amendment Freedoms Constitute Irreparable Injury**

12 "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably
13 constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63, 67
14 (2020) [ Citing *Elrod v. Burns* , 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality
15 opinion). "When an alleged deprivation of a constitutional right is involved, most courts hold that
16 no further showing of irreparable injury is necessary." *Hartford Courant Co. v. Carroll*, 986 F.3d
17 211, 224 (2d Cir. 2021) (quoting *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984)).

18 **B. The Lions will Suffer Irreparable Injury Both Short Term and Permanently**

19 The Lions display of the Cross is a symbolic communication to the community conveying
20 God's presence and comfort to many in the community. The Lions maintain the Cross as an
21 exercise of religious expression by providing members of the community the opportunity see and
22 visit the Cross, receive its message, engage in prayer, receive comfort, hope, inspiration, gather in
23 fellowship and rejoice in God. The Lions have also exercised their religious beliefs by lighting and
24 displaying the Cross during the Christmas and Easter seasons and hosting Easter morning services
25 for more than fifty years.  Upon removal of the Cross the Lions will immediately be deprived of
26 these forms of religious speech and religious expression.

27 The City argues that the Lions will not suffer irreparable harm because the Cross will be
28 taken down and preserved pursuant to the Superior Court's Order. (City Opposition Brief p 19:3-

8

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*     3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

9) The City ignores the obvious reality that the Lions will be unable to engage in any of the above-described First Amendment activities once the Cross has been removed regardless of whether the removal is ultimately permanent or temporary. In essence the City has figuratively placed a gun at the head of the Lions Club, either give up the rights to contest the City's sham Resolution of Necessity and right to take, or be deprived of the rights of free speech and free exercise of religion pending that determination.

Temporary removal of the Cross will also harm long-established religious traditions which, once interrupted, frequently cannot be easily reinstated. (Berner Dec. ¶ 16 and 17) Furthermore, some Lions and community members believe the removal of the Cross is a desecration of the sacred symbol. The spiritual enjoyment they receive will be forever tarnished by its removal regardless of whether it is reconstructed in place or at a different location. (Pope Dec. ¶12)

In view of the forgoing the Lions will suffer irreparable harm from the removal of the Cross.

### III. The Balance of Equities and the Public Interest Favor Protecting the Lions' First Amendment Rights

#### A. Balance of Equities and Hardships

In the present case the Lions will suffer the loss of their beloved Cross which they constructed and have maintained for over 50 years. The Lions take pride in displaying the Cross, a religious symbol that conveys familiar Christian customs and sentiments to the community. The Cross symbolically conveys different religious meanings to different people including messages of love, hope, comfort, salvation, healing, remembrance, righteousness, and one's personal relationship with God. The Cross is also a point where the community may focus their religious thoughts through prayer, meditation, associating with others. At Christmas and Easter, the lighted Cross is a reinforcement of Christian teachings, and a seasonal reminder of these special and significant holidays. In this action the Lions are merely seeking to maintain the status quo.

The City on the other hand seeks to remove the Cross because it accepted the lots upon which the Cross stands subject to a Lions Club easement to maintain the Cross. The City has been

9

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY            3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

aware of a potential Establishment Clause problem resulting from its actions. The City now speculates it might be sued based upon its Establishment Clause problem, even though the Cross has existed for 50 years without any such litigation.

The City can easily resolve its perceived Establishment Clause problem by selling its underlying fee interest to a private party and permanently. This simple solution resolves the problem the City itself created and allows the Lions to exercise its Constitutional rights. The City prefers to cater to atheist and anti-Christian bias. The Lions will suffer the significant loss of their First Amendment rights and are currently seeking only to maintain the status quo.

### B. Public Interest

In this matter the public interest favors a preliminary injunction. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir. 2002). The government does not have an interest in the enforcement of an unconstitutional law. *American Civil Liberties Union v. Ashcroft,* 322 F.3d 240, 247 (3d Cir. 2003) Similarly, the City does not have a legitimate interest in enforcing an action which unnecessarily deprives a party of its First Amendment rights, particularly when a neutral alternative is available.

### IV. The Lions Club Has Standing to Bring This Action

Federal standing consists of three elements. First, the plaintiff must have suffered an "injury in fact"- an invasion of a legally-protected interest which is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of -the injury has to be "fairly traceable to the challenged action of the defendant, and not the result of independent action or some third party not before the court. Third it must be "likely," as opposed to merely "speculative" that the injury will be "redressed by a favorable decision." *Lujan v. Defs. of Wildlife,* 504 U.S. 555, 560-561 (1992).

The Lions Club's standing to bring this action is alleged in the complaint.

***The "legally -protected interest.*** The Lions Club is a nonprofit corporation. (Comp ¶ 1) In 1971 the Lions constructed the Cross on private property on Albany Hill and subsequently

10

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                     3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

received an easement for ingress, egress and to maintain the Cross. (Complaint ¶ 6 and 16 and Nichols Dec. Exhibit 1 page 12)   The Cross is a religious symbol that coveys a Christian message throughout the community as well as a point or location for religious worship, and ceremonies. (Complaint. ¶ 8, 9, 10, 11, 12, 13, 14, and 24)

***Injury in fact.*** The City of Albany City enacted a Resolution of Necessity condemning the Lion's easement and the Cross without regard to the Lions rights of free speech and free exercise of religion. (Comp. ¶ 47, 48, 49, 50, 51 and 52 and see Nichols Dec. Exhibit 1) The City filed an action in eminent domain in state court seeking to acquire the easement and remove the Cross. Two days later the City filed a motion for Prejudgment Possession without regard to the Lions First Amendment rights.  Pursuant to the City's request, the Superior Court of California granted Pretrial Possession of the Lion's easement but briefly delayed the removal of the Cross without regard to the Lions First Amendment Rights.  (Comp. ¶ 58, 59, 61 see Nichols Dec. Exhibits 3, 4 and 7)

The City has now taken possession of the Lion's easement pursuant to the Court's Order and the removal of the Cross is imminent and not conjectural or hypothetical. The City is also attempting to permanently acquire the Lions easement and deprive the Lions of their Cross at its present location.

***The City's Conduct.*** The City acting under color of law adopted a Resolution of Necessity, filed an eminent domain action, filed a motion for Prejudgment Possession, took possession of the Lion's easement, and the removal of the Cross is imminent all without regard to and placing a burden on the Lions free exercise of religion and free speech  (Comp ¶ 50, 63, 64, 65, 66, 74, 75, 76, 77, 79, 80, 81, 82, and 83) The City has also acted with bias, prejudice showing a preference for atheism and non-Christian religions in violation of the Establishment Clause and the Equal Protection Clause of the Fourteenth Amendment. (Comp. ¶105, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 36, 37, 41, 42, 46, 47, 49, 50, 52, 53, 54, 56 and 57.

These paragraphs establish that there is a direct link between the Lions injury and pending injury and the City's conduct. Finally, this law suit seeks to prevent further injury by enjoining

11

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

1  removal of the Cross. There is abundant evidence establishing the Lions standing to prosecute this
2  action in this Court.

3  V.     **Abstention is Not Appropriate.**

4         A.     **The Pullman Abstention Doctrine**

5  The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this [the Pullman] doctrine only in the exceptional circumstances where the order to the parties to repair to the state court would clearly serve an important countervailing interest. *Allegheny County v. Mashuda Co.,* 360 U.S. 185, 188-189 (1959). "Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims. escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '. . . to guard, enforce, and protect every right granted or secured by the Constitution of the United States . . .,'" Zwickler *v. Koota,* 389 U.S. 241, 248 (1967) [Citing *Robb v. Connolly,* 111 U.S. 624, 637]

*Pullman* abstention is appropriate when (1) the case touches on a sensitive area of social policy upon which the federal courts ought not enter unless no alternative to its adjudication is open, (2) constitutional adjudication plainly can be avoided if a definite ruling on the state issue would terminate the controversy, and (3) the possible determinative issue of state law is uncertain. *Confederated Salish v. Simonich,* 29 F.3d 1398, 1407 (9th Cir. 1994) [Citations omitted]

In First Amendment cases, the first Pullman factor "will almost never be present because the guarantee of free expression is always an area of particular federal concern. "Indeed, constitutional challenges based on the first amendment right of free expression are the kind of cases that the federal courts are particularly well suited to hear. That is why abstention is generally inappropriate when first amendment rights are at stake." *Porter v. Jones*, 319 F.3d 483, 492 (9th Cir. 2003) [ Citing U. S. *Ripplinger v. Collins,* 868 F.2d 1043, 1048 (9th Cir. 1989) and *J-R*

12

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                    3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

*Distribs., Inc. v.Eikenberry*, 725 F.2d 482, 487 (9th Cir. 1984), overruled on other grounds by *Brockett v. Spokane Arcades, Inc.,* 472.]

The present case involves the interference, burden and impending deprivation of the Lions Club's First Amendment rights of Free Exercise of Religion and Free Speech which are particularly appropriate for resolution in Federal Court. The matter also involves violation of the Fourteenth Amendment Due Process and discriminatory prejudice and bias by the City.

**B.  Colorado River Abstention**

The exercise of abstention under the Colorado River doctrine is clearly inappropriate. The *Colorado River Water Cons. Dist. v. U.S.,* 424 U.S. 800 (1976) case involved conflicting claims to the allocation of Colorado River water which was divided into seven water divisions, in which each division had an established procedure for the settlement of water claims on a continuous basis. The rights were claimed by certain Indian tribes as well as rights based on state law, and non-Indian water rights in three other state water divisions. Thus, the Colorado River case involves unique and complex issues involving multiple parties.

In the present case the state and Federal cases address two distinct and separate matters. The state case addresses simply eminent domain and as the City repeatedly points out its authority to exercise is based upon a Resolution of Necessity that "conclusively establishes" that authority. (Defs. Opposition 9:6-16) See also California Code of Civil Procedure §§1240.030 and 1255.410. This case addresses the burdening, interference with and impending deprivation of the Lions First Amendment rights.

The state proceedings will not adequately protect the Lions rights. The City ignores the fact that it has already obtained passion of the Lions easement and that removal of the Cross and the concomitant deprivation of First Amendment rights is eminent.  The City argues that the Lions may challenge the taking in the state action when the matter comes to trial (sometime in the next five years); ignoring the fact that the Lions will be deprived of their Frist Amendment rights in the interim.

The City argues that it is entitled to a stay of this action because it filed its action first. However, as the City noted in its standing argument above, the Lions did not have standing to

13

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY            3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

bring this action until they suffered an "injury in fact"- an invasion of a legally-protected interest which is (a) concrete and particularized and (b) "actual or imminent, not conjectural or hypothetical. Consequently, the Lions have brought this action to protect their rights only when the legal authority to do so arose.

In consideration of the above, abstention under the Colorado River Doctrine is not appropriate in this case.

## CONCLUSION

Plaintiff, the Lion Club is likely to succeed on the merits of this matter because the City is burdening, interfering with and will very soon deprive the Lions of their First Amendment rights to Free Exercise of Religion and Free Speech. In reaching the decision to exercise eminent domain, the City failed to act fairly but rather imposed a long standing bias, prejudice, and dislike against the Christian Cross and favored atheist and non-Christian religions. Defendant's bias and prejudice violate the Fourteenth Amendment. Unless enjoined by this Court, the Lions will suffer irreparable harm. The Lions will be deprived of their right to symbolically communicate with the community by displaying the Cross on a daily basis. The Lions will be deprived of the ability to light the Cross for Christmas and Easter. The long-established practice of Easter Services at the Cross will be terminated, perhaps permanently. The Lions and will no longer be able to share the Cross with the community as a point of prayer, reflection and religious worship.

The taking of the Lions easement and removal of the Cross does not meet the requirements of strict scrutiny because the City's justification for its eminent domain action is an Establishment Clause problem. The removal of the Cross is not necessary to resolve the problem. The City may simply sell the property to a private party and forever resolve the matter. Consequently, the City has failed to present a compelling state interest that is narrowly tailored to avoid injury to the Lions rights.

//

//

//

14

LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY                          3:22-CV-05377-WHO
PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

An injunction is appropriate because the Lions will suffer irreparable harm from the City's action and the balancing of harms and equities as well as the public interest favor the issuance of a preliminary injunction.

Dated: October 14, 2022                    Respectfully submitted

/S/ Robert E. Nichols
_____
Robert E. Nichols
Attorney for Plaintiff
Lions Club of Albany, California

15

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*                    3:22-CV-05377-WHO
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

iv

# CERTIFICATE OF SERVICE

I am a resident of the State of California, over the age of eighteen years and not a party to the within action. My business is 713 Key Route Blvd., Albany, California. I served the following documents:

- **PLAINTIFF, LIONS CLUB OF ALBANY'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**
- **SECOND DECLARATION OF ROBERT E. NICHOLS IN SUPPORT OF PRELIMINARY INJUNCTION.**

by electronically serving the documents(s) described above via United States District Court Electronic Case Filing website (CM/ECF notification system on the recipients designated on the electronic service list that is located on the Pacer website and by Electronically sending a true and correct copy thereof on: scott.ditfurth@bbklaw.com

I declare under the penalty of perjury under the laws of the State of California and the laws of the United States that the above is true and correct and that this declaration was executed on October 14, 2022, at Albany, California.

/S/ Robert E. Nichols
_____
Robert E. Nichols