1  ROBERT E. NICHOLS (SBN 100028)
2  RICHARD W. COVERT (SBN 34582)
   713 Key Route Blvd.
3  Albany, California 94706
   Telephone: (510) 710-7033
4  renichols01@comcast.net

5  *Attorneys for Plaintiff,*
   *The Lions Club of Albany, California*
6

7

8              **UNITED STATES DISTRICT COURT**

9          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11

12                                          Case No. 3:22-cv-05377-WHO

13  **THE LIONS CLUB OF ALBANY,**           **SECOND DECLARATION OF**
    **CALIFORNIA, A** Nonprofit Corporation, **ROBERT E. NICHOLS IN SUPPORT OF**
14                                          **LIONS CLUB OF ALBANY'S REPLY**
                          **Plaintiff,**    **BRIEF FOR PRELIMINARY**
15                                          **INJUNCTION.**

16       v.                                 **Date:        November 9, 2022**
                                            **Time:        2:00 p.m.**
17                                          **Courtroom:  Zoom Calendar**
    **THE CITY OF ALBANY**, a Charter City; and  **Judge:      Hon. William H. Orrick**
18  **DOES** 1 through 25;                  **Trial Date:  None Set**

19                        **Defendants.**

20

21          I, Robert E. Nichols, declare:

22          1.      I am an attorney at law, a member in good standing of the State Bar of California

23  and duly admitted to practice before this and other courts.  I am the attorney of record for Plaintiff,

24  The Lions Club of Albany, California in the present matter and the prior matter of The Lions Club

25  of Albany, California v. City of Albany, et al., Case Number 3:17-cv-05236WHA. In that capacity

26  I have possession and personal knowledge regarding the letters and documents in both cases and

27  all matters contained in this declaration.

28  //

2.      I make this declaration in support of the Lions Club of Albany, California's Motion for Preliminary Injunction.

3.      Exhibit 8 is a true and correct copy of a letter dated November 24, 2015 sent to the late Lions Club member Art Longpre by Albany Community Development Director Jeff Bond demanding that the electrical utility service to the Cross be disconnected. The was forwarded to me by Mr. Longpre and is a part of the file on this matter.

4.      Exhibit 9 is a letter to Albany Lions Club President Valerie Dunlap from Community Development Director Jeff Bond in which I am copied.  The letter discusses the new process for approval of construction of a private utility pole.

5.      Exhibit 10 is a letter to Jeff Bond confirming the structural soundness of the Cross, informing the City that the utility company and NOT the Lions Club are responsible for maintaining the utility line, informing the City that utility lines pass through trees throughout the City, and proposing alternatives.  The letter also recites the history of the incident through the date of the letter and discusses the City's abuse of its building code enforcement authority and expressing concerns that the Lions had been singled out for dispirit treatment.

6.      Exhibit 11 is a Settlement Communication signed by all five members of the City Council.  The City offers the Lions a bench in exchange for relinquishment of the Lions easement and removal of the Cross.

7.      Exhibit 12 is a letter addressed to The Lions Club and mailed to the address of the club secretary stating that the City is working with PG&E to disconnect power to the Cross.

8.      Exhibit 13 is a letter from me to Fire Chief Lance Calkins and Community Development Director Jeff Bond and copying the City manager again setting out the history of this matter and seeking clarification.

9.      Exhibit 14 is a letter from Fire Chief Lance Calkins acknowledging that PG&E, and not the Lions Club is responsible for the utility line and agreeing to allow the utility to restore service.

2

1    I declare under the penalty of perjury under the laws of the State of California and the

2    laws of the United States that the above is true and correct and that this declaration was executed

3    on October 14, 2022, 2022, at Albany, California.

4                                                              /S/ Robert E. Nichols

5                                                         _____

6                                                         Robert E. Nichols

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*                    **3:22-CV-05377-WHO**
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

# EXHIBIT 8

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*          **3:22-CV-05377-WHO**
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

*Urban Village by the Bay*

# ALBANY CALIFORNIA

**CITY OF ALBANY**



**COMMUNITY DEVELOPMENT**
1000 SAN PABLO AVENUE
ALBANY, CA 94706
510 528-5760

**www.AlbanyCA.org/cd**

November 24, 2015

Art Longpre
919 Fillmore
Albany, CA 94706

Subject: Lion's Club Cross on Albany Hill

Dear Mr. Longpre,

I am writing regarding the Lion's Club cross on the west side of Albany Hill. As we discussed on Thursday November 19, 2015, the electrical service line from the utility pole on Taft Street to the top of the cross runs through the branches of a eucalyptus tree. The routing of electrical service line through the tree is a hazardous situation in windy conditions, when broken tree branches could bring down the electrical line. The danger is particularly an issue during dry windy conditions, when the risk of fire on Albany Hill is high. Therefore, I am writing to give the Lion's Club a courtesy notice that a hazardous situation exists and to request that you contact PG&E to have them disconnect the existing electrical service line from the utility pole on Taft Street. We request a response to this letter within ten (10) days to confirm that you have contacted PG&E and made the necessary arrangements to have the electrical line disconnected by the end of December. If you fail to do so, the City will have no choice but to initiate formal proceedings under the *Uniform Code for the Abatement of Dangerous Buildings* and/or other applicable laws to abate this public nuisance and achieve compliance with applicable codes.

The installation of a new service line in a safe alignment, and with required ground and tree clearances, will require either trenching for an underground utility line, or alternatively, the installation of one or more new utility poles on City property. City staff will report to the City Council in early 2016 regarding the status of the cross as well as seek direction regarding the installation of new utility connections.

It was a pleasure to meet you last week and we appreciate your cooperation as we work through the issues associated with the cross.

Sincerely,

Jeff Bond
Community Development Director

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT 9

*Urban Village by the Bay*

# ALBANY CALIFORNIA

CITY OF ALBANY



**COMMUNITY DEVELOPMENT**
1000 SAN PABLO AVENUE
ALBANY, CA 94706
510 528-5760

www.AlbanyCA.org/cd

December 7, 2015

The Lions Club
Attention: Valerie Dunlap, President
704 Norvell St.
El Cerrito, 94530

Subject: Review Process for Electrical Service Connection upgrade to Lion's Club Cross

Dear Ms. Dunlap:

I am writing to provide additional information associated with City review of construction of a privately-owned utility pole on City property in order to provide new electrical service to the Lion's Club cross. We envision a two-step process. The first step will be a policy-level decision by the City Council on whether to grant permission for the placement of a new pole and re-routing of electrical service lines. In order for the City to evaluate the impacts of the pole on City property, a preliminary design showing the location of the pole and associated overhead lines will need to be provided. In particular, a site plan and section drawings showing compliance with required ground and vegetation clearances is required. The attached Section 4 of the "2015 PG&E Greenbook" provides details on the clearance requirements.

If placement of a pole is approved by the City Council, the second step will be issuance of permits by City staff and PG&E for the actual construction of the pole. The permit review will include detailed review of the type of pole, placement, connections, etc. The attached PG&E technical memorandum "Requirements for Customer-owned Poles" describes the technical details. In addition, the installation will be required to comply with the requirements of the California Building Standards Code. All of the codes are available for review in the Community Development Department. For your convenience, attached is the excerpt from the California Electrical Code related to service connections. Please be aware that it is the City's policy that for construction on City property and right-of-way, permits would issued only to contractors licensed by the State of California for this type of pole installation and electrical work.

Sincerely,

Jeff Bond
Community Development Director

cc:     Robert Nichols
        Art Longpre

Attachments (3)

# EXHIBIT 10

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*      **3:22-CV-05377-WHO**
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**



## The Albany Lions Club

December 10, 2015

*VIA E-MAIL and U.S. MAIL*
Jeff Bond
Community Development Director
City of Albany
1000 San Pablo Avenue
Albany, California 94706

### RE:   Albany Hill Cross

Dear Mr. Bond:

This letter is written on behalf of the Albany Lions Club in response to your recent letter of December 7, 2015, and your prior letter dated November 24, 2015.[1] This letter also follows verbal discussions with Fire Chief Lance Calkins, City Manager Penelope Leach and you. Unfortunately, the City's position appears to have changed at least three times since the first contact on November 13th. Consequently, the Albany Lions Club is not certain how to respond to the City's changing demands.

### *The Atheists' Assertions*

It appears the City of Albany's concerns about the cross on Albany Hill stem from a letter written by the "East Bay Atheists" which claimed (1) the cross's foundation was eroded; (2) two of the four mounting bolts [attaching the cross to the foundation] are broken; and (3) the utility line is running through the branches of a tree. It is my understanding that the City has determined the Atheists' allegations regarding the cross foundation and the bolts securing the cross to the foundation are completely unfounded. The only remaining issue is the electrical utility line. We are pleased your most recent letter abandoned the threat of abating the cross as a public nuisance.

---

[1]  The letter dated November 24, 2015, addressed to Art Longpre was meter stamped November 25, 2015, and not delivered until December 3, 2015. This letter was particularly troubling because it was received nine (9) days after it was written and demanded a response within ten (10) days.

Jeff Bond
December 10, 2015
Page 2 of 7

### The Electrical Utility Line

The communications received by the Lions from various persons at the City of Albany concerning the electrical utility line powering the cross have lacked specificity as to the legal authority for the City's request. The communications have also leaped to several conclusions which may or may not be correct.

First, the City appears to have taken the position that the Albany Lions Club and not the utility are responsible for the placement and care of the utility line. In briefly researching the issue it appears that the utility is responsible for the line from the pole to the point of the electrical meter where the electrical service is connected. The electrical meter and electrical service is located inside the cross. This issue does not appear to have been fully explored by the City.

Second, your letter of November 24, seems to imply that the 1971 utility connection to the cross did not comply with the applicable electrical code. If this is indeed your contention would you please provide us with a copy of the City approved edition of the electrical code applicable to the 1971 cross installation and utility line placement? We are particularly interested in knowing how the line fails to comply with the 1971 code. However, if the City is relying on a subsequently enacted code or regulation, would you provide reference to the specific code section including the authority making that enactment applicable retroactively to existing structures?

Third, your letter of November 24, indicates the problem with the utility line is that it "runs through the branches of a eucalyptus tree" and that broken tree branches "could bring down the electrical line." This hardly appears to be a unique problem in the City of Albany. In a brief drive through the City, we observed numerous instances where electrical utility lines ran through city street trees and trees located on private property. Within the last few years PG&E conducted a "Line Clearance Program" intended to eliminate tree branches damaging electrical lines. Perhaps the simplest solution to current Albany Hill Cross matter would be for the City to trim its tree branches away from the utility line.

Finally, it may be possible to relocate the utility line away from the tree without the construction of an intermediate pole. It appears possible that the utility line itself may

Jeff Bond
December 10, 2015
Page 3 of 7

be shortened and realigned removing excess slack such that the line does not go through the tree branches or require a pole.

In light of the forgoing it is not apparent that the City has not considered all of the available options that may be available to resolve this matter. The City may also have erroneously concluded that the Lions Club as the responsible entity for repairing the utility line.

### *The Construction of an Intermediate Pole between the Cross and Utility Pole*

On November 19, 2015, Fire chief Lance Calkins visited the Albany Lions Club and discussed the City's concerns regarding the cross.[2] It was at the Chief's suggestion that the Club construct an intermediate utility pole. Following some discussion, the Albany Lions Club, acting as good citizens and desirous of maintaining the cross in an undisputedly safe manner, agreed to accede to the City's request for an intermediate pole.[3] The Club authorized Mr. Art Longpre to identify and engage a contractor. The Club also appropriated funding for the construction of the intermediate utility pole and for the utility line relocation.    In the course of those discussions Chief Calkins represented that a permit for the pole could be issued in one day.

In subsequent telephone conversations City Manager, Penelope Leach, continued to urge an intermediate pole as the City's preferred option.  Ms. Leach reiterated that a permit for pole construction could be issued by you (Mr. Bond) on the same day. Ms. Leach was informed that Mr. Longpre was seeking to engage a contractor for the purpose of installing the intermediate pole and relocating the utility line. Mr. Longpre visited Albany City Hall, met with you and Ms. Leach and presented specifications for

---

[2]  The Chief confirmed that despite allegations by third parties, the base of the cross is structurally sound and the cross is well secured to its base.   The Chief's statements were subsequently confirmed by City Manager Penelope Leach.

[3] The Albany Lions Club's willingness to construct a pole is not, and does not constitute a statement, acknowledgement or admission that any dangerous condition or violation of any code or regulation exists; and any such condition or violation is specifically denied.  The Club also disputes responsibility for the utility line running between the pole and the service meter.

Jeff Bond
December 10, 2015
Page 4 of 7

the intermediary pole to the City.[4] It was our hope that a pole could be manufactured, and installed shortly after the New Year, if not sooner, weather permitting. We were surprised and disheartened by your letters of November 24, and December 7. It now appears that despite prior representations of a desire to quickly resolve this issue, with a one day turn-around the City is placing additional impediments in the process to resolve of the matter.[5]

### *The Lions Application to Construct a Pole is Not a Request to Install a New Service*

Your letter of December 7, 2015, states that the Lions Club is seeking to install a ". . . **new electrical service** to the Lion's Club cross. . . ." This statement is false and incorrect. A **new** electrical service is not being sought. The cross is now and has since 1971 been connected to electrical services and no changes are anticipated. The only action taken by the Lions Club has been an application to construct a pole, at the City's request, to slightly realign the utility wire. All discussions with the City have been exclusively limited to the movement of the utility wire a few feet away from tree branches, and the construction of a pole. At no time was the installation of a "new service" ever discussed or considered. We do not believe and do not agree the process of moving the utility line a few feet will require any interruption of electrical service or result in any alteration to the existing service.

### *The Albany Lions Club's Property Rights*

As you know the Albany Lions Club possesses an easement for ingress, egress and maintenance of the Albany Hill Cross. That easement predates the City's acquisition of the property. The cross is electrically lighted and powered by an electrical utility connection. That utility power line is an intrinsic and fundamental component of the electrically lighted cross. Maintenance of the utility wire as well as the ingress and egress of the electricity that lights the cross all fall within the Lions Club's easement.

---

[4] A pole would have to be specially ordered and manufactured to act as an intermediary utility pole. Prior to incurring the expense of ordering and such a pole Mr. Longpre sought to assure the pole would meet all of the City's requirements and specifications.

[5] We note that some of the East Bay Atheists materials expressed a strategy of requiring the costs of correction or repair to exceed the willingness and ability of the Lions Club to comply. We have serious concerns that the City may be intentionally or unwittingly attempting to adopt this strategy.

Jeff Bond
December 10, 2015
Page 5 of 7

The City's actions as set out in your letter are in contravention of Lions Club's property rights. In other words, if according to the City, a pole is absolutely necessary for the maintenance of the utility line, despite 44 years to the contrary, the Lions Club easement constitutes a property right that allows the Club to install such a pole as a part of maintaining the cross; subject to compliance with all applicable building codes.

### *City Abuse of Building Code Enforcement Authority*

In the letter of December 7, you state that the City Council will need to "evaluate the impacts of the pole on **City property**." You refer to this City Council review as a "policy level decision." Clearly, this step goes well beyond the mere issuance of a building permit which does not require any policy interpretation or adoption. You are apparently suggesting the City Council is considering the condemnation, limitation, restriction or other similar actions that will interfere with the Lions Club's property rights associated with the cross. We strongly object to the City's misuse of building code enforcement authority in any attempt to condemn, limit or restrict or devalue the Lions Club's easement.

The City Council approval plan you outline in your letter is a sham. Generally, issuing a building permit for minor issues such as a utility pole is an administrative function and does not require City Council approval.[6] The initial statements of Chief Calkins and City Manager Leach further evidence that only administrative review was contemplated. Under your proposal the City's enforcement authority is being used as a pretext to usurp property rights under the mantle of building code compliance.

The December 9, letter also requests a site plan and section drawings showing the pole and overhead lines. This request appears to be an unnecessary expense intended to introduce additional cost and delay in this process. A visual examination of the Albany Hill topography makes the claimed need for evaluation of impacts laughable. You are undoubtedly aware that the existing utility service wire intersects the hill at the location of a steep slope. The ground is only passable on foot with extraordinary effort. The existing utility line extends well above the sloping ground; an intermediary pole will only maintain this height. Similarly, a utility pole will not materially alter the existing

---

[6] We note that PG&E has been replacing poles in Albany. Can you provide us with copies of the City Council actions approving the replacement of those poles?

conditions or interfere with the City's use, or lack thereof, of this portion of the property in any significant manner whatsoever.

We had previously understood the City was desirous of a prompt resolution of this matter. In response the Lions Club took extraordinary steps to expedite the process of locating a contractor, researching available posts and developing specifications for your consideration. Your letter now suggests that significant delay will be required by the City to issue a construction permit for a pole, if a pole is in fact required. Nonetheless we remain prepared to move quickly once the City responds to our intermediate pole proposal.

We sincerely hope the City is not delaying this matter to obtain a strategic advantage. Any attempt to interrupt the electrical power or disconnect the utility line as we work through this issue would cause us to consider immediate legal action. We have previously stated that we demand due process before any interruption of service or utility disconnection occurs. Similarly, any City action that limits, restricts, disrupts, or otherwise interferes with the lighting of the cross or its use and enjoyment will also cause us to consider prompt legal action.

### Subjecting the Lions Club to Dispirit and Unequal Treatment

We have noticed that the City's position has changed from politely requesting the Lions construct a utility pole and move a utility line pursuant to the City's representations of a same day permit approval; to the multi stage process with technical specifications including City Council approval set out in your most recent letter. The stewardship of the Albany Hill Cross is of great importance and the Albany Lions Club will fight to protect the cross and its easement. The Club will be very sensitive to any attempt remove, limit, restrict, inversely condemn, or otherwise interfere with its property rights.

Similarly we are concerned that the City of Albany may have singled out the cross on Albany Hill because it is a religious symbol. Building permits are regularly and administratively issued by your department almost daily. You may wish to consider

Jeff Bond
December 9, 2015
Page 7 of 7

many times in the past five years had the City Council approved a mere building
permit? How many other instances of utility wire enforcement has the City undertaken
in the past five years and how those were resolved? I am sure we agree that equal
protection prohibits the City of Albany from singled out the Albany Hill Cross or the
Lions Club for prosecution by the building department merely because the cross is a
religious symbol. Similarly is the City creating special requirements merely because the
permit involves a cross?

### Conclusion

The Albany Lions Club, without admitting any responsibility, liability, or violation of
law, remains willing to accede to the City's initial demand and construct intermediate
pole and move the utility line such that it is no longer in contact with tree branches as
the City has requested. We have already submitted a proposal to the City that should
accomplish this goal. We are also willing to consider any reasonable modification to
our submission and will work diligently to promptly install the requested pole.

If the City believes a meeting with staff, including the City Attorney might be beneficial
in reaching a prompt and reasonable resolution of this matter we would be pleased to
meet. If the City of Albany is interested in holding such a meeting, please have counsel
contact me at 510 526-6259 to arrange a time and date for such a meeting.

We look forward to a prompt and reasonable resolution of this matter.

Very truly yours,

Robert E. Nichols
Direct Albany Lions Club

CC:   Valerie Dunlap, President, Albany Lions Club
        Art Longpre, Director, Albany Lions Club
        Penelope Leach, City Manager, City of Albany

# EXHIBIT 11



*Urban Village by the Bay*

# ALBANY CALIFORNIA

**CITY OF ALBANY**
1000 SAN PABLO AVENUE
ALBANY, CA 94706
www.AlbanyCA.org

Confidential Settlement Communication (Evidence Code Section 1152)
**SENT VIA E-MAIL and U.S. MAIL**
April 4, 2016

The Lions Club
Attention: Valerie Dunlap, President
704 Norvell St.
El Cerrito, 94530


Dear Ms. Dunlap and members of the Albany Lions Club,

The City Council is grateful for your courtesy to Mayor Maass and Council Member Nason when they visited with you on February 4, 2016.  They have described to us all how touched they were by your loyalty to your departed Lion friends and your own fraternal traditions, and impressed by your interest in the history and the future of the City of Albany.   They also expressed their appreciation of your willingness to hear alternative points of view to your own.

We would very much like to work with you to find a solution to that will address our shared interests, including: (1) appropriately memorializing Lions and others who provide devoted volunteer service to our community; (2) allowing the traditional Easter Sunrise services in the park to continue with an opportunity for the inclusion of a cross at such services; and (3) permanent design appropriate for use by all faiths (or of no faith) an equal opportunity to hold gatherings.

To begin this discussion, we ask you to consider the following proposal as an offer of settlement of threatened litigation:

1. The City of Albany will construct and maintain at the current location of the Lion's Club Cross on Albany Hill a Volunteers Memorial, which will include the following elements:

   a. A decorative bench approved by the Lions Club with a plaque bearing the LCI symbol and the following words: "Dedicated by the Albany Lions Club to its members who have served the City of Albany as public servants and

volunteers." The Lions Club may add additional plaques to the bench memorializing particular individuals if it so desires.

b. Facing the bench, a footing or pad will be constructed suitable for the support of temporary pole-based elements, such as a cross, a flagpole, or other signs or symbols that might be placed during special events.

c. The Volunteers Memorial will be made available to interested persons and organizations for short-term special events, by City-issued permit, on a nondiscriminatory basis, pursuant to the City approved procedures for special events in public parks.

d. The City of Albany will consider requests from other organizations to place similar benches within the Volunteers Memorial area honoring people for their service to the community. The design and placement of similar benches would be required to be complimentary to the Lion's Club bench.

2. The Lions Club will:

a. Accept the immediate disconnection of electrical service to the existing cross.

b. Take possession of the existing the Lions Club Cross upon its removal, unless the Albany Lions Club requests that the City of Albany recycle or otherwise dispose of it.

c. The Lions Club will execute the documents required to relinquish and extinguish all real property interests associated with the parcel.

Thank you for considering these ideas. Mayor Maass and Council Member Nason will follow up with you next week, and look forward to further dialogue with you on this issue.

Sincerely,

Peter Maass, Mayor

Peggy McQuaid, Vice Mayor

Councilmembers

Michael Barnes

Nick Pilch

Rochelle Nason

# EXHIBIT 12

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*          **3:22-CV-05377-WHO**
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

*Urban Village by the Bay*

# ALBANY CALIFORNIA

CITY OF ALBANY  **FIRE DEPARTMENT**
1000 SAN PABLO AVENUE
ALBANY, CA 94706
510 528-5770

www.AlbanyCA.org/fire

The Lions Club
704 Norvell St.
El Cerrito, CA 94530

August 24, 2016

Subject:     Fire and Life Safety Hazard at Albany Hill Cross

The electrical service line from the utility pole on Taft Street to the top of the cross
has been evaluated and determined a life and safety hazard to the Albany community.
The City of Albany has continued concern with public safety, loss and damage to the
environment, and liability to the City of Albany. The power pole and the cross are
both located on City property.

The potential exists that power line caused fires will become conflagrations during
the long and dry fire season commonly experienced in California. The most critical
weather factors are high wind, which is commonly accompanied by high temperature
and low humidity. Currently the electrical power supply to the cross is not adequately
secured and is in direct contact with a eucalyptus tree.

On November 24, 2015 the City of Albany formally requested the Lions Club work
with PG&E to disconnect power to the cross. As of today there remains power to the
cross. The City of Albany is working with PG&E to immediately disconnect power to
the cross.

Any vegetation fuels identified as a fire hazard by the fire inspection official of the
authority having jurisdiction shall be removed or modified and maintained in
accordance with:

- Public Resources Code 4291
- CCR Title 14, Division 1.5
- California Government Code Section 51182
- CCR Title 24, Part 9/T 19 Sec. 3.07 (b)

There have been many devastating fires caused by energized electrical lines in wild-land areas in California as well as other states. These fires have caused millions of dollars in damage, loss of life, and injuries to emergency responders. The City of Albany is taking a proactive approach to reduce devastation and destruction to our community by disconnecting power to the cross.

Should you have any questions please contact Community Development Director Jeff Bond (510) 528-5760.

Sincerely,

Lance Calkins                           Jeff Bond
Fire Chief                              Community Development Director
Albany Fire Department                  City of Albany

cc:     Penelope Crumpley, Albany City Manager

# EXHIBIT 13



# ALBANY LIONS CLUB

September 1, 2016

Lance Calkins
Fire Chief
Albany Fire Department
1000 San Pablo Avenue
Albany, California 94706

Jeff Bond
Community Development Director
City of Albany
1000 San Pablo Avenue
Albany, California 94706

### RE: Cross on Albany Hill

Gentlemen:

The Albany Lions Club is in receipt of your letter dated August 24, 2016, which was sent by e-mail on September 1, 2016.

First, we disagree with the inaccurate factual history contained in your letter. [1]   On November 19, 2015, Fire Chief Lance Calkins visited the Albany Lions Club and discussed the City's concerns regarding the cross on Albany Hill.  It was at the Chief's suggestion that the Club construct an intermediate utility pole.   In subsequent telephone conversations City Manager, Penelope Leach, continued to urge an intermediate pole as the City's preferred option.  Ms. Leach reiterated that a permit for

---

[1] The City's letter of August 24, 2016, is also deceptive when it states "The power pole and the cross are both located on City property." The letter fails to mention that the power pole is located in the PG&E right-of-way along a city street and is used in the transmission of utility services to the residents in the area. Your letter also fails to mention that while the cross is located on property owned by the City, the Lions Club has an easement for the use and maintenance of the lighted cross which predates the City's acquisition of the property. The cross has existed in this location for over 45 years. We take exception to your inference that the cross or the utility line are trespassing or otherwise illegally located.

Lance Calkins
Jeff Bond
September 1, 2016
Page 2

pole construction could be issued on the same day. In an attempt to mollify the City, and its request for an intermediary pole, Mr. Longpre visited Albany City Hall and presented specifications for the pole to the City.

On December 7, 2015, Mr. Bond responded to Mr. Longpre's proposal by writing:

> "I am writing to provide additional information associated with City review of construction of a privately owned utility pole on City property in order to provide new electrical service to the Lion's Club cross. We envision a two-step process. The first step will be a policy-level decision by the City Council on whether to grant permission for the placement of a new pole and re-routing of electrical service lines."

On December 21, 2015, Mr. Longpre and I met with Jeff Bond, Penelope Lynch and Craig Labadie to discuss the cross. During that meeting the City continued to indicate that an intermediate utility pole acceptable to PG&E would be an appropriate solution; unfortunately, the City was unable to identify a person or department at PG&E responsible for approval of intermediate poles but indicated it would check and attempt to identify an appropriate contact. Since that meeting the Lions have heard nothing from the City identifying a person or department at PG&E to contact regarding a private pole installation. The Lions have also attempted to locate an appropriate person or department at PG&E and all contacts have resulted in discussions of tree trimming rather than new pole installation.

Since the meeting of December 21, 2015, the City of Albany has communicated several requests and proposals for the removal of the cross. The Lions Club is continuing to evaluate and consider those requests and proposals; and until today, no further communications from the City regarding the electrical service or further information regarding the installation of a utility pole have been received.

Our letter of December 10, 2015, clearly stated our demand for due process before any interruption of service or utility disconnection occurs. We cautioned the City that any action that limits, restricts, disrupts, or otherwise interferes with the lighting of the cross or its use and enjoyment will cause us to consider prompt legal action. To date we have not received any notice of hearing or legal action which would permit the disconnection of the electric service to the cross.

Lance Calkins
Jeff Bond
September 1, 2016
Page 3

Also in our letter of December 10, 2015, we questioned the City's authority for requiring changes to the electrical service to the cross. It was and continues to be our belief that the utility, PG&E is responsible for the power line from the pole to the point of the electrical meter where the electrical service is connected. No one has provided contrary information. Furthermore, we believe the power line and electrical service met all codes and building requirements at the time of its installation and the City has failed to identify any code or requirement that is retroactively applicable to electrical service. Also in that letter, we suggested the simplest solution to the current cross matter would be for the City to trim its tree branches away from the utility line.

Finally, we have reviewed with interest the authorities you cite in your recent letter, none of which justify the action you have threatened in your letter. Public Resources Code § 4291 addresses the creation of "defensible space" by removing fuel including brush and grass. It is unclear how this statute applies to the present situation. You are also respectfully referred to paragraph (b) of Section 4291 which provides,

> "(b) A person is not required under this section to manage fuels on land if that person does not have the legal right to manage fuels, nor is a person required to enter upon or to alter property that is owned by any other person without the consent of the owner of the property."

This section does not appear to be applicable to the present matter.

Government Code §51182 appears equally inapplicable to the present matter. Section 51182 applies to persons who own, lease, control, operate, or maintain an occupied dwelling or occupied structure. As you clearly know, the cross is not occupied. The remainder of the section describes the removal of fuel and the maintenance of a defensible space. If anything, these statutes strongly suggest the City should trim its trees and clear its brush and grass; they in no way indicate any problem with a utility line. Similarly, Title 19 California Code of Regulations § 3.07 addresses in slightly more detail the requirements of Section 51182 regarding combustible material within ten feet of a structure, ground clearance, fire clearance and tree removal; it is equally inapplicable to the Albany Hill matter.

Title 14, Division 1.5 of the California Code of Regulations contains fourteen separate chapters ranging from "Department of Forestry and Fire Protection-Conflict of Interest"

Lance Calkins
Jeff Bond
September 1, 2016
Page 4

to "Lumber Products Assessment," exactly which of these regulations did you believe was applicable to the present matter?

In light of the statutes and regulations cited above, it continues to be our belief that the City is responsible for and should trim its trees and remove grass and brush so as to remove any fire danger. Clearly, the statutes cited place the duty on the property owner to clear trees and brush to prevent fires. [2]

In summary, we cannot correct a problem which either does not exist or has not been clearly articulated. It is grossly unfair to claim a "life and safety hazard" without identifying the specific violation and the means of correction. The City of Albany has not identified a single statutory or regulatory violation applicable to the Albany Hill Cross. All of the concerns expressed by the City appear to be the responsibility of either the utility company or the City of Albany. Consequently, we do not believe there is any legal basis for your demand to disconnect utility service to the cross. If there is valid reason for your demand please clearly state the violation, identify the code, statute or regulation placing responsibility on the Lions Club and not the City or the utility; and, state the corrective action necessary. The City has been remarkably silent regarding the steps it deems necessary to correct the perceived problem. [3] As we have pointed out above, we have heard different stories at different times from the City. Please provide a definitive statement of the perceive problem including the statutory authority and a clear statement as to what must be done to correct that problem.

Very truly yours,

Robert E. Nichols
Member of the Board of Directors.

CC: Penelope Crumpley, City Manager.

---

[2] We have previously noted that utility wires are running through trees and branches in many Albany neighborhoods. It is not apparent if this constitutes any violation of statute or regulation or who is responsible for correction.

[3] It has not gone unnoticed that the City's concerns with this 45 year old cross arise and correspond with the complaints raised by a local atheist group; and statements by City Council members of their personal dislike of the cross.

# EXHIBIT 14

*LIONS CLUB OF ALBANY, CALIFORNIA v. CITY OF ALBANY*          **3:22-CV-05377-WHO**
**PLAINTIFF'S REPLY BRIEF IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

*Urban Village by the Bay*

# ALBANY CALIFORNIA

CITY OF ALBANY  **FIRE DEPARTMENT**
1000 SAN PABLO AVENUE
ALBANY, CA 94706
510 528-5770

www.AlbanyCA.org/fire

December 14. 2016

Thomas Guarino
Pacific Gas and Electric
TGG3@pge.com

December 14, 2016

Subject:     Authorization to Restore Electric Service (PG&E Electric Rule 11.H.3.b)
&
             Notice of Potentially Unsafe PG&E Apparatus (PG&E Electric Rule
11.H.1.a)

On September 1, 2016, the City of Albany sent PG&E an emergency request based on fire and life safety hazards to terminate service to the electrical service line from the utility pole on Taft Street to the top of the cross on Albany Hill. As the City's termination request letter explained, the electrical power supply to the cross is not adequately secured and is in direct contact with a eucalyptus tree. The City noted its concern for public safety, loss and damage to the environment, and potential liability to the City; there have been many devastating fires caused by energized electrical lines in wild-land areas in California and other states.

PG&E terminated electrical service to the cross the day it received the City's written request. However, within the past week and apparently after being contacted by the cross operator (Albany Lions Club), PG&E's legal counsel has suggested PG&E is responsible for addressing any safety issues related to the electrical service line. According to PG&E's legal counsel, PG&E is willing to restore service but it needs a letter from the City per PG&E Electric Rule 11.H.3.b. With the understanding that PG&E will make the ultimate determination as to the safety of the line, the City hereby authorizes PG&E to restore electrical service to the cross.

PG&E's legal counsel informed the City that the line will be a standard PG&E conductor when the PG&E restores service. The City agrees that such a line replacement is appropriate given the condition and configuration of the existing line. Although CPUC General Order 95, Rule 35, permits some contact between low voltage conductors and vegetation, the issues with the existing line here go beyond mere contact:

-   The existing line appears to be uninsulated or have insulation damage
    (possibly from friction with trees);

- The wiring itself appears to be significantly damaged, with vulnerable splices, and coming unbraided in places (again, this may be a result of friction with trees);

- The line appears to be supported by branches of a eucalyptus tree that shifts substantially in even light winds—the tree shifting seems to significantly compromise the integrity of the line.

Thus, there appears to be significant strain and abrasion to the line in violation of CPUC General Order 95, Rule 35. Last week, a Senior Public Safety Specialist from PG&E stated that he shared the City's safety concerns after he observed the line during the service termination process.

The City is confident that, prior to restoring service, PG&E will ensure that the new line and its support are "of a type and located such that service wires may be installed in accordance with good engineering practice and in compliance with all applicable laws, ordinances, rules, and regulations including those governing clearances and points of attachment." (PG&E Electric Rule 16.D.2.a.3; see also PG&E Electric Rule 16.F.1.)

The City of Albany took a proactive approach to reduce potential devastation to our community by disconnecting power to the cross. We trust that PG&E will show the same concern for life and property in its evaluation and replacement of the existing line.

Please do not hesitate to contact me (209) 401-1471 if you have any questions.

Thank you for your exemplary service to the City of Albany.

Lance Calkins
Fire Chief

cc:     Penelope Crumpley, Albany City Manager
        Robert Nichols, Attorney for Albany Lions Club
        Chuck Lewis IV, Attorney for PG&E