UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LIONS CLUB OF ALBANY, CALIFORNIA,

        Plaintiff,

  v.

CITY OF ALBANY,

        Defendant.

No. C 22-05377 WHA

*Related to* C 17-05236 WHA

**ORDER RE PRELIMINARY INJUNCTION**

## INTRODUCTION

Four years ago, a prior order decided cross-motions for summary judgment between these same parties, regarding the same cross on a hill. Today, the parties return with a variation on their constitutional dispute. For the foregoing reasons, this action is **STAYED**. The motion for preliminary injunction is **GRANTED IN PART**.

## STATEMENT

An electrically-illuminated steel and plexiglass Latin cross, measuring over 20 feet tall, has stood atop Albany Hill since 1971. The 1.1 acres of land hosting the cross initially belonged to a couple, Hubert and Ruth Call, who were members of the Lions Club, a nonprofit organization. The couple allowed the Lions Club to erect the cross on their land and illuminate it every Christmas and Easter, which it has done every season up to the present. Via a series of

transactions in 1972 involving the Calls, a third-party developer, and the City of Albany, the land was acquired by the City for use as a public park. The City was on constructive notice of the Lions Club's valid easement for ingress and egress to maintain the existing cross at the time the land was acquired by the City.

In September 2017, the Lions Club filed suit against the City of Albany. The Lions Club alleged that starting in November 2015, after prompting by a group called the "East Bay Atheist," the City began to investigate whether the cross was structurally sound and expressed concerns regarding the safety of the electric utility line that ran through it. Despite finding no safety error, and having no statutory or regulatory authority, plaintiffs alleged, the City worked with PG&E to shutdown electricity to the cross for a period of 108 days. This resulted in the Lions Club's inability to light the cross on at least five separate days, including during the December 2016 Christmas Holiday. So, the Lions Club sued and the City brought counterclaims for quiet title, trespass and nuisance. In the prior order granting in part and denying in part cross-motions for summary judgment ("June 2018 Order"), this Court found that the Lions Club had a valid easement, rejecting the idea that an otherwise valid easement "simply goes limp the moment the land goes into the City's ownership" (*id*. at 9). However, this Court also found the City's use of land bearing the cross violated the Establishment Clause, and it was up to the City to remedy such violation. In a dictum, the June 2018 Order suggested three ways to the City to cure the violation, but, there was no adverse party or intervenor at the time seeking to compel the City to do so. Afterwards, the parties settled and stipulated to dismissal with the exception that all parties could immediately appeal all issues and rulings in the June 2018 Order (Dkt. No. 113). The June 2018 Order was subsequently affirmed on appeal. Three years passed.

In May 2022, the City filed a complaint in eminent domain with the Superior Court of the County of Alameda to acquire the Lions Club's easement along with a motion for prejudgment possession of the easement. Prejudgment possession, also known as a "quick-take" eminent domain action, allows the government to take early possession of the property at issue before litigation is concluded upon depositing the probable amount of just compensation in court available to the owner (State Order at 4). The City's complaint and motion followed a

"resolution by necessity" hearing a month earlier, in which officials heard commentary from the public regarding the proposed takings action. After this hearing, the City unanimously passed the resolution to proceed with eminent domain. After briefing and a hearing, Judge Somnath Raj Chatterjee granted the City prejudgment possession of the Lions Club's easement, permitting - (but not requiring) the City to take down the Lions Club's cross and store it in a safe space pending the outcome of the eminent domain trial (State Order at 12).

Importantly, in granting the City's motion, Judge Chatterjee preliminarily found that the City could exercise eminent domain, but was careful to emphasize that its determination did *not* reflect on the actual merits of the pending action. Judge Chatterjee stated:

> It should be noted that the determination of the [City's] right to take the property by eminent domain is preliminary only. The granting of an order for possession does not prejudice the [Lions Club's] right to demur to the complaint or to contest the taking. Conversely, the denial of an order for possession does not require a dismissal of the proceeding and does not prejudice the plaintiff's right to fully litigate the issue. . .

(State Order at 7) (citing Legislative Committee Comment following Cal. Civ. Proc. Code § 1255.410). The trial date of the validity of the eminent domain action is not yet set.

In September 2022, following this determination in state court, the Lions Club filed the instant complaint in our district court along with a motion for preliminary injunction (Dkt. No. 1, 9).* The new complaint claims, *inter alia*, that free speech and freedom of religion violations have occurred by virtue of the state court's determination, as "the loss of First Amendment freedoms, even for minimal periods of time, unquestionably constitutes irreparable injury" (Br. 19). The Lions Club asserts even temporary removal of the cross would be tantamount to "desecration of [a] sacred symbol" (Reply Br. 9). This order follows full briefing and a hearing.

## ANALYSIS

It is true that this Court's June 2018 Order provided three suggestions on how the City of Albany could cure its Establishment Clause violation. It stated, in relevant part, "[t]o remedy the

---

* These docket numbers, along with all docket numbers that follow, correspond with the new case number 3:22-cv-05377 WHA. All previous docket numbers were in reference to the related case 3:17-cv-05236 WHA.

1    Establishment Clause violation, the City has at least two options — either sell a parcel containing
2    the cross to a private party or condemn the easement through its power of eminent domain.
3    Possibly, a third option would be to adopt a zoning ordinance banning all religious symbols from
4    its public places" (June 2018 Order at 15).
5         This dictum was to point out a continuing Establishment Clause violation and to list three
6    ways for the City to cure the violation. It did not order any of the three options in particular, and
7    the dictum could not be deemed to be an order anyway because there was no one in the prior
8    case asking for such relief. But, having invested many hours in the case in solving the related
9    issues before it, the Court felt this considered dictum would be a beneficial word to the wise as to
10   a path forward.
11        Judge Chatterjee said in his prejudgment possession order that the "Federal Action
12   Order" cannot be collaterally attacked in the state court action and that to set aside that order, the
13   Lions Club:

> would need to go back to federal court in the Federal Action (or another appropriate forum, if there is one) and litigate the matter. Thus, the City of Albany is on the horns of a dilemma (1) Under the Federal Action Order, the City is in a state of violation and has been ordered to cure that violation; or (2) if there is to be further litigation to set aside that Order, Albany would face exactly the type of litigation that it seeks to avoid. Either way, there would be a substantial hardship unless Albany complies with the Order in the Federal Action.

(State Order at 9). Judge Chatterjee was exceedingly kind in treating the 2018 dictum as an order, but this gave too much deference. Yes, the City is violating the Establishment Clause, but the 2018 dictum merely suggested three possible cures — it did not order any of the three in particular. The state court has before it two separate points. One is the underlying eminent domain action, which is in its early stages and will not go to trial for many months. We do not know for sure whether eminent domain will be granted. The other is the issue of whether the Superior Court should allow the City to remove the cross pending trial. With respect to that issue, Judge Chatterjee held that in weighing the balance of equities and hardships, the City seeks to avoid the hardship of being in violation of the Establishment Clause. That the City had

4

1  other options available (such as selling the land to the Lions Club) is not necessarily enough to
2  defeat a "public necessity," as this Court understands eminent domain law.  The City wants to
3  keep the park and remove the cross, not sell the land.  Further, as revealed at our hearing, there
4  is and has been no current offer by the Lions Club to purchase a parcel that includes the cross.
5  These considerations are relevant in weighing hardships and, as explained above, the question
6  of provisional relief is wholly in the hands of the Judge Chatterjee.  He is free to rule either way
7  without offending any order or dictum by this court.

8   At our hearing, however, it also developed that the City cannot say with any certainty
9  whether it can put the cross back up after its provisional removal, should the City ultimately
10 lose the eminent domain jury trial.  The City stated that decision would need to go through
11 permitting or zoning approval, a public process which it cannot dictate or predict.  Thus, as the
12 Court sees things, this is not just a decision merely pending litigation, but rather practically,
13 once the cross is down, it is down for good.  This raises a serious exercise of religion problem
14 and in considering this issue, Judge Chatterjee's ruling appears to have been based on a
15 misunderstanding of this Court's prior ruling.  Therefore, until such time as Judge Chatterjee
16 can reassess the motion for prejudgment possession, taking into consideration the correct
17 understanding of the June 2018 Order, removal of the cross is **ENJOINED**.

18  If the Lions Club disapproves of any ruling of Judge Chatterjee in the past or future, it
19 should take its disagreement to the California Court of Appeal.

20  Finally, in the prior litigation, the Lions Club raised the issue of free exercise.  The
21 Court ruled that the Lions Club had a valid easement and the City took the land with notice of
22 the easement.  They settled the case before we had a chance to reach any further issues.  At no
23 time has the Court ruled that the Lions Club loses on its free exercise of religion arguments as
24 long as it continues to own the easement.  And, at no time has the Court ruled pending
25 completion of one of the three suggested alternatives, the cross must be taken down.  The issue
26 of provisional relief is a balancing of hardships question under state law and a question of what
27 the parties agreed to in their settlement (which is also a state law issue) — the outcome of which
28 is not necessarily dictated by anything this Court has ever written.

**CONCLUSION**

The parties should take this clarification back to Judge Chatterjee. Until Judge Chatterjee issues his new ruling on prejudgment possession, removal of the cross is **ENJOINED**, but once he rules anew, this injunction shall automatically end. He should balance the hardships under state law, taking into account the establishment of religion on the one hand versus exercise of religion on the other, and keeping in mind the distinct risk that once the cross is down, even "temporarily," it is down forever. Pending the resolution in state court, this case will be **STAYED**.

**IT IS SO ORDERED.**

Dated: November 17, 2022.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE