ROBERT E. NICHOLS (SBN 100028)
RICHARD W. COVERT (SBN 34582)
713 Key Route Blvd.
Albany, California 94706
Telephone: (510) 710-7033
renichols01@comcast.net

*Attorneys for Plaintiff,
The Lions Club of Albany, California*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **THE LIONS CLUB OF ALBANY, CALIFORNIA, A** Nonprofit Corporation,<br><br>        **Plaintiff,**<br><br>v.<br><br>**THE CITY OF ALBANY**, a Charter City; and **DOES** 1 through 25;<br><br>        **Defendants.** | Case No. 3:22-CV-5377 WHA<br>Related to 3:17-CV-05236 WHA<br><br>**PLAINTIFF MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TERMINATE STAY, FOR TEMPORARY RESTRAINING ORDER AND MOTION FOR PRELIMINARY INJUNCTON**<br><br>Date: TBD<br>Time: TBD<br>Courtroom: 12, 19th Floor<br>Judge: William H. Alsup |

1

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**  Case No. 3:22-cv-05377 WHA

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ……………………………………………………………………….. 2

TABLE OF AUTHORITIES……………………………………………………………………….. 3

MEMORANDUM OF POINTS AND AUTHORITIES ………………………………………… 4

INTRODUCTION ……………………………………………………………………………….. 4

LEGAL STANDARD ………………………………………………………………………….… 6

ARGUMENT…………………………………………………………………………………....... 6

    I.    The Lion's Club is Likely to Succeed on the Merits ………………………….…..6

        A. The City's Action Taking Property and Removing a Christian Cross
           Interferes with and Burdens the Lions Club's Free Exercise of Religion. …….. 6

           1.   The Taking of the Lions Easement and Removal of the Cross is ……. 7
                Subject to Strict Scrutiny Since it is Neither Neutral or Generally
                Applicable

           2.   The Taking of the Lions Easement and Removal of the Cross is ……. 8

           3.   Defendant's Actions Fail Both Prongs of Strict Scrutiny….. 10

                a.   Condemning the Property as Opposed to Selling a Small ………10
                    Parcel of Land Furthers No Compelling Interest
                    Furthers No Compelling Interest.

                b.   The City Has Demonstrated No Compelling State Interest
                    for Prejudgment Possession and Removal of the Cross. ……… 11

                c.   Defendant's Actions Are Not Narrowly Tailored ……………… 11

    II.   The Lions Club Will Suffer Irreparable Harm Unless this Court Intervenes
        and Halts the Defendant's Removal of the Cross. ………………………………….. 12

    III.  The Balance of Equities and the Public Interest. Favor Protecting the Lions
        Club's First Amendment Rights. ……………………………………………… 12

CONCLUSION ……………………………………………………………………………….. 13

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM
STAY AND PRELIMINARY INJUNCTION.**                        **Case No. 3:22-cv-05377 WHA**

# TABLE OF AUTHORITIES

**Cases** — **Page(s)**

*American Legion v. Am. Humanist Ass'n* 139 S. Ct. 2067, 204 L. Ed. 2d 452 (2019). …... 10

*California v. Azar,* 911 F.3d 558 (9th Cir. 2018) ……………………………………….. 6

*Cottonwood Christian Center v. Cypress Redevelopment Agency*,
218 F. Supp. 2d 1203 (C.D. Cal. 2002). …………………………………………… 9

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 534; ………… 8, 9, 10
113 S. Ct. 2217 (1993).

*Drakes Bay Oyster Co. v. Jewell ,* 747 F.3d 1073 (9th Cir. 2014). ……………………… 6

*Employment Div. v. Smith,* 494 U.S. 872 (1990). ………………………………………… 7, 9

*Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*,
No. 22-15827 (9th Cir. Aug. 29, 2022) ……………………………………………. 7

*Fulton v. City of Philadelphia,* 141 S. Ct. 1868 (2021). ………………………………….. 8, 9, 11

*Hartford Courant Co. v. Carroll,* 986 F.3d 211 (2d Cir. 2021) …………………………. 12

*Hobbie v. Unemployment Appeals Commission,* 480 U.S. 136 (1987). ………………… 10

*Kennedy v. Bremerton Sch. Dist.,* No. 21-418, 2022 WL 2295034, (U.S. June 27, 2022) … 7

*Melendres v. Arpaio,* 695 F.3d 990 (9th Cir. 2012). ……………………………………. 13

*Napa Valley Publishing Co. v. City of Calistoga,* 225 F. Supp. 2d 1176, (N.D. Cal. 2002) ... 12

*Peterson v. Minidoka County School District* No.331, 118 F. 3d 1351 (1997). ……………… 9

*Roman Catholic Diocese of Brooklyn v. Cuomo,* 141 S. Ct. 63 (2020) (per curiam) ……….. 12

*Sammartano v. First Judicial District Court,* 303 F.3d 959 (9th Cir. 2002) ………………. 12

*Thomas v. Review Bd. of the Ind. Emp't Sec. Div*., 450 U.S. 707 (1981) …………………... 11

*Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 129 S. Ct. 365, 172 L.Ed.2d 249 (2008).. 6

**Constitution and Statutes**

U.S. Constitution, Amendment I ……………………………………………………... 5, 6, 7

Cal. Code of Civ. Pro. §1240.030 …………………………………………………………. 9

Cal. Code of Civ. Pro. § 1255.410 ……………………………………………………… 9

**City of Albany**

City of Albany General Plan, Chapter 6 …………………………………………………… 4, 5

City of Albany Code § 20:12:070 ……………….3……………………………………... 5

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

This application for a TRO and Preliminary Injunction seeks to prevent the City of Albany (City) from abusing the power of eminent domain to remove a Christian cross originally constructed on private property by the Lions Club of Albany (Lions Club) and now standing on a valid easement in a park on Albany Hill. The City has obtained a new Order from the Alameda County Superior Court for the of authorizing prejudgment possession of the Lions' easement and allowing the City to tear down and remove the Cross after March 3, 2023. The Lions Petition for a Writ of Mandate/Prohibition was summarily denied without the California Court of Appeals reaching the merits of the issue.

On November 17, 2022, this Court granted in part, an Order enjoining the City of Albany from removing the Lions Club's cross on Albany Hill Park, until such time as the Superior Court of Alameda County [Judge Chatterjee] reconsidered its Order of August 30, 2022 granting the City prejudgment possession of the Lions Club's cross.  In its order this Court noted that Judge Chatterjee appeared to have granted the City possession of the cross based on a misunderstanding of this Court's June 15, 2018 ruling in the related case. This Court clarified that ruling for the Judge Chatterjee.

In its Order of November 17, 2022, this Court noted that permanent removal of the cross raised a serious constitutional issue regarding the free exercise of religion. This Court also suggested that Judge Chatterjee balance the hardships under state law, taking into account the prohibition on establishment of religion on one hand, versus the guarantee of free exercise of religion on the other, and to keep in mind the distinct risk that once the cross is down even "temporarily," it is down forever.

On December 8, 2022, the City filed a Motion requesting Judge Chatterjee to reaffirm his original Order granting the City possession of the cross. In its Brief opposing the City's Motion, the Lions Club presented additional evidence that once the cross is removed, the Lions Club will not be able to reconstruct it. Chapter 6 of the City's General Plan designates Albany Hill as "Park and Open Space." Exhibit 7. The City Zoning Map and Zoning Ordinance /Zoning Code

4

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**                    Case No. 3:22-cv-05377 WHA

1  § 20.12.070 shows the Albany Hill Park as "Public Facilities" (Exhibit 8)

2  The cross is a structure and thus violates the Park and Open Space provisions of the City's General Plan. The cross is privately owned and thus violates the City's Zoning Ordinance which only allows "Public Facilities" at the Albany Hill Park. Replacing the cross would require a General Plan Amendment and an Amendment of the Zoning Code. Even if the City Council was inclined to initiate these processes, it would generate controversy. Any City of Albany resident could file a lawsuit alleging that amending the City's General Plan and Zoning Code to permit construction of a Christian cross in the Albany Hill Park would violate the Establishment Clauses of the California and US Constitutions.

On January 30, 2023 after a hearing, despite this Court's guidance and the Lions Clubs objections, Judge Chatterjee reaffirmed his original Order granting the City prejudgment possession of the cross. (Exhibit 1) In his Order of January 30, 2023, Judge Chatterjee never mentions or weighs the Lions Club's rights to free exercise of religion versus the establishment of religion. Judge Chatterjee never mentions or weighs that once the cross is down, the Lions Club can never reconstruct it on Albany Hill, even if it defeats the City's "right to take." Judge Chatterjee never mentions what, if any, substantial hardship the City will suffer if immediate possession is denied. The Order never analyzes whether the hardship the City will suffer if possession is denied, outweighs any hardship the Lions Club will suffer caused by granting the City possession.

Furthermore, Judge Chatterjee refused to consider the Declaration of Robert E. Nichols containing quotations from city council members showing and expressing a clear preference for atheism and non-Christian religions over the Christian religion and its symbols. The City has repeatedly expressed its desire to remove the cross and is now abusing the exercise of eminent domain to achieve the purpose of removing the cross without regard to the Lions Club's rights to free exercise of religion, and free speech under First Amendment of the United States Constitution.

On February 22, 2023, following the advice of this Court in its November 17, 2022 Order, the Lions Club filed a Petition for a Writ of mandate/prohibition with the California State Court of Appeal, First Appellate District, Division Five, to bar the City from removing the cross, prior to a final judgement that the City has the right to condemn the cross. (Exhibit 2) Two days later, on

5

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**              Case No. 3:22-cv-05377 WHA

February 24, 2023, the Court of Appeal denied the Writ for alleged technical defects, described in three brief paragraphs. The Court's denial never reaches the merits of the Writ. (Exhibit 3)

Following this Court's advice, on November 21, 2022, the Lions Club presented a written offer to the City $12,500 to buy the lot containing the cross. (Exhibits 4). If accepted, this solution would solve the City potential Establishment Clause violation. The cross would be in private ownership. The day after this offer was made, the City Council rejected the offer. (Exhibit 5) The immediate rejection of the Lion's Offer to Purchase shows that the City had no interest in solving the potential Establishment Clause problem— its real agenda was to remove the cross. In doing so the City sides with atheists and others who oppose the cross as against the Lions Club member and others who worship at the cross. This violates the Lions Club's rights of free exercise of religion and free speech guaranteed under First Amendment of the United States Constitution as well as Article I, sections 2 and 4 of the California Constitution.

The City has been granted possession of the Lions easement for the cross and will take, injure, burden, and harm the Lions rights of free exercise of religion and free if it is allowed to take down and remove the Cross.

## LEGAL STANDARD

To obtain Temporary Restraining Order, a plaintiff must show: (1) that it is "likely to succeed on the merits," (2) that it is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that the "balance of equities tips in [its] favor," and (4) that "an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008). When the government is a party, the last two factors merge. *California v. Azar*, 911 F.3d 558,575 (9th Cir. 2018); *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

## ARGUMENT

I.  **The Lions Club is Likely to Succeed on the Merits**

   A.  **The City's Action Taking Property and Removing a Christian Cross Is A Clear Interference and Burden on The Lions Free Exercise of Religion**

The First Amendment's Free Exercise Clause bars government from "prohibiting the free

6

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**                                    Case No. 3:22-cv-05377 WHA

exercise" of religion. (U.S. Constitution, Amendment I.) The "exercise of religion" often involves not only belief but the performance of physical acts such as assembling with others for a worship service, participating in sacramental use of bread and wine, and proselytizing. A State cannot ban such acts or abstentions when they are engaged in for religious reasons. *Employment Div. v. Smith,* 494 U.S. 872, 877 (1990). The City of Albany has engaged in just such a violation.

A plaintiff may carry the burden of proving a Free Exercise violation in various ways, including by showing that a government entity has burdened his sincere religious practice pursuant to a policy that is not "neutral" or "generally applicable." *Kennedy v. Bremerton Sch. Dist.,* No. 21-418, 2022 WL 2295034, (U.S. June 27, 2022) (quoting *Emp. Div., Dep't of Hum. Res. of Ore. v. Smith*, 494 U.S. 872, 881 (1990)); *Fellowship of Christian Athletes v. San Jose Unified Sch. Dist. Bd. of Educ.*, No. 22-15827 (9th Cir. Aug. 29, 2022) When a plaintiff makes such a showing, a court "will find a First Amendment violation unless the government can satisfy 'strict scrutiny' by demonstrating its course was justified by a compelling state interest and was narrowly tailored in pursuit of that interest." *Kennedy* at 17*;* "[T]he government has the burden to establish that [a] challenged law satisfies strict scrutiny."

The City has filed an eminent domain action to condemn the Lions Club's easement and cross. The Lions Club has filed a Answer with ten affirmative defenses disputing the City's right to take under eminent domain.

### 1. The City has Unconstitutionally Targeted the Lions easement and the Cross on Albany Hill For Removal

The City has targeted the Cross on Albany Hill for removal and repeatedly expressed its dislike and its desire to remove the Cross. In a recent social media post of February 8, 2023, former councilmember Nason reflected on the City's 2016, disconnection of utility service to the cross and refusal to allow utility service to be reestablished because the City's wanted the cross removed. Nason wrote:

- "The city council decided that rather than rewiring its cross, [allow PG&E to repair the service drop] it would like to replace it [the cross] with a gathering spot where Christians could raise a cross on Christmas and Easter but that could be used by others at other times." (See Exhibit 6)

Additional statements of city councilmembers concerning the cross were included in paragraphs 3 through 9 in the Declaration of Robert E. Nichols filed September 23, 2022.

The City's anti-Christian Cross bias was plainly apparent at the meeting of April 4, 2022, when the Council considered the Resolution of Necessity in anticipation of the eminent domain action. The Lions Club has on multiple occasions offered to purchase the lot of land with the Cross, thereby obviating any perceived need to remove the Cross. However, the Council has consistently refused to even consider this secular option. Instead, the City Council adopted by unanimous vote without comment or discussion by the council the resolution or necessity. (See Declaration of Kenneth Berner previously filed with the Court.)  Furthermore, the lack of any facts and reliance on conclusionary statements further shows arbitrary and capricious nature of the council action. The City has refused to consider or adopt any alternative that would leave the Cross in place.

## 2. The Taking of the Lions Easement and Removal of the Cross is Subject to Strict Scrutiny Since it is Neither Neutral or Generally Applicable

Strict scrutiny applies to the City's taking of the Lions Club's easement and removal of the Cross for two independent reasons.

First, the Free Exercise Clause forbids subtle departures from neutrality, and covert suppression of particular religious beliefs.  Official action that targets religious conduct for distinctive treatment cannot be shielded by mere compliance with facial neutrality. The Free Exercise Clause protects against governmental hostility which is masked as well as overt. *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 534; 113 S. Ct. 2217 (1993).

Courts apply strict scrutiny when the government "proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature." *Fulton v. City of Philadelphia,* 141 S. Ct. 1868, 1877 (2021).

Contrary to the stated position of Judge Chatterjee the Court's inquiry does not end with the text of the action at issue. Facial neutrality is not determinative. The Free Exercise Clause extends beyond facial discrimination.  The Clause "forbids subtle departures from neutrality. *Lukumi, supra* at 534 [citing *Gillette v. United States, 401 U.S. 437,452 (1971)]* The Free Exercise

Clause protects against governmental hostility which is masked as well as overt. "The Court must survey meticulously the circumstances of governmental categories to eliminate, as it were religious gerrymanders." *Lukumi, supra* at 534

In *Lukumi* the Supreme Court found the City of Hialeah's ordinances prohibiting the animal sacrifice in a public or private ritual or ceremony a constitutional violation.

In the present matter the City has shrouded its dislike, and animosity toward the cross with concerns about a Establishment Clause problem. Assuming arguendo, that the City has shown "overriding need' for prejudgment possession and "substantial hardship" if such possession is denied, under CCP §1255.410 (d)(2)(D) the City must show its "substantial hardship" outweighs any hardship on the Lions Club caused by granting the order of possession.

*Second,* California's eminent domain statute is not a law of "general applicability." Strict scrutiny is triggered when the government has in place a system of individual exemptions, it may not refuse to extend that system to cases of religious hardship without compelling reason. *Employment Div. v. Smith,* 494 U.S. 872, 884 (1990) [citing *Bowen v. Roy,* 476 U.S. 693, 708 (1986)]. The exercise of eminent domain constitutes a system of individual exemptions requiring strict scrutiny. *Cottonwood Christian Center v. Cypress Redevelopment Agency*, 218 F. Supp. 2d 1203 1223 (C.D. Cal. 2002).

In exercising the power of eminent domain, the "governing board" [City] had discretion to adjust its plan in response to public comments, consider alternatives to the proposed action and exercise its discretion in determining whether the "project" [removal of the Cross] was "compatible with the greatest public good and the least private injury." Cal. Code of Civ. Pro. § 1240.030. The City could have agreed to selling a small lot of land containing the Cross to a private party.  The City instead condemned the cross with full knowledge that it is a symbol used by the Lions in their exercise of free speech and free exercise of religion.  The City was specifically warned that in making such a determination it was expressing a preference for atheist and non-Christian religions. Such individualized decisions are just the sort of government actions that demand strict scrutiny. See *Fulton,* 141 S. Ct. at 1879, and generally *Peterson v. Minidoka County School District* No.331, 118 F. 3d 1351(1997).

9

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**                    Case No. 3:22-cv-05377 WHA

### 3. Defendant's Actions Fail Both Prongs of Strict Scrutiny.

The City's decision to condemn the Lions Club's easement and cross instead of selling the lot the cross stands upon is a clear violation of the Lions free exercise of religion which is neither neutral or generally applicable. Since the City's action fails both prongs of strict scrutiny the City's eminent domain action can stand only if it advances compelling state interests "of the highest order" that is "narrowly tailored in pursuit of those interests. *Lukumi*, *supra*, 508 U.S. at 546.

### a. Condemning the Property as Opposed to Selling a Small Parcel of Land Furthers No Compelling Interest.

Governmental removal of religious symbols is not a compelling state interest. "A government that roams the land, tearing down monuments with religious symbolism and scrubbing away any reference to the divine will strike many as aggressively hostile to religion." *American Legion v. Am. Humanist Ass'n* 139 S. Ct. 2067, 2084-2085, 204 L. Ed. 2d 452 (2019).

Ostensibly, the City claims the compelling interest justifying it taking of the Lions Club easement and removing the cross is to "avoid a potential Establishment Clause issue." Avoiding a potential Establishment Clause issue is a legal problem not a compelling state interest. The City claims it was required to condemn the Lions easement pursuant to the decision in *Lions Club of Albany v. City of Albany*. However, this mistaken belief was correct by this Court in its order of November 17, 2022.

In the eminent domain action, the City has merely acted on its prejudices and opted for removal of the cross without fairly weighing alternatives. Since there exist an alternative that will not injure the Lions First Amendment rights the City is required to adopt the most carefully tailored and neutral option. While the City might prefer removal of the cross, the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause. *Hobbie v. Unemployment Appeals Commission,* 480 U.S. 136. 145 (1987). Despite its disapproval the City need not remove the Cross to eliminate its perceived Establishment Clause problem. The City may simply sell off a subdivided parcel of land containing the Cross to a private party.

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**　　　　　　　　　　Case No. 3:22-cv-05377 WHA

The City also attempts to justify its exercise of eminent domain as necessary to "enable the public to more fully use and enjoy the park as an open space without the encumbrance." The Cross is hardly a significant encumbrance standing 28 feet high and 8 feet in width resting upon a concrete base measuring six feet by four feet. Including the cross arms, the Cross occupies a miniscule 48 square feet in a five-acre park! The Cross rests on the east side of the park very near to the edge of a steep slope. The Cross stands away from the trail and does not impede pedestrian walking traffic through the park or interfere with wildlife. (See Declarations of Kevin Pope paragraph 11 and Kenneth Berner, Paragraphs 9 and 10 previously filed in this matter)

In its application the City touts the natural wildlife in the park and speaks of future plans for hiking trails and restoring native habitat in general but it fails to explain how the cross hinders or interferes with any of these objectives. In sum, the City's Establishment Clause and "park management" claims are negligeable and fall far short of the justification necessary to withstand substantial scrutiny.

### b.  The City Has Demonstrated No Compelling State Interest for Prejudgment Possession and Removal of the Cross.

The City is attempting to remove the Cross NOW, prior to trial. The City offers only the most meager explanation for immediate removal of the Cross repeating the same potential Establishment Clause claims discussed above. The City also added an additional justification claiming it is seeking to "eliminate potential tax payer dollars to be spent regarding a potential Establishment Clause violation." The assertion that the City may be sued is speculative. The City has offered no evidence of a claim or threatened action regarding the Cross. Furthermore, the City can completely eliminate any such risk by selling the plot containing the Cross to a private party.

### c.  Defendant's Actions Are Not Narrowly Tailored

The government may justify an inroad on religious liberty by showing that it is the least restrictive means of achieving some compelling state interest. Only those interests of the highest order can overbalance legitimate claims to the free exercise of religion. *Thomas v. Review Bd. of the Ind. Emp't Sec. Div.*, 450 U.S. 707, 718 (1981) When the government "can achieve its interests in a manner that does not burden religion, it must do so." *Fulton,* 141 S. Ct. at 1881. In the present

11

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.                Case No. 3:22-cv-05377 WHA

case the City has at least one option which does not burden the Lions rights of free exercise of religion and free speech; allow the property to go into private hands. The Lions have offered to purchase the lot upon which the cross rests but the City has refused to consider this option. Since an option not violative of the Lions free exercise and free speech rights is possible, the City's proposed taking is not narrowly tailored and will not survive strict scrutiny.

## II. The Lions Club Will Suffer Irreparable Harm Unless this Court Intervenes and Halts the Defendant's Removal of the Cross

Unless enjoined by this Court, the Lions Club will suffer irreparable harm if the City is permitted to remove the Cross from Albany Hill.

First, "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) "When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary." *Hartford Courant Co. v. Carroll,* 986 F.3d 211, 224 (2d Cir. 2021) A temporary restraining order and preliminary injunction are provisional remedies, their purpose of which is to preserve status quo and to prevent irreparable loss of rights prior to final disposition of the litigation. *Napa Valley Publishing Co. v. City of Calistoga,* 225 F. Supp. 2d 1176, 1180 (N.D. Cal. 2002) The City of Albany's eminent domain proceedings are inflicting such harm, irreparably depriving Lions Club of its free exercise of religion and free speech.

Displaying a "heads I win, tails you lose attitude," the City now seeks to remove the cross prior to a final judgment that it has the right to condemn the cross. In view of the forgoing the Lions Club will suffer irreparable harm from the removal of the Cross.

## III. The Balance of Equities and the Public Interest. Favor Protecting the Lions Club's First Amendment Rights.

In this matter the public interest favors a temporary restraining order and preliminary injunction. "Courts considering requests for preliminary injunctions have consistently recognized the significant public interest in upholding First Amendment principles." *Sammartano v. First Judicial District Court,* 303 F.3d 959, 974 (9th Cir. 2002) Indeed, "[i]t is always in the public

12

interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio,* 695 F.3d 990, 1002 (9th Cir. 2012).

The Cross has stood for 50 years and the Lions are only asking that this Court maintain the status quo pending the resolution pending resolution of the eminent domain action. The City refuses to consider less burdensome alternatives to condemning the cross. The Lions proposed alternatives, if implemented, will resolve all constitutional concerns without burdening either party. The evidence shows the City has a long history of animus toward the cross because it is a Christian symbol. The City cannot condemn the cross when there are other constitutionally permissible methods of solving its Establishment Clause problem.

## CONCLUSION

For the foregoing reasons, the Court should issue a temporary restraining order and preliminary injunction prohibiting Defendants from taking any further steps to take the Albany Lions Club's easement or remove the cross by eminent domain.

Dated: February 27, 2023

Respectfully submitted,

/S/ Robert E. Nichols

ROBERT E. NICHOLS
Attorney for Plaintiff
Lions Club of Albany, California

13

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**                Case No. 3:22-cv-05377 WHA

# CERTIFICATE OF SERVICE

I AM A RESIDENT OF THE State of California, over the age of eighteen years and not a party to the within action. My business is 713 Key Route Blvd., Albany, California. I served the following documents:

- **PLAINTIFF'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER,**

- **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF TEMPORARY RESTRAINING ORDER,**

- **DECLARATION OF ROBERT E. NICHOLS IN SUPPORT OF TEMPORARY RESTRAINING ORDER.**

- **[PROPOSED] ORDER GRANTING MOTION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION.**

on SCOTT W. DITFURTH, ESQ, attorney for the City of Albany, pursuant to agreement with counsel, by electronically transmitting (emailing) an electronic copy of each document to: scott.ditfurth@bbklaw.com

I declare under the penalty of perjury under the laws of the State of California and the laws of the United States that the above is true and correct and that this declaration was executed on February 27, 2023, at Albany, California.

/S/ Robert E. Nichols
_____
Robert E. Nichols

14

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RELIEF FROM STAY AND PRELIMINARY INJUNCTION.**           **Case No. 3:22-cv-05377 WHA**