ROBERT E. NICHOLS (SBN 100028)
RICHARD W. COVERT (SBN 34582)
713 Key Route Blvd.
Albany, California 94706
Telephone: (510) 710-7033
renichols01@comcast.net

*Attorneys for Plaintiff,*
*The Lions Club of Albany, California*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| **THE LIONS CLUB OF ALBANY, CALIFORNIA, A** Nonprofit Corporation,<br><br>**Plaintiff,**<br><br>v.<br><br>**THE CITY OF ALBANY**, a Charter City; and **DOES** 1 through 25;<br><br>**Defendants.** | Case No.   3:22-CV-05377<br>Related to 3:17-CV-05236<br><br>**DECLARATION OF ROBERT E. NICHOLS IN SUPPORT OF MOTION FOR RELIEF OF STAY OF PROCEEDINGS, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND RELATED EXHIBITS** |

I, Robert E. Nichols, declare:

1.      I am an attorney at law, a member in good standing of the State Bar of California and duly admitted to practice before this and other courts.  I am the attorney of record for Plaintiff, the Lions Club of Albany, California and in that capacity, I have personal knowledge regarding the filing and matters related to this case.

2.      I have represented the Lions Club in matters regarding the Cross on Albany Hill including the legal action, *City of Albany v. The Lions Club of Albany, California.*

3.      On November 17, 2022, this Court issued a preliminary injunction in this matter

1

1    and enjoined the City of Albany from removing the Cross on Albany Hill suggesting that the

2    parties take this Court's clarification back to Superior Court Judge Chatterjee and until Judge

3    Chatterjee issues a new ruling on the prejudgment possession, the injunction would automatically

4    end.

5        4.      This Court further ordered that pending resolution in state court, the case will be

6    stayed.

7        5.      This Court further order, "If the Lions Club disapproves of any ruling of Judge

8    Chatterjee in the past or future it should take its disagreement to the California Court of Appeal.

9        6.      On January 12, 2023, a hearing was held in Alameda County Superior Court on the

10    City of Albany's motion to "Affirm the Court's prejudgment Possession Order."

11        7.      On January 30, 2023, Judge Chatterjee issued an "Amended Order re: Ruling on

12    Submitted Matter and affirmed his August 30, 2022, Order. (A copy of Judge Chatterjee's

13    Amended Order is attached as Exhibit 1.)

14        8.      A reading of the January 30, 2023, Order does not indicate that Judge Chatterjee

15    balanced the hardships under state law taking into account the establishment of religion versus

16    exercise of religion nor does the Order indicate that Judge Chatterjee considered the distinct risk

17    that once the cross is down, its is down forever as this Court suggested.

18        9.      On February 22, 2023, pursuant to this Court's Order, the Lions Club filed a

19    Petition for a Writ of Mandate/Prohibition in the California Court of Appeals, First District,

20    seeking a stay preventing the City from removing he Cross on Albany Hill, and a Writ mandating

21    the Superior to Court to vacate its order of prejudgment possession.  (A copy of the Petition for

22    Writ of Mandate/Prohibition is attached as Exhibit 2.)

23        10.      The Petition for Writ of Mandate/Prohibition was DENIED by the Court of Appeals

24    **without reaching the merits** of the matter for reasons related to the timing of the Original Order

25    of August 30, 2022, and the date of the Lions application for Writ without regard to this Courts

26    November 17, 2022, order, or Judge Chatterjee's subsequent order of January 30, 2023, and for

27    asserted technical issues. (A Copy of the Court of Appeals Order Denying the Writ is attached as

28    Exhibit 3.)

11.     The Lions Club has not received a review of Judge Chatterjee's order on the merits and has exhausted its state court appellate options.  The Lions Club contends that there remain serious First Amendment issues that have not been considered by the state courts and without the assistance of this Court the Lions rights to free exercise of religion and free speech involving the use of the cross will be lost forever.

12.     The Lions Club requests this Court grant relief from the stay imposed in its November 17, 2022, Order and permit the Lions Club to pursue this Application for Temporary Restraining Order, grant the Temporary Restraining Order preserving the cross and issue an Order to Show Cause setting a hearing on the Lions Motion for a Preliminary Injunction.

13.     Pursuant to local rules, counsel for Plaintiff, the Lions Club of Albany, attempted to contacted counsel for Defendant, the City of Albany, to give notice of Plaintiff's *ex parte* applications as follows:

A.     On February 27, 2023, at approximately 9:15A.M. counsel for Plaintiff telephoned Scott W. Ditfurth, counsel for the City of Albany. A brief voice mail message requesting a return call was provided.

B.     At approximately 1:00 P.M. Mr. Ditfurth returned my telephone message. In our telephone conversation I requested that the City agree to not remove of the cross on March 3, 2023, when the Superior Court stay expires, so that the Lions could file a Motion for Preliminary Injunction instead of requesting a Temporary Restraining Order.  Mr. Ditfurth indicated his belief that the City was not inclined to delay removal of the cross.  Mr. Ditfurth requested I forward an e-mail message with my request so that he could respond in writing

C.     At approximately 1:11 P.M. I transmitted via electronic mail a message to Mr. Ditfurth requesting that the City agree to not remove the cross from Albany Hill in order to allow the Lions to bring a noticed motion. I further advised that absent an agreement staying removal of the cross, the Lions would be filing an *ex parte* Application for Relief of Judge Alsup;'s Order staying this federal action, Seeking a Temporary Restraining Order and Preliminary Injunction.  The message was transmitted to Mr. Ditfurth at scott.ditfurth@bbklaw.com . A copy of this e-mail is attached as Exhibit 10.

3

D.    At 3:30 P.M., two hours after our telephone conversation and email, I had not received a written or other additional response from Mr. Ditfurth. I telephone Mr. Ditfurth but he did not answer and I again left a voice mail message. I also forwarded a text message to Mr. Ditfurth's telephone with no response.

E    At 4:16 P.M. I received an email message from Mr. Ditfurth stating that he would speak with the City and respond to me no later than tomorrow. Mr. Ditfurth added,

> "If the Lions Club elects to file something in advance of hearing back from the City, we will note our objection that the Lions Club provided an inadequate opportunity for the City to evaluate your request. Your phone call and email provide no basis for why any motion needs to be filed today."

14.    While there is no legal requirement that the moving papers for Relief of Stay and a Temporary Restraining Order be filed today, but  Plaintiff believes the Court is entitled to the greatest amount of lead time possible to review and reflect upon the Motion and documents supporting the requests.  **Removal of the cross has only been stayed until Friday, March 3, 2023.**

15.     In the event the City is willing to refrain from removing the cross until this Court can have an opportunity to conduct a full hearing on the motions for relief of stay of these proceedings, the request for a Temporary Restraining Order and Preliminary Injunction, counsel can work together to schedule a date and time convenient to the Court and the parties for a hearing on Plaintiff's motions.

16.    **Exhibit 1** is a true and correct copy of the January 30, 2023, Amended Order of Judge Chatterjee.

17.    **Exhibit 2** is a true and correct copy of the Petition for Writ of Mandate/Prohibition filed with the Court of Appeals on February 22, 2023.

18.    **Exhibit 3** is a true and correct copy of the Denial of the Petition for writ of mandate/prohibition by the Court of Appeal, First Appellate District, Division Five.

19.    **Exhibit 4** is a true and correct copy of the Lions Club's Offer to Purchase from the City the Property on Albany Hill upon which the cross is located for $12,500.

4

20..    **Exhibit 5** is a true and correct copy of the City's rejection of the Lions Offer to purchase property.

21.    **Exhibit 6** is a true and correct copy of a "screen shot" of the Facebook post by former Albany Mayor, Rochelle Nason on the Facebook page of Lions President Kevin Pope.

22.    **Exhibit 7** is a true and correct copy of  Chapter 6 (Parks, Recreation, and Open Space Element) of the City of Albany General Plan.

23    **Exhibit 8** is a true and correct copy of the Section 20:12:070 of the Albany City Code, a Zoning Map of the city.

24.    **Exhibit 9** is a true and correct copy of the complaint filed in this matter on September 21, 2022.

25.    **Exhibit 10** is a true and correct copy of the e-mail messages sent to Mr. Ditfurth and received from Mr. Ditfurth.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct, and that this Declaration is executed on this 27th day of February, 2023.

        */S/ Robert E. Nichols*
ROBERT E. NICHOLS
Attorney for the
Lions Club of Albany, California

## LIST OF EXHIBITS

**Exhibit 1:**     January 30, 2023, Amended Order of Judge Chatterjee.

**Exhibit 2:**     Petition for Writ of Mandate/Prohibition filed in the Court of Appeals
on February 22, 2023.

**Exhibit 3:**     Denial of the Petition for writ of mandate/prohibition by the Court
of Appeal, First Appellate District, Division Five.

**Exhibit 4:**     Lions Club's Offer to Purchase from the City the Property on
Albany Hill upon which the cross is located for $12,500.

**Exhibit 5:**     City's rejection of the Lions Offer to purchase property.

**Exhibit 6:**     A "screen shot" of the Facebook post by former Albany
Mayor, Rochelle Nason.

**Exhibit 7:**     A copy of Chapter 6 (Parks, Recreation, and Open Space Element)
of the City of Albany General Plan.

**Exhibit 8:**     A copy of the Section 20:12:070 of the Albany City Code,
a Zoning Map of the city.

**Exhibit 9:**     A copy of the complaint filed in this matter on September 21, 2022.

**Exhibit 10:**    A copy of the email message sent to and received from Defendant City of
Albany's counsel,  Scott Ditfurth on February 27, 2023.

# EXHIBIT 1

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

---

| | |
|---|---|
| City of Albany, a charter city<br>        Plaintiff/Petitioner(s)<br>                vs.<br>Albany Lions Club et al<br>        Defendant/Respondent(s) | No.        22CV010822<br><br>Date:        ~~CFDHEDDCH~~<br>Time:        2:55 PM<br>Dept:        517<br>Judge:        Somnath Raj Chatterjee<br><br>AMENDED ORDER re: Ruling on<br>Submitted Matter |

The Court, having taken the matter under submission on 01/12/2023, now rules as follows:

The Motion re: To Affirm the Court's Prejudgment Possession Order filed by City of Albany, a charter city on 12/08/2022 is Granted.

Plaintiff City of Albany's ("Plaintiff") Motion to Affirm Prejudgment Possession Order is GRANTED.

The Court has reviewed and considered the papers, arguments, and evidence presented by the parties on the Motion to Affirm the Court's Prejudgment Possession Order. The Court has reviewed and considered the Order Re Preliminary Injunction entered on November 17, 2022, in Lions Club of Albany, California v. City of Albany, United States District Court, Northern District of California, Case No. No. C 22-05377 WHA, and reassessed its prior Order in light thereof.

The federal court's November 17, 2022, Order by Hon. William H. Alsup in the C 22-05377 federal action described the federal courts' prior Order in the C 17-05236 action as follows: "[The] Court also found the City's use of land bearing the cross violated the Establishment Clause, and it was up to the City to remedy such violation. In a dictum, the June 2018 Order suggested three ways to the City to cure the violation, but, there was no adverse party or intervenor at the time seeking to compel the City to do so. Afterwards, the parties settled and stipulated to dismissal with the exception that all parties could immediately appeal all issues and rulings in the June 2018 Order (Dkt. No. 113). The June 2018 Order was subsequently affirmed on appeal." (Order at 2:16-22.) The federal court further explained, "Yes, the City is violating the Establishment Clause, but the 2018 dictum merely suggested three possible cures — it did not order any of the three in particular." (Id. at 4.)

This Court in its August 30, 2022, Order did not find that the Order in the C 17-05236 federal action ordered the City of Albany to condemn the easement (as represented by the Lions Club at oral argument), and this Court does not and did not dispute that the federal court's three suggestions on how to cure the problem in the C 17-05236 Order were dicta. The federal court has now confirmed that it found that the land bearing the cross violated the Establishment Clause in its C 17-05236 Order, and the federal court did not change that ruling in the C 22-05377

---

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF ALAMEDA
## Hayward Hall of Justice

action. The C 17-05236 federal action Order stated that the City "must remedy its First Amendment violation" and "is obligated to condemn the easement or otherwise solve its Establishment Clause problem." Lions Club of Albany v. City of Albany, 323 F. Supp. 3d 1104, 1117 and 1118 (N.D. Cal. 2018). The federal courts' November 17, 2022 Order in the C 22-05377 action does not change or modify those assertions. How the City choses to cure the Establishment Clause violation is a legislative choice up to the elected officials of the City of Albany. They have chosen to proceed with this eminent domain action. In this action, the Court found that the City of Albany established the requirements for Prejudgment Possession under California law.

The arguments raised by the Lion's Club on this motion outside of the federal court's November 17, 2022 Order largely repeat arguments previously raised and considered by the Court.

The Court has reassessed its prior Order as requested by the federal court, and has done so based on all the submissions and arguments on this motion. The Court finds that affirming its August 30, 2022, Order is appropriate.

The Court hereby rules as follows:

1. The Court's Order Granting Plaintiff's Motion for Prejudgment Possession filed on August 30, 2022, is AFFIRMED.

2. The Lion's Club requested a stay of this Order in the event of affirmance. The Court will stay this Order for a period of 30 days. This stay shall be lifted on March 3, 2023. Any request for a further stay of this Order should be directed to the Court of Appeal.

Dated: ~~EFDHEDEGH~~

Somnath Raj Chatterjee / Judge

---

| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF ALAMEDA** | Reserved for Clerk's File Stamp |
|---|---|
| COURTHOUSE ADDRESS:<br>Hayward Hall of Justice<br>24405 Amador Street, Hayward, CA 94544 | **FILED**<br>Superior Court of California<br>County of Alameda<br>01/30/2023<br>Chad Finke, Executive Officer / Clerk of the Court<br>By: _Stefanie Gould_ Deputy<br>S. Gould |
| PLAINTIFF/PETITIONER:<br>City of Albany, a charter city | |
| DEFENDANT/RESPONDENT:<br>Albany Lions Club et al | |
| **CERTIFICATE OF ELECTRONIC SERVICE CODE OF CIVIL**<br>**PROCEDURE 1010.6** | CASE NUMBER:<br>22CV010822 |

**I, the below named Executive Officer/Clerk of Court of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that on this date I served one copy of the Amended Order re: Ruling on Submitted Matter entered herein upon each party or counsel of record in the above entitled action, by electronically serving the document(s) from my place of business, in accordance with standard court practices.**

Megan Beshai
Best Best & Krieger LLP
megan.beshai@bbklaw.com

Robert Eugene Nichols
renichols01@comcast.net

SCOTT W. DITFURTH
Best Best & Krieger LLP
scott.ditfurth@bbklaw.com

Chad Finke, Executive Officer / Clerk of the Court

Dated: 01/30/2023

By:

_Stefanie Gould_

S. Gould, Deputy Clerk

EXHIBIT 2

IN THE COURT OF APPEAL OF THE STATE OF CALIFIORNIA

FIRST APPELLATE DISTRICT, DIVISION No. _____

**IMMEDIATE RELIEF REQUESTED TO STAY
ORDER OF PREJUDGMENT POSSESSION; TRIAL
COURT STAY OF ORDER EXPIRES MARCH 3, 2023**

| | |
|---|---|
| LIONS CLUB OF ALBANY, CALIFORNIA, | Court of Appeal No. _____ |
|         Petitioner,<br>v. | Alameda County Superior Court Case No. 22CV010822 |
| THE ALAMEDA COUNTY SUPERIOR COURT, | Hon. Somnath R. Chatterjee Judge of the Superior Court Department 517 Telephone: (510) 690-2726 |
|         Respondent, | |
| CITY OF ALBANY, A Charter City, | |
|         Real Party in Interest. | |

**PETITION FOR WRIT OF MANDATE, PROHIBITION OR
OTHERAPPROPRIATE RELIEF; REQUEST FOR
IMMEDIATE STAY; MEMORANDUM OF POINTS AND
AUTHORITIES
[Exhibits Filed Under Separate Cover]**

**ROBERT E. NICHOLS**
State Bar Number 100028
**RICHARD W. COVERT**
State Bar Number 34582
713 Key Route Blvd.
Albany, California 94706
Telephone: (510) 710-7033
eMail: renichols01@comcast.net

Attorneys for Petitioner
Lions Club of Albany, California

**APP-008**

| | COURT OF APPEAL CASE NUMBER: |
|---|---|
| **COURT OF APPEAL** FIRST **APPELLATE DISTRICT, DIVISION** | |

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NUMBER: 100028<br>NAME: ROBERT E. NICHOLS<br>FIRM NAME: Law Offices of Robert E. Nichols<br>STREET ADDRESS: 713 Key Route Blvd.<br>CITY: Albany STATE: CA ZIP CODE: 94706<br>TELEPHONE NO.: (510) 710-7033 FAX NO.:<br>E-MAIL ADDRESS: renichols01@comcast.net<br>ATTORNEY FOR (name): Petitioner, Lions Club of Albany, California | SUPERIOR COURT CASE NUMBER:<br>22CV01822 |
| APPELLANT/ LIONS CLUB OF ALBANY, CALIFORNIA<br>PETITIONER: | |
| RESPONDENT/ ALAMEDA CO. S.Ct. / CITY OF ALBANY<br>REAL PARTY IN INTEREST: | |
| **CERTIFICATE OF INTERESTED ENTITIES OR PERSONS** | |
| (Check one): [ X ] INITIAL CERTIFICATE [ ] SUPPLEMENTAL CERTIFICATE | |

**Notice: Please read rules 8.208 and 8.488 before completing this form. You may use this form for the initial certificate in an appeal when you file your brief or a prebriefing motion, application, or opposition to such a motion or application in the Court of Appeal, and when you file a petition for an extraordinary writ. You may also use this form as a supplemental certificate when you learn of changed or additional information that must be disclosed.**

1. This form is being submitted on behalf of the following party (name): Lions Club of Albany, California

2. a. [ X ] There are no interested entities or persons that must be listed in this certificate under rule 8.208.

   b. [ ] Interested entities or persons required to be listed under rule 8.208 are as follows:

| **Full name of interested<br>entity or person** | **Nature of interest<br>(Explain):** |
|---|---|
| (1) | |
| (2) | |
| (3) | |
| (4) | |
| (5) | |

[ ] Continued on attachment 2.

**The undersigned certifies that the above-listed persons or entities (corporations, partnerships, firms, or any other association, but not including government entities or their agencies) have either (1) an ownership interest of 10 percent or more in the party if it is an entity; or (2) a financial or other interest in the outcome of the proceeding that the justices should consider in determining whether to disqualify themselves, as defined in rule 8.208(e)(2).**

Date: February 21, 2023

ROBERT E. NICHOLS
(TYPE OR PRINT NAME)

_(signature)_
(SIGNATURE OF APPELLANT OR ATTORNEY)

Page 1 of 1

Form Approved for Optional Use<br>Judicial Council of California<br>APP-008 [Rev. January 1, 2017]

**CERTIFICATE OF INTERESTED ENTITIES OR PERSONS**

Cal. Rules of Court, rules 8.208, 8.488
www.courts.ca.gov

**For your protection and privacy, please press the Clear This Form button after you have printed the form.** [ Print this form ] [ Save this form ] [ Clear this form ]

2

# TABLE OF CONTENTS

Page

CERTIFICATE OF INTERESTED ENTITIES OR PERSONS ... 2

TABLE OF CONTENTS ... 3

TABLE OF AUTHORITIES ... 6

TABLE OF SEPARATELY BOUND EXHIBITS ... 7

PETITION FOR WRITOF MANDATE, PROHIBITION OR OTHER RELIEF ... 10

INTRODUCTION ... 10

PETITION ... 16

    BENEFICIAL INTEREST OF PETITIONER; CAPACITIES OF RESONDENT AND REAL PARTY IN INTEREST ... 17

    AUTHENTICITY OF EXHIBITS ... 18

    TIMELINESS OF THE PETITION ... 18

    RELEVANT FACTS AND PROCEDURE ... 19

    ABSENCE OF OTHER REMEDIES ... 35

    GROUNDS FOR IMMEDIATE STAY ... 36

PRAYER ... 37

VERIFICATION ... 40

3

MEMORANDUM OF POINTS AND AUTHORITIES    41

ARGUMENT    41

A.  The Real Party in Interest, the City of    41
    Albany Is Not Entitled to Prejudgment
    Possession Pursuant to CCP § 1255.410(d)(2).

    1.  The City Has NOT Established an    41
        Overriding Need for Prejudgment
        Possession or Shown It Will Suffer a
        Substantial Hardship if Possession is
        Denied.

        a.  There is No Evidence of the    42
            Alleged Need to Manage Plants,
            Birds and Animal Life Without
            Interference of the Cross

        b.  The City's Establishment Clause    45
            Concerns Do Not Constitute an
            Overriding Need nor A
            Substantial Hardship.

    2.  The City Has Failed to Show It Will    48
        Suffer a Substantial Hardship if
        Possession is Not Granted that
        Outweighs the Hardship the Lions
        Club will Suffer

        a.  Removal of the Cross on Albany    48
            Hill will Deprive the Lions of Their
            First Amendment Rights of Free
            Exercise of Religion and Freedom
            of Speech, a Substantial Hardship.

       **b.**      **Once the Cross is Taken Down,**    **50**
                   **it is Down Forever.**

       **c.**      **The Hardship the Lion Club will**    **52**
                   **Suffer if Prejudgment Possession**
                   **is Granted Outweighs Any**
                   **Hardship the City will Suffer if**
                   **Possession is Denied**

    **3.**    **The City is Not Entitled to Take the**    **54**
           **Lions Club's Easement and Remove the**
           **Cross by Eminent Domain**

       **a.**      **Governmental Action that**    **54**
                   **Burdens, Interferes with or**
                   **Violates the Free Exercise of**
                   **Religion and Free Speech Rights**
                   **of Citizens Must Be Carefully**
                   **Tailored.**

    **4.**    **The Lions Club Does not Dispute The Forth**    **57**
           **Required Finding that the City Has Made a**
           **Deposit Pursuant to CCP § 1255.010**

**CONCLUSION**    **57**

**CERTIFICATE OF WORD COUNT**    **58**

**PROOF OF SERVICE**    **59**

# TABLE OF AUTHORITIES

**Page(s)**

***United States Constitution***
First Amendment                                           11, 20, 21, 46
Fourteenth Amendment                                            16

***Federal Cases***
*Lions Club of Albany v. City of Albany,*             19, 20, 21, 22
323 F. Supp. 3d 1104 (N.D. Cal. 2018)

*Lions Club of Albany v. City of Albany*,                     21
No. 18-17046 (9th Cir. Dec. 18, 2019)

***Federal Statutes***
42 USC § 1983                                                30, 46
42 USC § 1988                                                30. 46

***California Constitution***
Article I Sections 2                                            55
Article I Sections 4                                            55

***State Cases***
*Catholic Charities of Sacramento v.*                          55
*Superior Court,* 32 Cal.4th 527, 562
(Cal. 2004);

*Valov v. Department of Motor Vehicles*,                       55
132 Cal.App.4th 1113 (Cal. Ct. App. 2005)

***State Statutes***
CCP § 904.1(a)(1)                                               35
CCP § 1240.010                                                 56
CCP § 1240.030                                                 56
CCP  § 1255.010                                                57
CCP § 1255.410                              11, 15, 17, 24, 25,41, 54
CCP § 1260.120                                                 14

***Albany City Code***
Albany City Code § 20.44.040                                   33
Albany City Code § 20.12.070                                 34, 51

***City Albany General Plan***
Chapter 6 of the City of Albany's General Plan          27, 28, 33
                                                        34, 43, 51, 52

# TABLE OF EXHIBITS SUPPORTING PETITION FOR
# WRIT OF MANDATE AND/OR PROHIBITION

| EXH. NO. | DOCUMENT | VOL. | PAGE |
|---|---|---|---|
| 1 | 1/30/23 Alameda County Superior Court ORDER Prejudgment Possession | 1 | 66 |
| 2 | Reporter's Transcript of 1/12/23 Hearing | 1 | 70 |
| 3 | Order Granting Plaintiff's Motion For Prejudgment Possession 8/30/22 | 1 | 114 |
| 4 | Reporter's Transcript of 8/16/22 Hearing | 1 | 127 |
| 5 | Albany's Resolution of Necessity | 1 | 164 |
| 6 | Lions Club's Objections to Resolution of Necessity. | 1 | 170 |
| 7. | 6/9/22 Declaration of Kenneth Berner | 1 | 177 |
| 8 | Lions Offer to Purchase Lot from City | 1 | 181 |
| 9, | City's Rejection of Offer | 1 | 184 |
| 10 | 9/22/22 Declaration of Kenneth Berner | 1 | 187 |
| 11 | 9/22/22 Declaration of Kevin Pope | 1 | 192 |
| 12 | City of Albany Complaint in Eminent Domain 5/4/22<br>Exhibit A: Legal Description, Easement Arial View<br>Exhibit B: Resolution of Necessity | 2 | 200<br><br>205<br><br>210 |
| 13 | Lions Club of Albany Verified Answer | 2 | 221 |
| 14 | City of Albany Motion for Prejudgment Possession. | 2 | 229 |

7

| EXH. NO. | DOCUMENT | VOL. | PAGE |
|---|---|---|---|
| 15 | Declaration of Richard Covert | 2 | 244 |
| 16 | Declaration of Jeff Bond | 3 | 251 |
| | Exhibit A: 12/12/21 City's Offer to Purchase Lions Easement and Appraisal Report | | 257<br><br>260 |
| | Exhibit B:  Resolution of Necessity | | 290 |
| | Exhibit C:  6/15/2018 U.S. District Court Judge Alsup Order Granting in Part and Denying in Part Cross Motions for Summary Judgment. | | 301 |
| 17 | Chapter 6 City of Albany General Plan | 3 | 321 |
| 18 | Lions Club's Memorandum of P&As in Opposition to City of Albany's Motion for Prejudgment Possession. | 3 | 350 |
| 19 | City of Albany Reply Brief in Support of Motion for Prejudgment Possession | 3 | 361 |
| 20 | U.S. District Court Complaint Lions Club of Albany v. City of Albany | 3 | 384 |
| 21 | Lions Memorandum of Points and Authorities in Support of Preliminary Injunction | 3 | 400 |
| 22 | City of Albany Memorandum of P&As In opposition to Preliminary Injunction | 3 | 423 |
| 23 | Lions Reply Memorandum of P&As in Support of Preliminary Injunction | 3 | 453 |
| 24 | U.S. District Court Order RE Preliminary Injunction | 3 | 474 |

| EXH. NO. | DOCUMENT | VOL. | PAGE |
|---|---|---|---|
| 25 | Superior Court Judge Chatterjee Tentative Ruling | 3 | 481 |
| 26 | Albany City Code § 20.44.040 | 3 | 489 |
| 27 | City of Albany Zoning Map | 3 | 491 |
| 28 | City of Albany Motion to Affirm Court's Order of Prejudgment Possession | 3 | 493 |
| 29 | Lions Memorandum of P&As in Opposition to Reassessment of order of Prejudgment Possession | 3 | 514 |
| 30 | City of Albany Reply in Support of Prejudgment Possession | 3 | 528 |

9

## PETITION FOR WRIT OF MANDATE, PROHIBITION

## OR OTHER RELIEF

TO THE HONORABLE PRESIDING JUSTICE AND
ASSOCIATE JUSTICES OF THE COURT OF APPEAL OF
THE STATE OF CALIFORNIA, FIRST APPELLATE
DISTRICT:

### INTRODUCTION

"The City of Albany has filed an eminent domain action
to condemn a Christian cross, owned by the Albany Lions
Club. The Lions Club is contesting the City's "right to take"
the cross.  Although the City is not constructing a public
improvement, it obtained an Order for Prejudgment
Possession of the cross, pursuant to CCP sec 1255.410 from
the Alameda County Superior Court. That Order allows the
City to remove the cross now, even though there has been no
final judgement finding that the City is entitled to condemn
the cross. The Court's Order is not supported by any evidence
of "overriding need" and "substantial hardship", nor evidence
showing the hardship the City will suffer outweighs the

hardship the Lions will suffer once the City removes the cross, as required by CCP § 1255.410.

Uncontroverted evidence shows that once the cross is removed the Lions will never be able to replace it. Removal of the cross, prior to a final judgement holding that the City has the right to condemn the cross, violates the Lions rights of free exercise of religion and free speech guaranteed under Article I, sections 2 and 4 of the California Constitution, and the First Amendment to the US Constitution.

In Light of the Superior Court's reliance on a 2018 federal ruling the Lions sought a preliminary injunction in federal court.  District Court Judge William Alsup granted in part an order enjoining the City from removing the cross saying that Superior Court Judge Chatterjee (the Respondent) appeared to have granted prejudgment possession based upon a misunderstanding of the federal court's 2018 ruling. Judge Alsup noted that permanent removal of the cross raises a serious exercise of religion problem and enjoined removal of the cross until Judge

Chatterjee reassessed the City's motion taking into consideration the correct understanding of the June 2018 ruling.

Judge Alsup also suggested that Judge Chatterjee balance the hardships under state law taking into account the establishment of religion on one hand versus exercise of religion on the other and keep in mind the distinct risk that once the cross is down even "temporarily," it is down forever.

However, on motion of the City the City of Albany, Judge Chatterjee again considered the matter and on January 30, 2023, again issued an order granting prejudgment possession.

The Lions are seeking a stay from execution of the Superior Court's recent Order, as well as a Writ of Mandate directing the Court to vacate its Order and enter a new order denying the City's Motion for prejudgment possession; or alternatively, a Writ of Prohibition prohibiting the Court from issuing an Order of prejudgment possession. The Lions have

no other remedy at law and will be permanently injured if a Writ is not granted.

The cross was erected in 1971, on the private property of Ruth and Hubert Call. In 1973, pursuant to a series of real estate transactions involving a third-party developer, the Calls, and the City of Albany, the City acquired the Calls' property on Albany Hill subject to an easement in favor of the Lions Club to maintain the cross on the property. The City accepted the property as part of a development agreement subject to the easement and the cross.

In 2017, a dispute arose between the City and the Lions Club which resulted in an action before the U.S. District Court for the Northern District of California. The Federal Court held the Lions Easement VALID but explained that in accepting the property with the easement and cross the City had also caused an Establishment Clause problem. In *dictum* the federal court provided some "words to the wise" about how the City might resolve that problem but issued no orders or directions regarding when or how to resolve the matter.

Over three years later, in early March 2022, the City suddenly decided to terminate the Lions Club easement and remove the cross, by commencing condemnation proceedings. The first step was the adoption of a Resolution of Necessity, authorizing condemnation of the Lions Club cross and easement. The City's proposed Resolution states that "eminent domain is necessary for the elimination of a potential establishment clause concern and to provide for an unencumbered public park"

The Lions Club offered to buy the City's underlying fee interest in the lot containing the cross.  The cross would then be in private ownership—there would be no Establishment Clause problem.

In May 2022, almost three years after the federal case became final, the City filed an action to condemn the Lions easement and remove the cross. The Lions Club filed an Answer denying that the City has the right to take its easement and tear down its cross. Pursuant to CCP § 1260.120, a trial will be held to determine whether the

City of Albany has the right to condemn the Lions Club's property. The trial date is July 17, 2023.

The City, despite having no project to construct filed a Motion for Prejudgment Possession pursuant to CCP sec 1255.410, two days after filing the complaint seeking immediate possession of the Lions Club's property—and the right to remove the cross —prior to a Final Judgement on the City right to take the Lions Club's property.

The Lions assert that the City has failed to make a sufficient factual showing of an "overriding need to possess the property prior to final judgment and that the City will not suffer a substantial hardship if possession is denied. CCP § 1255.410(d)(2)(C).  The Lions further assert that the hardship the City will suffer, if any at all, is outweighed by the hardship the Lions Club will be caused by granting of the order of possession. CCP § 1255.410(d)(2)(D).

If this Writ is not granted, the Lions Club will lose its cross, even if the Lions Club prevails on the "right to take" issue. Losing the cross will violate the Lions Club's right of free exercise of religion under the Article I, Section

4 of the California Constitution, which provides that "Free exercise and enjoyment of religion without discrimination or preference are guaranteed." It will also violate the free exercise of religion, free speech, and due process rights guaranteed to the Lions Club by the First and Fourteenth Amendments to the US Constitution.

## PETITION

Petitioner, the Lions Club of Albany, California hereby Petitions this Court for a writ of mandate and/or prohibition or other appropriate relief, directing Respondent, the Superior Court of the State of California in and for the County of Alameda to vacate its Order granting Real Party in Interest, the City of Albany's,  Motion for an Order of Possession Prior to Judgment of the Lions Club's easement, authorizing the removal the cross prior to a trial on the City's right to take in eminent domain action and directing the Respondent Superior Court to issue a new and different order denying the City's Motion for prejudgment possession; or alternatively, prohibiting the Superior Court from issuing an Order allowing the City of Albany to take possession of the

Lions Club's easement prior to trial or otherwise authorizing removal of the cross prior to a final judgment; or other appropriate relief.

**To These ends, Petitioner alleges:**

**BENEFICIAL INTEREST OF PETITIONER: CAPACITIES OF RESPONDENT AND REAL PARTY IN INTEREST.**

1.    Petitioner, the Lions Club of Albany, California (hereafter the Lions Club) is a nonprofit public service corporation that owns a Christian cross standing on a valid easement on Albany Hill in the City of Albany, California. The City of Albany has filed an eminent domain action and Respondent Alameda County Superior Court has granted a motion for prejudgment possession pursuant to CCP §1255.410 allowing the City to remove the cross but staying that removal until March 3, 2023, so that the Lions Club could apply for a writ. (See Exhibit 1, Superior Court Order dated 1/28/23.)

2.     Respondent is the Alameda County Superior Court, which entered the Order granted Prejudgment Possession and authorizing removal of the cross.

3.     Real Party in Interest is the City of Albany, California (hereafter City) is a charter city organized pursuant to the Constitution and laws of the State of California and is located in Alameda County, California.

**AUTHENTICITY OF EXHIBITS**

4.     The exhibits accompanying this petition are true and correct copies of the original documents filed with respondent court except for Exhibit 2, which is a true and correct copy of the reporter's transcript of the January 12, 2023, hearing and Exhibit 4 which is a true and correct copy of the reporter's transcript of the August 16, 2022 hearing before the Respondent Court.

**TIMELINESS OF THE PETITION**

5.     On January 30, 2023, Superior Court Judge Somnath Raj Chatterjee issued an Order of Prejudgment Possession authorizing the City to remove the cross but staying the

removal until March 3, 2023.  This petition is filed within 30 days of the Court's Order.

**RELEVANT FACTS AND PROCEDURE.**

6.     In 1973 Hubert Call, a devout Christian and a member of the Albany Lions Club, and a member of the Albany City Council, imposed an easement for the maintenance of a steel Christian cross on Albany Hill on several of his subdivided lots. The cross had been constructed by the Albany Lions Club in 1971 with the support of Mr. Call. Call deeded the easement to the Lions Club.  *Lions Club of Albany v. City of Albany,* 323 F. Supp. 3d 1104 (N.D. Cal. 2018)

7.     In 1972 a real estate developer sought the City's approval of a residential subdivision on Albany Hill. The City required the developer to dedicate certain lots to the City, for a public park. The developer offered those lots, including the lots subject to the Albany Lions Club's easement to maintain the cross. The City accepted all the lots, with at least constructive knowledge that it was accepting the lots subject to the easement and the cross.  The City knew or should have

known that acceptance of the lots created a potential violation of the Establishment Clause--the First Amendment to the Constitution prohibits government from establishing religion and guarantees the free exercise of religious belief by the people. For 45 years the City took no action to address this potential problem. *Lions Club of Albany v. City of Albany, supra.*

8.     Since its construction in 1971, the Lions Club has illuminated the cross for 15 days before Christmas and 15 days before Easter. At night the cross is visible to thousands who live in the East Bay hills. An Easter dawn service is held at the cross. Lions Club members and other Christians worship daily at the cross. (Exhibits 7 and 10 Declarations of Kenneth Berner; Exhibit 11 Declaration of Kevin Pope)

9.     In 2015, a group called the East Bay Atheists began criticizing the Albany Hill cross. Some members of the Albany City Council also expressed disapproval of the cross. In 2016, in an attempt to force removal of the cross, the City of Albany caused PG&E to disconnect electrical service to the cross for

106 days.  Ultimately, at the insistence of the Lions Club, the power was restored. The Lions Club filed an action in Federal District Court alleging violation of its First Amendment rights, and seeking damages for the City of Albany's actions. The City counterclaimed for quiet title, trespass, and nuisance, claiming the Lions Clubs easement to maintain the cross was void. The City's counterclaim was dismissed on summary judgment granted by U.S. District Court Judge William Alsup in his Order of June 2018. (This lawsuit will be referred to as the First Federal action.) *Lions Club of City of Albany v. City of Albany supra.*

The summary judgment was sustained by the United States Court of Appeal for the 9th Circuit in an unpublished decision. See *Lions Club of Albany v. City of Albany*, No. 18-17046 (9th Cir. Dec. 18, 2019)

10.   United States District Court Judge William Alsup's Order in the First Federal Action contained the following:

> "3.    THE CITY MUST REMEDY ITS FIRST
>
> AMENDMENT VIOLATION."

" To remedy the Establishment Clause violation, the City has at least two options —either to sell a parcel containing the cross to a private party or condemn the easement through its power of eminent domain." (*Lions Club of City of Albany v. City of Albany supra* at 1117)

11.    Over three years later, in early March 2022, the City decided to terminate the Lions Club easement and remove the cross, by a filing a condemnation action. The City notified the Lions Club that the City Council would meet to adopt a Resolution of Necessity, authorizing condemnation of the Lions Club cross and easement. The City's proposed Resolution states that "eminent domain is necessary for the elimination of a potential establishment clause concern and to provide for an unencumbered public park" (Exhibit 5)

12.    On March 23, 2022 the Lions Club responded to the City. The Lions Club offered to buy the City's underlying fee interest in the lot containing the cross.  The cross would then be in private ownership—there would be no Establishment Clause problem. (Exhibit 6 Lions Opposition to Resolution of

Necessity) When the City Council met to consider passage of a Resolution of Necessity, the Lions Club reiterated its offer. (Exhibit 10, Paragraph 12 Declaration of Kenneth Berner)

13.   A written offer of purchase was also subsequently conveyed on November 11, 2022, in which the Lions Club offered $12,500 for the City's underlying fee interest in the lot which contains the cross. A day later the City rejected this offer. (Exhibit 8 Written Offer to Purchase and Exhibit 9 City's Rejection of Offer.)

14.   At the April 4, 2022, City Council hearing the Lions Club repeated its offer to purchase the property and reiterated its position in its opposition that if the City Council adopted a Resolution of Necessity and filed an eminent domain action, the Lions Club would contest the City's "right to take." (Exhibits 5 Lions Written Opposition)

15.   The City Council, without any discussion, debate, or comment on these issues, unanimously adopted the Resolution of Necessity. (Exhibit10, Declaration of Kenneth Berner Paragraph 12)

16.     On May 4, 2022, Real Party in Interest, City of Albany, filed a Complaint in Eminent Domain to condemn the Lion Club's easement and remove the cross (Exhibit 12)

17.     The Lions Club filed an Answer to the Complaint. The Answer denied that the City had the right to take the Lions Clubs property and pled ten Affirmative Defenses. (Exhibit 13). Pursuant to CCP 1260.120, a trial will be held to determine whether the City of Albany has the right to condemn the Lions Clubs easement and cross. The trial date is July 17, 2023.

18.     On May 6, 2022, two days after the City filed its Complaint in eminent domain, the City also filed a motion for an Order for Prejudgment Possession of the Lions Clubs easement and cross.  (Exhibit 14)

19.     Code of Civil Procedure § 1255.410(d)(1) requires the City of Albany to make two showings before the Court can issue an Order for Prejudgment Possession.

20.     The City must make a showing that it has the right condemn the Lions Club's property. The Lions Club contends

the City has no right to condemn the Lions Clubs easement and cross.

21.   The City must appraise the Lions Club's property and then make an offer to the Lion Club based on the appraisal. The City's appraisal in the sum of $500,000 was offered to the Lions Club by the City.

22.   Code of Civil Procedure § 1255.410(d)(2) requires the City to make two additional showings to obtain an Order for Prejudgment Possession:

First the City must show an "overriding need" to get possession before it will get title to the property, together with "substantial hardship" if such possession is denied.

Second, if the property owner objects to the Motion for Prejudgment Possession (as the Lions Club did) the City must show that the hardship the City will suffer if possession is denied, outweighs the any hardship the defendant Lions Club will suffer if prejudgment possession is granted by the court.

23.   Public agencies apply for Orders of Prejudgment Possession where there is an urgent need to construct a public

project- a school, road, fire station, etc. It can take years between the times an eminent domain action is filed, and the public agency get title to the property by a Final Order of Condemnation. **Here the City is constructing nothing.** (Exhibit 15) Declaration of Richard W. Covert)

24.    In its Motion for Prejudgment Possession the City attempted to show an "overriding need" by claiming that the Lions Clubs easement and cross interfered with the Albany Hill Park's plant life and interfered with the City's management of the park. The declaration of Jeff Bond, the City's Community Development Director, is the only evidence submitted by the City to support its Motion for Prejudgment Possession. Bond's declaration states no facts showing either "overriding need" for possession or "substantial hardship" if possession is denied. (Exhibit 16 Declaration of Jeff Bond)

25.    Bond's declaration gives a detailed inventory of the plant life and other natural resources at Albany Hill Park. However, Bond is silent on the real issues. Mr. Bond never says that the Lions Club's cross is detrimental or harmful to

plant life in the park. Mr. Bond never says the cross interferes with the animals or birds who live within or traverse the park. Mr. Bond provides no evidence or explanation how the plants, animals, and birds are threatened by the cross, as opposed to the trees, large rocks, and logs in the park. The City produced no evidence that a single bird or animal has been harmed by the presence of the cross. There is no evidence that the cross interferes with the City's maintenance of the park. (Exhibits 7, and 10 Declarations of Kenneth Berner and Exhibit 11 Declaration of Kevin Pope)

26.     The space occupied by the Cross is so small it cannot be seriously argued that it interferes with the use of the park or constitutes a harm to plants, animals or birds. According to the City's General Plan, the "Albany Hill Passive Open Space/Conservation Area" is 12.75 acres in size. (Exhibit 11, Paragraph 11) The vertical beam and the concrete footing of the cross occupies 24 square feet. This amounts to 24 square feet out of the entire 555,390.51 square feet of park space or less than five one thousandths of one percent (0.005%) of the

total park. (Exhibit 17 and City of Albany General Plan. (Exhibits 7 and 10 Declarations of Berner and Exhibit 11 Declaration of Kevin Pope.)

27.    The Declaration of Kenneth Berner states that the cross stands near a hiking trail and does not impede pedestrians walking through the park or interfere with wildlife. Berner's Declaration incorporates two photos of the Cross; one showing its location at the edge of the slope of a hill and the other showing the hiking trail. The photos clearly show that the cross does not interfere with public use of the park. The photos show two park benches near the cross. They provide an inviting resting place for hikers to sit, rest, and enjoy the scenery. Exhibit 10 Berner Declaration.

28.    Having tolerated the cross for 45 years, the City has made no showing that there is an "overriding need" to remove the cross now, but instead of waiting until there is a Judgement the Respondent, Court has been asked to determine whether the City has the right to condemn the Lions Club's easement and cross.

29.    The Lions Club filed its objections to the City's Motion for Prejudgment Possession on June 9, 2022. (Exhibit 18).

30.    On August 30, 2022 Respondent, Superior Court issued its first Order Granting Plaintiff's Motion for Prejudgment Possession. (Exhibit19)

31.    Respondent, Court based its decision on two grounds:

*First,* the Court concluded that the City "has an ongoing and overriding need to manage the park's open space for the benefit of public use. Management of the City of Albany's grounds, including its plant and animal life, without interference, and for the benefit of the public, creates a significant and overriding need for immediate possession prior to final judgement." (Exhibit 4 Order of August 30, 2022.) The Lions Club contends there is no evidence to support this conclusion

32.    *Second,* the Superior Court concluded that the City "must **comply with the Order in the Federal Action** and to avoid further claims of a violation of the Establishment Clause.... Judge Alsup in the Federal Action has already held

that the public park with the cross on it violates the Establishment Clause and that Albany must cure that Establishment Clause violation." Exhibits 19, Order of August 30, 2022.

33.   In light of Respondent, Superior Court's reliance on Judge Alsup's Order in the First Federal Action, fearing the removal of the cross prior to a Judgement that the City had to the "right to take" the Lions Club's easement and cross, on September 21, 2022, the potential deprivation of  the Lions Club's First Amendment rights, and at Judge Chatterjee's suggestion, the Lions Club filed a Complaint for damages and injunctive relief in Federal District Court, for violation of the Lions Clubs rights of free exercise of religion and free speech provided by the First Amendment pursuant to 42 USC sections 1983,1988, and deprivation of due process guaranteed by the Fourteenth Amendment pursuant to 42 USC sections 1983, 1988. That Complaint will be referred to as the Second Federal Action. (Exhibit 20, Federal Complaint)

30

34.     On November 17, 2022, after briefs were submitted by the City and the Lions Club, and a hearing in Federal District Court, Judge William Alsup issued an Order Granting in part, a Preliminary Injunction enjoining the City from removing the cross. (Exhibit 24 Order RE Preliminary Injunction)

35.     Judge Alsup's Order confirmed that his June 2018 Order in the First Federal Action, did not require the City to condemn the Lions Clubs property—and that his comments in that Order were merely advisory dictum. Judge Alsup's November 2022 order stated,

> "It is true that this Court's June 2018 Order provided three suggestions on how the City of Albany could cure its Establishment Clause violation. It stated in relevant part, " to remedy the Establishment Clause violation, the City has at least two options—either to sell a parcel containing the cross to a private party or to condemn the easement through it power of eminent domain....the dictum could not be deemed to be an order anyway because there was no one in the prior case asking for

such relief.....This dictum was to point out a continuing Establishment Clause violation......having invested many hours in the case in solving the related issues before it the Court felt this considered dictum would be a beneficial word to the wise as to a path forward." Id at Page 3:24-4:10.

36.   During the August 16, 2022 hearing Judge Chatterjee expressed the believed that any prejudice to the Lions could be mitigated by requiring the City of Albany to preserve the cross in a safe location pending the litigation and ordered preservation in his Order.   (Exhibit 25 Superior Court Tentative Ruling and Exhibit 4, Transcript of August 16, 2022 hearing 14:28-15:26.

37.   However, at the Federal hearing before Judge Alsup on November 16, 2022, the Lions Club presented evidence that once the cross was removed, the Lions Club would never be able to reconstruct it. Judge Alsup's Order states:

"At our hearing, however, it also developed that the City cannot say with any certainty whether it can put the

cross back up after its provisional removal, should the City ultimately lose the eminent domain trial jury trial. The City stated that decision would need to go through permitting or zoning approval, a public process it cannot dictate or predict. Thus, as the Court sees things, this is not just a decision merely pending litigation, but practically. Once the cross is down, it is down for good. **This raises a serious exercise of religion problem and in considering this issue, Judge Chatterjee's ruling appears to have been based on a misunderstanding of this Court's prior ruling."** **(**Exhibit 24 5:13-15)

38.    The cross is a preexisting nonconforming use which may to stay but if it is removed for more than 90 days the nonconforming use exemption terminates. (Albany City Code § 20.44.040 (Exhibit 26)

39.    Chapter 6 of the City's General Plan designates Albany Hill as "Park and Open Space" (See Exhibit 17). The City

Zoning Map and Zoning Ordinance /Zoning Code § 20.12.070 shows the Albany Hill Park as "Public Facilities" (Exhibit 27)

40.    The cross is a structure and thus inconsistent with the Park and Open Space provisions of the City's current General Plan. The cross is privately owned and thus inconsistent with the City's Zoning Ordinance which only allows "Public Facilities" at the Albany Hill Park. Replacing the cross would require a General Plan Amendment and an Amendment of the Zoning Code.

41.    On December 8, 2022, the City filed a Motion to Affirm Judge Chatterjee's Order of August 30, 2022. (Exhibit 28) The Lions Club filed a brief opposing the City's Motion. (Exhibit 29) After a hearing, on January 12, 2023 at the conclusion of which the Court took the matter under submission On January 30, 2023, Judge Chatterjee granted the City's Motion to affirm the original Order granting Prejudgment Possession. (Exhibit 1, a copy of Judge Chatterjee's Order)

42.    Nowhere in his Order does Judge Chatterjee mention that once the cross is removed, the Lions Club will never be able to replace it.

43.    At the hearing before Judge Chatterjee, he asked the Lions Club if it would file a writ with the State Court of Appeals, if he affirmed his original Order granting Prejudgment Possession. The Lions Club said that it would and Judge Chatterjee stayed removal of the cross for 30 days until March 3, 2023.  (Exhibit1)

**ABSENCE OF OTHER REMEDIES**

The Lions Club of Albany have no adequate, legal remedy other than writ relief.  (See CCP § 904.1(a)(1) Interlocutory orders are not appealable.) Unless Writ relief is granted, the City of Albany will take down and remove the Christian cross legally constructed and owned by the Lions Club thereby immediately depriving, burdening, and interfering with the Lions Club's Free Exercise of Religion, Free Speech, under Article I Sections 2 and 4 of the California Constitution, and the United States Constitution. Removal of the cross will be

an unnecessary desecration of the religious symbol. Once the cross is down it will be down forever. If the Lions Club prevails at the "right to take" trial, the Lions Club will never be able to reconstruct its cross on Albany Hill and the Lions Club will unjustly suffer the permanent loss of its rights.

**GROUNDS FOR AN IMMEDIATE STAY**

44.   Petitioner requests an immediate stay of respondent court's order granting City prejudgment possession and authorizing removal of the cross. A stay is necessary to preserve the status quo and prevent the issues raised in this petition from becoming moot while the appellate court considers the petition.

45.   The Superior Court granted a stay until March 3, 2023, at which time the City of Albany will be free to remove the cross unless a further stay is granted by this Court. **A stay must be issued on or before March 3, 2023, to prevent the Lions Club from being permanently harmed by removal of the cross.**

46.    If a stay is not granted, the cross will be permanently removed and the Lions Club prevented from reconstructing the cross should it prevail at the trial on the City's right to take and effectively moot the issue at trial because the City will have already taken the cross.

47.    If a stay is not granted the Lions Club Constitutional rights of Free Exercise of Religion and Free Speech Rights will be Violated.

## PRAYER

**WHEREFORE,** Petitioner, the Lions Club of Albany, California, prays:

1.    That the Court issue an immediate stay of respondent court's order of prejudgment possession pending resolution of this writ petition; and

2.    That the Court issue a peremptory writ of mandate / prohibition in the first instance under the seal of this Court commanding that Respondent Superior Court vacate its order dated January 30, 2023, and enter a new and different order directing Respondent Court to deny the City of Albany's

motion for prejudgment possession and that Real Party in Interest desist and refrain from removing the cross pending a final judgment in this action, or

3.     That the Court issue a peremptory writ of mandate under seal of this Court commanding Respondent Superior Court to vacate its order dated January 30, 2023, enter a new and different order directing the Superior Court to deny the Real Party in Interest's motion for prejudgment possession and enter a new and different order denying the City of Albany's motion for prejudgment possession, or to show cause before this Court, at a time and place then or thereafter specified by the Court order, why it has not done so and why a peremptory writ should not issue.

4.     On the return of the alternative writ and hearing on the order to show cause, a peremptory writ of mandate issue under the seal of this Court compelling respondent to vacate its order dated January 30, 2023, enter a new and different order directing the Superior Court to deny the City of Albany's motion for prejudgment possession and enter a new and

different order denying the City of Albany's motion for prejudgment possession and removal of the cross.

5.    That the Court issue a peremptory writ of prohibition under seal of this Court commanding Real Party in Interest, the City of Albany to desist and refrain from demolishing, taking down or otherwise removing the Albany Hill Cross until further order of this Court and directing and requiring Respondent and Real Party in Interest to show cause before this Court, at a time and place then or thereafter specified by Court order, why it has not done so and why a peremptory writ should not issue.

6.    On the return of the alternative writ and hearing on the order to show cause, a peremptory writ of prohibition issue under seal of this Court restraining Respondent and Real Party in Interest from authorizing or demolishing, taking down or otherwise removing the Albany Hill Cross.

7.    Award costs under Cal. Rules of Court 8:485-8.493 , and

8.    Grant such other relief as may be just and proper.

Dated: February 21, 2023

Respectfully submitted,

Robert E. Nichols
Attorney for Petitioner
Lions Club of Albany, California.


## VERIFICATION

I am the attorney for Petitioner, the Lions Club of Albany, California in this case. I have read the foregoing Petition and know its contents. The facts alleged in the Petition are within my own knowledge and I know these facts to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this verification was executed on this 21st day of February, 2023, at Albany, California.

Robert E. Nichols
Attorney for Petitioner
Lions Club of Albany, California.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.

## ARGUMENT

## A.   The Real Party in Interest, the City of Albany Is Not Entitled to Prejudgment Possession Pursuant to CCP § 1255.410(d)(2).

Code of Civil Procedure section 1255.410 specifies the prerequisites for issuing an Order for Prejudgment Possession. If a defendant property owner objects to a Motion for Prejudgment Possession, as the Lions Club did in this case, the Court must make four findings before it can issue an Order of Prejudgment Possession.

### 1.   The City Has NOT Established an Overriding Need for Prejudgment Possession or Shown It Will Suffer a Substantial Hardship if Possession is Denied.

Pursuant to CCP § 1255.410(d)(2)(C) the City must show that it has both an overriding need to possess the property before issuance of a final judgment and will suffer a substantial hardship if possession is denied. The City attempted to show "overriding need" by claiming the Lions

41

Club's easement and cross interfered with plant life and natural resources in the park.

> ### a. There is No Evidence of the Alleged Need to Manage Plants, Birds and Animal Life Without Interference of the Cross

The City of Albany offers the Declaration Jeff Bond, the City's Community Development Director as justification for the need. Mr. Bond gave a detailed inventory of the plant life, animal life and bird life at Albany Hill Park. However, Bond was silent on the real issues. Mr. Bond never said that the Lions Club's Cross is detrimental or harmful to plant life in the park. Mr. Bond never said the cross interferes with the animals or birds who live within or traverse the park. Mr. Bond provided no evidence or explanation how the plants, animals, and birds are threatened by the cross as opposed to the hundreds of trees, large rocks, and logs in the park. Bond also failed to explain how the Cross affected birds, animals, and plants differently than the residential structures near the park. There was no evidence presented that the cross interfered with the City's maintenance of the park. The cross

has been present in the park for over 50 years without incident.

However, the Lions presented evidence in the Declarations of Kenneth Berner and Kevin Pope that the space occupied by the Cross is so small it cannot be seriously argued that it interferes with the use of the park or constitutes a harm to plants, animals or birds.

According to the City's General Plan, the "Albany Hill Passive Open Space/Conservation Area" is 12.75 acres in size. The vertical beam of the cross and the concrete footing occupy a mere 24 square feet. (See Exhibits 11 Declarations of Kenneth Berner and Kevin Pope.) The concrete footing which occupies 24 square feet out of the entire 555,390.51 square feet of park space or less than five one thousandths of one percent (0.005%) of the total Park.

The City has provided no evidence of a single bird or animal being harmed or injured due to the Cross. The City's claims of hindering and encumbering the public's use of the park are vague, nonspecific and speculative at best. There is

no valid evidence establishing an overriding need to possess the property for this reason.

Lions Club Past President Kenneth Berner provided a detailed description of the location of the cross in his September 22, 2022, Declaration. Berner stated that the cross stands on the east side of the hill resting very close to a steep slope. The cross stands away from the trail and does not impede pedestrian walking traffic through the park or interfere with wildlife.  Burner's Declaration contains two photos of the Cross; one showing its location at the edge of the slope of the hill and the other showing a central trail looking in a southerly direction.  The Declaration and photos show that the cross does not encumber persons from using the park.

The City did not meet its burden to establish an "overriding need" and "substantial harm." However, Respondent Superior Court (hereafter Judge Chatterjee) accepted the City's position despite there being no evidence to support the City's claim, or the Court's Order.

44

>
> **b.  The City's Establishment Clause Concerns Do Not Constitute an Overriding Need Nor A Substantial Hardship.**

Judge Chatterjee's August 30, 2022, Order granted prejudgment possession to the City based on an erroneous interpretation of the U.S. District Court's June 2018 Order in the First Federal Action.  Superior Court Judge Chatterjee wrote,

> "[T]he City of Albany must unencumber the public park **to comply with the Order in the Federal Action** and to avoid further claims of a violation of the Establishment Clause."  Exhibit 3 page 8.

The Superior Court, went on to state, [U.S. District Court]

> "Judge Alsup has held that the City of Albany is in a state of Constitutional violation as matters now stand and **has ordered Albany to cure the problem.**" Id page 9 top of page.  The Superior Court repeats its erroneous belief that the Federal Court ordered the City "ordered to cure that violation."  Id page 9 bottom of page.

The Lions again sought the assistance us the Federal District Court and filed an action pursuant to 42 USC § 1983 in light of the Lions potential loss of First Amendment rights and sought a preliminary injunction staying removal of the cross.  In staying Judge Chatterjee's Order, Federal Judge William Alsup wrote,

> "It is true that this Court's June 2018 Order provided three suggestions on how the City of Albany could cure its Establishment Clause violation. It stated, in relevant part, "[t]o remedy the Establishment Clause violation, the City has at least two options — either sell a parcel containing the cross to a private party or condemn the easement through its power of eminent domain. Possibly, a third option would be to adopt a zoning ordinance banning all religious symbols from its public places" (June 2018 Order at 15).  This dictum was to point out a continuing Establishment Clause violation and to list three ways for the City to cure the violation. **It did not order any of the three options in**

**particular, and the dictum could not be deemed to be an order anyway because there was no one in the prior case asking for such relief."** 3:24-4:8

Judge Alsup further wrote,

> "Judge Chatterjee was exceedingly kind in treating the 2018 dictum as an order, but this gave too much deference. Yes, the City is violating the Establishment Clause, but the 2018 *dictum* merely suggested three possible cures — it did not order any of the three in particular." 4:19-22

Judge Alsup's June 2018 Order notified the City that it had a potential Establishment Clause problem. Despite this knowledge the City waited over three years to a seek an Order of Prejudgment Possession. That delay is totally inconsistent with a claim of "overriding need" for immediate possession and "substantial hardship" if immediate possession is denied.

Thus, there is no substantial evidence to support Judge Chatterjee's findings of "overriding need" and "substantial hardship."

**2.    The City Has Failed to Show It Will Suffer a Substantial Hardship if Possession is Not Granted that Outweighs the Hardship the Lions Club will Suffer**

Assuming arguendo, that the City has shown "overriding need' for prejudgment possession and "substantial hardship" if such possession is denied, under CCP section1255.410 (d)(2)(D) the City must show its "substantial hardship" outweighs any hardship on the Lions Club caused by granting the order of possession.

**a.    Removal of the Cross on Albany Hill will Deprive the Lions of Their First Amendment Rights of Free Exercise of Religion and Freedom of Speech, a Substantial Hardship.**

Petitioner, Lions Club, has displayed the Cross on Albany Hill for over 50 years. The Cross can be seen from many areas in the Albany and Berkeley communities and is particularly visible when lighted at night. Members of the Lions Club find it rewarding and satisfying when told by individuals in the community about joy and comfort they receive from seeing the Cross on the hill each day.  (Pope Dec. ¶ 3, 4, 5) The lighting of the Cross at Christmas and Easter

are recognized religious traditions during those holidays. (Pope Dec. ¶ 6) The Cross is also a location and gathering place for religious worship where people in the community come to pray, reflect, talk and spread the good word to others. (Pope Dec. ¶ 7, 8, and 9) For over 50 years the Lions have continued the tradition of Easter Morning services at the Cross. There is no doubt the activities described constitute the exercise of religion and exercise of freedom of speech.

Judge Chatterjee simply disregarded the loss of these First Amendment freedoms. If prejudgment possession is granted and the cross removed, the Lions will be deprived of their First Amendment rights of Free Exercise of Religion and Freedom of Speech. (Exhibit 10, 9/22/22 Declaration of Kenneth Berner)

The deprivation of First Amendment Rights will occur immediately after the cross is removed despite there being no final judgment on the City's right to take.

### b. Once the Cross is Taken Down, it is Down Forever.

If the City is allowed to remove the cross prior to a final judgment and it ultimately prevails at the Right to Take Trial, the Lions will never be allowed to reconstruct the Cross.

At the November 16, 2022 hearing in Federal District Court before Judge Alsup on the request for stay, the Lions Club presented evidence that once the cross was removed, the Lions Club would never be able to reconstruct it. Judge Alsup's Order states:

> "At our hearing, however, it also developed that the City cannot say with any certainty whether it can put the cross back up after its provisional removal, should the City ultimately lose the eminent domain trial jury trial. The City stated that decision would need to go through permitting or zoning approval, a public process it cannot dictate or predict. Thus, as the Court sees things, this is not just a decision merely pending litigation, but practically. Once the cross is down, it is down for good. This raises a serious exercise of religion problem and in

considering this issue, Judge Chatterjee's ruling appears to have been based on a misunderstanding of this Court's prior ruling."

Judge Alsup further suggested that Judge Chatterjee "should balance the hardships under state law, taking into account the establishment of religion on the one hand versus exercise of religion on the other, **and keeping in mind the distinct risk that once the cross is down, even "temporarily," it is down forever.**

Chapter 6 of the City's General Plan designates Albany Hill as "Park and Open Space."  Exhibit 17. The City Zoning Map and Zoning Ordinance /Zoning Code § 20.12.070 shows the Albany Hill Park as "Public Facilities" (Exhibit 27)

The cross is a structure and thus violates the Park and Open Space provisions of the City's General Plan. The cross is privately owned and thus violates the City's Zoning Ordinance which only allows "Public Facilities" at the Albany Hill Park. Replacing the cross would require a General Plan Amendment and an Amendment of the Zoning Code. Even if

the City Council was inclined to initiate these processes, it would generate controversy. Any City of Albany resident could file a meritorious lawsuit alleging that amending the City's General Plan and Zoning Code to permit construction of a Christian cross in the Albany Hill Park would violate the Establishment Clauses of the California and US Constitutions

The Lions Club contests the City's right to take the Lions Club's property and the City of Albany must show it is entitled to take the defendant's property despite the factual and Constitutional issues to be heard at trial.  No doubt any inevitable appeal would be taken by either party should they lose on the right to take issue which would further extend any time for reconstruction.

> c.   **The Hardship the Lion Club will Suffer if Prejudgment Possession is Granted Outweighs Any Hardship the City will Suffer if Possession is Denied**

The City of Albany has provided no competent evidence showing that the cross interferes with the plant, bird or animal life of the park.  The City has offered no competent

evidence showing any immediate need to remove the cross because of Establishment Clause concerns that have not existed for the past 50 years and certainly within the last four years since the Federal District Court decision.

Also, despite Judge Alsup's suggestion that the Superior Court balance the hardships taking into account the establishment of religion on the one hand versus exercise of religion on the other, and keeping in mind the distinct risk that once the cross is down, even "temporarily," it is down forever, it does not appear that Judge Chatterjee engaged in such a weighing.

On January 30, 2023 Judge Chatterjee granted the City's Motion to affirm the original Order granting Prejudgment Possession. (Exhibit 1 a copy of Judge Chatterjee's Order)

That Order never mentions what, if any, substantial hardship the City will suffer if immediate possession is denied. The Order never analyzes whether the hardship the City will suffer if possession is denied, outweighs any

hardship the Lions Club will suffer caused by granting the City possession.

Nowhere in his Order did Judge Chatterjee mention that once the cross is down it is down for good.

### 3. The City is Not Entitled to Take the Lions Club's Easement and Remove the Cross by Eminent Domain

Pursuant to CCP §1255.410 (d)(1)(A) obtain an Order for Prejudgment Possession, the City must show that it has the right to condemn the Lions Club's easement and cross.

### a. Governmental Action that Burdens, Interferes with or Violates the Free Exercise of Religion and Free Speech Rights of Citizens Must Be Carefully Tailored.

The present case presents a special and unique problem which does not appear to have been encountered previously in Christian cross cases. Unlike every other reported Establishment Clause case, the Lions Club owns a valid property right to maintain a Christin cross on property subsequently acquired by the City with at least constructive knowledge of the easement.

The First Amendment of the United States Constitution and Article I Sections 2 and 4 of the California Constitution both prohibit government from infringing upon the Constitutional rights of Free Exercise of Religion and Freedom of Speech. Governmental action such as the City of Albany's Resolution of Necessity and the present eminent domain action are subject to strict scrutiny requiring a compelling governmental interest that must be narrowly tailored to advance that interest. *Catholic Charities of Sacramento v. Superior Court,* 32 Cal.4th 527, 562 (Cal. 2004); *Valov v. Department of Motor Vehicles*, 132 Cal.App.4th 1113 (Cal. Ct. App. 2005)

Assuming, arguendo, that the elimination of a potential Establishment Clause problem is a compelling government interest [it is not], the City of Albany can solve the problem, at no cost to the City by accepting the Lions Club's offer to buy the lot the cross stands on for $12,500. This would be a narrowly tailored measure —it solves the City's problem and it enables the Lions Club to keep its easement and the cross.

It a "win-win" for both sides. In contrast, condemning the cross destroys the Lions Club's Constitution rights.

Under CCP § 1240.010, the power of eminent domain may only be used for public use.

The City's Resolution of necessity says the City's condemnation is to solve a "potential Establishment Clause problem." Solving that problem is a legal problem. Destroying the Lions Club' easement and cross, when such destruction can be avoided — can never be a public use.

CCP § 1240.030(b) provides that "The power of eminent domain may be exercised to acquire for a proposed project only if all of the following are established: (b) The project is planned and located in the manner that will be most compatible with the greatest public good and the least private injury."

Here the City's project is to spend well over $500,000 (the City's appraised value for the Lions Club's easement), plus its legal fees and court costs, to solve its potential Establishment Clause problem. Spending this much of scarce

public funds cannot be the greatest public good when the City

can solve its problem at no cost -by accepting the Lions Club's

offer to buy the lot the cross stands on for $12,500.

Destroying the Lions Club's easement and cross- and

destroying the Lions Club's right to worship at the cross—

cannot be "the least private injury.

On the facts of this case, the City has no right to

condemn the Lions Club's property.

### 4.   The Lions Club Does not Dispute The Forth Required Finding that the City Has Made a Deposit Pursuant to CCP § 1255.010

The Lions Club does not dispute the City has met the forth requirement

of depositing the appraised value of the property as required by CCP

§ 1255.010.

## CONCLUSION

If this Writ is not granted, the Lions Club will lose its cross, even if the

Lions Club prevails on the "right to take" issue at trial. Losing the cross will

violate the Lions Club's right of free exercise of religion under the Article I,

Section 4 of the California Constitution,  which provides that "Free exercise

and enjoyment of religion without discrimination or preference are

guaranteed."  It will also violate the free exercise of religion, free speech, and

due process rights guaranteed to the Lions Club by the First and Fourteenth

Amendments to the US Constitution. **Petitioner therefore requests that**

**a Writ be granted.**

DATED: February 21, 2023

Respectfully submitted

Robert E. Nichols
Attorney for Petitioner
Lions Club of Albany, California

## CERTIFICATE OF WORD COUNT

Pursuant to rule 8.204(c) of the California Rules of Court, I hereby certify that this brief contains 9452 words, including footnotes. In making this certification, I have relied on the word count of the computer program used to prepare the brief.

Executed on February 21, 2023, at Albany, California

Robert E. Nichols
Attorney for Petitioner,
The Lions Club of Albany, California

# PROOF OF SERVICE

I, Robert E. Nichols, declare:

I am a citizen of the United States residing in Alameda County, California. I am over the age of eighteen years and not a party to the *City of Albany v. Albany Lions Club* action. My business address is 713 Key Route Blvd., Albany, California.

On February 22, I served a copy of the following documents:

**PETITION FOR WRIT OF MANDATE, PROHIBITION OR OTHERAPPROPRIATE RELIEF; REQUEST FOR IMMEDIATE STAY; MEMORANDUM OF POINTS AND AUTHORITIES;**

**VOLUMES I, II AND III of SEPARATELY BOUND EXHIBITS;**

upon **Scott Ditfurth, Attorney for the City of Albany,** who having agreed to accept service of the documents by e-mail, did transmit said documents via e-mail to scott.ditfurth@bbklaw.com and by the Alameda County Superior Court Electronic Filing  System, and

upon **Respondent, The Alameda County Superior Court**
by electronically filing said documents as required by the local
rules of court and by personally delivering a paper copy of the
documents to Department 517's Drop Box, also as required by
local rules of court.

     I declare under penalty of perjury under the laws of he
State of California that the above is true and correct.

Executed on February 22, 2023 at Albany, California.

                                                     Robert E. Nichols

**EXHIBITS FILED SEPARTLY**

EXHIBIT 3

Court of Appeal First Appellate District
Charles D. Johnson, Clerk/Executive Officer
Electronically FILED on 2/24/2023 by A. Reasoner, Deputy Clerk

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| LIONS CLUB OF ALBANY, CALIFORNIA, | A167238 |
| Petitioner, | |
| v. | (Alameda County Super. Ct. No. 22CV010822) |
| SUPERIOR COURT FOR THE COUNTY OF ALAMEDA, | |
| Respondent: | |
| CITY OF ALBANY, | |
| Real Party in Interest. | |

**BY THE COURT:***

The petition for writ of mandate/prohibition and accompanying stay request are denied.

The petition challenges a January 30, 2023 order, which affirms a previous August 30, 2022 order.  Under the circumstances, the petition's timeliness is not adequately briefed.  (See *Volkswagen of America, Inc. v. Superior Court* (2001) 94 Cal.App.4th 695, 701.)

Additionally, the record is insufficient to enable informed appellate review, in that it does not include numerous superior court filings referenced in the provided exhibits.  (*Sherwood v. Superior Court* (1979) 24 Cal.3d 183, 186-187; Cal. Rules of Court, rule 8.486(b)(1).)

1

Any future petitions filed by counsel in this court shall include a master and chronological alphabetical index of exhibits.  (See Cal. Rules of Court, rule 8.74(a)(5).)

Date: _____02/24/2023_____          _____Jackson, P.J._____ P.J.

\* Before Jackson, P.J., Burns, J. and Wiseman, J. (Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.)

2

# EXHIBIT 4



# ALBANY LIONS CLUB

November 21, 2022

*VIA ELECTRONIC MAIL and US MAIL*
Mayor Preston Jordan and,
 City Council of the City of Albany
c/o Scott W. Ditfurth, Esq.
Best Best & Krieger LLP
P.O. Box 1028
Riverside, California 92502

**RE:**  **Offer to Purchase Property on Albany Hill Subject to Lions Easement for Cross**

Dear Mayor Jordan and members of the Albany City Council:

The City of Albany ratified a "resolution of necessity" and filed its eminent domain action against the Lions Club of Albany, California, to "provide an unencumbered public park . . . and to avoid a potential Establishment Clause concern."

The Lions Club can provide an unencumbered public park, solve the City's Establishment Clause concern, and save the City hundreds of thousands of dollars in eminent domain costs- if it accepts the following offer :

The Lions Club offers TWELVE THOUSAND, FIVE HUNDRED DOLLARS ($12,500.00) for the City's underlying fee interest in the lot which contains the cross. The Lions Club will quitclaim back to the City, the Lions Clubs easement over the lots which do not contain the cross. This offer is generous; the lot the Lions Club offers to purchase has no economic use or value due to the Lions Clubs easement, the City's General Plan, Zoning designations and property deed restrictions which limit the use of this lot and all other lots in the Albany Hill Park to public use and open space.

Mayor Jordan and members of the City Council
November 21, 2022
Page 2


If the City accepts the Lions Clubs offer, the cross will be owned by a private party, the City's public park will be unencumbered by the Lions Clubs easement, thus solving the City's Establishment Clause violation - all at no cost to the City.

The Lions Club will pay for the cost of a survey to determine the boundaries of the lot containing the cross. The Lions Club will also pay all usual closing costs, including escrow costs, should the City accept this offer.

The City of Albany has until February 20, 2023, (90 days) to accept this offer.

Sincerely yours,

Kevin Pope
President of the Lions Club of Albany, California


Robert E. Nichols
Attorney for the Lions Club of Albany, California

EXHIBIT 5

**Scott Ditfurth <scott.ditfurth@bbklaw.com>**                    11/22/2022 8:43 AM

# RE: City of Albany vs. Lions Club of Albany - Offer

To ROBERT NICHOLS <renichols01@comcast.net>   Copy Andrew Saghian <andrew.saghian@bbklaw.com>

Bob

Thank you for your letter and thank you for your call yesterday.  The City has reviewed and considered your below settlement offer.  This email is to inform you that the City has rejected the Lions Club's offer.

If we do not speak with you beforehand, please have a Happy Thanksgiving.



**Scott Ditfurth**
**Partner**
**scott.ditfurth@bbklaw.com**
**T: (951) 826-8209  C: (909) 261-9853**

**www.BBKlaw.com**

---

**From:** ROBERT NICHOLS <renichols01@comcast.net>
**Sent:** Monday, November 21, 2022 11:01 AM
**To:** Scott Ditfurth <Scott.Ditfurth@bbklaw.com>
**Subject:** City of Albany vs. Lions Club of Albany - Offer

CAUTION - EXTERNAL SENDER.

---

Dear Mr. Ditfurth:

Please find enclosed with this e-mail message a letter addressed to the Albany City Council offering to purchase the lot of land upon which the Cross on Albany Hill rests for $12,500.00. The Lions will quitclaim back to the City, the Lions Clubs easement over the lots which do not contain the cross. The Lions will pay for the cost of a survey to determine the boundaries of the lot containing the cross, and will also pay all usual closing costs, including escrow costs, should the City accept this offer.

We recognize that we could communicate this offer directly to the public body and this communication is not limited by Rule of Professional Conduct 4.2 but, none-the-less, we prefers to communicate this offer through the City's attorney. (See Rule 4.2 (c)(1).  You are undoubtedly aware of your duty to convey this offer to the City Council pursuant to Rule 1.4.1.

Very truly yours,

Bob Nichols

12/26/22, 9:48 AM
Case 3:22-cv-05377-WHA Document 30-2 Filed 02/27/23 Page 81 of 134
Xfinity Connect City of Albany eviction 21.25 of Albany -large Button

This email and any files or attachments transmitted with it may contain privileged or otherwise confidential information. If you are not the intended recipient, or believe that you may have received this communication in error, please advise the sender via reply email and immediately delete the email you received.

# EXHIBIT 6

1:17



Kevin M. Pope
3d · 

...

**Rochelle Nason**
Kevin M. Pope This is a wildly
inaccurate characterization of
the history.

A group of called 'Albany Hill 4
Everyone' (which included quite
a few Albany residents) came to
the city asking why it has a Cross
in a public park, and they also
pointed out the cross was lighted
by a frayed electrical wire
supported by a dry eucalyptus
branch.

The fire chief examined the
wiring situation and forbade the
relighting of the Cross until the
fire danger had been addressed.

The city council decided that
rather than rewiring its cross, it
would like to replace it with a
gathering spot where Christians
could raise a cross on Christmas
and Easter, but that could be
used by others at other times.

 Write a comment...   


Home


Friends


Watch


Marketplace


Notifications


Menu

EXHIBIT 7



CHAPTER

# 6

# PARKS, RECREATION, AND OPEN SPACE ELEMENT

## A. INTRODUCTION

California's Government Code requires every city and county to include an open space element in their general plan. The State defines open space as including farms, forests, ranches, parks, state and federal lands, wetlands, cemeteries, quarries, and similar uses with an open or undeveloped character. The purpose of the open space element is to guide the long-term preservation of such areas. In Albany, the focus of the element is on parkland, which is the primary form of open space in the city.

Parks and open spaces are vital to the quality of life in Albany. They provide space for recreation, conservation, and contemplation. They enhance the aesthetic quality of the city, create a link to local history, and provide a connection to nature. Collectively, Albany's open spaces shape the city's character and help create its sense of place. Open space serves both to connect Albany to the cities around it and to define the city as a distinct place in the East Bay.

Adoption of this Element comes at an important moment in Albany's history. The City is on the cusp of transforming its waterfront into a new park that is larger than all other City parks combined. The waterfront park will expand the range of recreational experiences available to Albany residents while ensuring the long-term conservation of open space along the San Francisco Bay shoreline.



*Albany Hill Park*

At the same time, Albany is planning for the improvement of its traditional local park system. This system includes community and neighborhood parks, natural resource areas such as Albany Hill, and linear features such as the Ohlone Greenway. Continued investment in public parks is necessary to keep pace with the demand for recreational services and open space as population and employment grow.

Plans for the new waterfront park are discussed in the Waterfront Element of the General Plan. The focus of the Parks, Recreation, and Open Space Element is on City parks and recreational services. The Element also addresses the role of other recreational service providers, including the Albany Unified School District, the University of California, and the private and non-profit sectors. The City has adopted a separate Parks, Recreation, and Open Space Master Plan to provide more detailed and programmatic recommendations on these subjects.

The first part of this chapter provides background information on parks, recreation, and open space in Albany. The second part includes goals, policies, and actions guiding the use of these resources. Key topics include:

- Protecting open space and recognizing its value to the city

- Expanding the local park system to meet increasing demand

- Managing and maintaining existing parkland to respond to community needs and emerging trends

- Adapting recreational programming to meet the needs of different user groups

- Using non-City facilities to supplement City park and recreation facilities

- Improving the local trail system, particularly for recreational walking and cycling.

# B. OPEN SPACE

State law requires the General Plan to identify and analyze four types of open space.  These are listed below:

- **Open Space for Recreation.** This category includes the City's park system, as well as school yards and athletic fields used for recreation.  The definition also includes areas of outstanding scenic, historical, and cultural value.

- **Open Space for the Preservation of Natural Resources.** This category includes mudflats and wetlands along the Albany shoreline, wooded areas on the slopes of Albany Hill, and conservation areas along the city's creeks.  These resources are addressed in the Conservation and Sustainability Element, and in the Waterfront Element.

- **Open Space for the Managed Production of Resources.** This includes urban agriculture on the Gill Tract and other community gardens in the city.

- **Open Space for Public Health and Safety.** This includes areas where development could pose a threat to public safety due to earthquakes, landslides, flooding, wildfire and similar risks. These areas are addressed in the Environmental Hazards Element.  Most areas with natural hazards are located on public land but a few are in private ownership.

In addition to the open spaces described above, most residential properties in Albany include front yards, back yards, and side yards.  Collectively, these spaces create a sense of spaciousness, provide access to sunlight, and support habitat for birds and other wildlife. Landscaped roadway medians, rights-of-way, and areas around public buildings also are part of the open space network. Streets themselves provide another form of open space and present opportunities for greening, stormwater management, community gatherings, and certain forms of active and passive recreation. Open spaces also may include rooftop gardens, urban plazas, schoolyards, courtyards, and other outdoor activity areas.



*Eastside Permaculture Garden in Memorial Park.*

Open space may be broadly classified as being "active" or "passive." Active open space includes acreage that has been intentionally improved for recreational activities, including tennis courts, soccer fields, softball fields, basketball courts, playgrounds, un-programmed lawn space, and similar areas. It also includes schoolyards and school athletic fields. Passive open space has a more natural quality and often is managed to conserve plant and animal habitat. Such areas may provide only limited access for park users via trails, viewing areas, interpretive signs, and similar low-impact facilities.

In 2015, Albany had 43 acres of active open space and 91 acres of passive open space. Of the 43 acres of active open space, about half is associated with City parks and half is associated with public schools and University Village facilities. The passive open space is located in two areas: the waterfront and Albany Hill.

In addition to the public open spaces described above, there are a number of conservation easements. Each of the three high density residential developments along Pierce Street (Gateview, Bridgewater, Bayside Commons) is located on a parcel that extends up the slopes of Albany Hill. The upper portion of each parcel is privately owned but is maintained as permanent hillside open space. In the event the privately owned 11-acre parcel to the south of Gateview is developed, the upper slopes of this parcel would be similarly protected.

## C. LOCAL PARK SYSTEM

### Overview

Table 6-1 lists public open space and parkland in the City of Albany. These areas are mapped in Figure 6-1. The table excludes private open space, including conservation easements, creek protection areas, and the commercial recreation lands at Golden Gate Fields. It also excludes submerged lands and tidal areas along the shoreline. The Table is organized with sub-headings for active and passive open space.

Each park in Table 6-1 is further described using a classification system that identifies the function of the park and the types of recreational experiences it provides. Applying a classification system helps ensure that parks are used and maintained properly. Park classification can help reduce conflicts between user groups, avoid compatibility issues with neighbors, and determine the types of activities that will be permitted in a given space.

### Albany Park and Open Space
# Fast Facts

# 43
### acres of active open space

# 91
### acres of passive open space

# 134
### total open space acres

# 6
### ball fields

# 4
### soccer fields

# 1
### football field

# 8
### tennis courts

# 7
### outdoor basketball courts

*Source: 2004 Parks, Recreation, and Open Space Master Plan. Includes UC Village, AUSD, and EBRPD facilities.*



FIGURE 6-1
Parks and Open Spaces

**LEGEND**

- - - Albany City Limit
═══ Freeway
╫╫╫ BART Tracks
─┼─ Railroad Tracks

Building
Active Parks (City Operated)
School Yards
Passive Parks
University-owned Parks

SOURCE:  CITY OF ALBANY, 2/13/15.
I:\ABY1301 Albany GP\figures\General Plan\Fig_6-1_Parks&Open Space.ai  (3/8/16)

**Table 6-1: Albany Park Inventory**

| Park Name | Type | Acreage | Comments |
|---|---|---|---|
| **EXISTING ACTIVE PARK AREAS** | | | |
| Dartmouth Tot Lot | Mini-Park | .07 | Children's playground |
| Ocean View | Neighborhood | 3.61 | Contains lighted softball field, 2 tennis courts, basketball court, open play area, picnic area, parking, trails |
| Jewel's Terrace | Neighborhood | 1.32 | Contains 2 tennis courts, basketball court, picnic area, playground, restroom, pathway |
| Memorial | Community | 6.75 | Contains baseball field, soccer field, grassy area, children's playground, picnic area, restrooms, 4 tennis courts, fenced dog play area, Veterans Memorial Building, community garden, child care |
| Ohlone Greenway | Linear | 8.89 | Green space beneath elevated BART tracks with multi-use linear trail, lawns, benches, landscaping |
| Catherine's Walk | Linear | .02 | Pathway and stairs |
| Manor Walk | Linear | .11 | Mid-block pathway |
| Community Center | Special Use | 1.04 | Includes community center building and library, with extensive recreational programming |
| Senior Center | Special Use | 0.25 | Includes senior center building and adjacent house |
| **Total Active City Park Areas** | | **22.06** | |
| **OTHER EXISTING ACTIVE OPEN SPACE AREAS** | | | |
| Schoolyards and School Athletic Fields | Schools | 7.19 | Includes asphalt play areas at Marin, Cornell, Vista, Ocean View, Albany Middle, and Albany High, and field at Ocean View.  School buildings and landscaped/utility areas have been subtracted out. |
| Cougar Field | Schools | 4.20 | Located in El Cerrito, but serves AMS and AHS |
| University Village Community Garden | University | 3.00 | University property |
| UCV Playground | University | 0.44 | University property |
| Fielding Fields | University | 4.10 | University property |
| Little League Fields | University | 1.70 | University property |
| **Total Other Active Open Spaces** | | **20.63** | |
| **Year 2015 Total Active Open Space** | | **42.69** | |
| **PLANNED NEW OR IMPROVED OPEN SPACES** | | | |
| Key Route Median | Linear | 1.40 | Landscaped median.  Not a park at this time, but could be improved through addition of trails, seating areas, etc. |
| Pierce Street Park | Neighborhood | 4.10 | Former I-80 right-of-way, planned for improvement |
| **Total Planned Open Space Areas** | | **5.50** | . |
| **Year 2035 Total Active Open Space** | | **48.19** | |

*Table PROS-1, continued*

| Park Name | Type | Acreage | Comments |
|-----------|------|---------|----------|
| **PASSIVE OPEN SPACE/ CONSERVATION AREAS** | | | |
| Albany Hill | Conservation | 12.75 | Total excludes 7.3 acres of privately owned conservation easement land on the eastern portions of the parcels containing Bayside Commons, Bridgewater, and Gateview. |
| Creekside | Conservation | 5.11 | North end of Madison Avenue, extending to Cerrito Creek. |
| McLaughlin Eastshore State Park | Regional Park/ Conservation | 73.00 | Includes Albany Bulb, Neck, Plateau, and Beach areas. About half of this land is owned by the City of Albany and the other half is owned by EBRPD.  At this time, improvements are limited to trails and a parking area. Total excludes Caltrans ROW and submerged or tidal lands. |
| **Total Passive Open Space Areas** | | **90.86** | |
| **GRAND TOTAL OPEN SPACE** | | **139.05** | |

*Source: Albany Parks, Recreation, and Open Space Master Plan, 2004. Barry Miller Consulting, 2015*

## Park Classification

**Mini-Park.**  These are small, single purpose parks designed primarily for use by small children and their parents. Facilities are usually limited to a small grass or turf area, a tot lot, and a picnic area. There is one mini-park in Albany—the Dartmouth Tot Lot located at the northwest corner of Dartmouth and Talbot.  Mini-parks are typically less than one-half acre and are located in residential settings.  The service area is typically less than one-half mile, with most visitors arriving on foot.

**Neighborhood Park.**  Neighborhood parks typically combine playgrounds and grass/ turf. They are designed for a mix of programmed and non-programmed recreation activities.  They are less than 5 acres in size and serve persons within an approximately one-half mile radius.  Typical facilities include a children's playground, picnic areas, trails, open grassy areas, basketball courts, and multi-use sports fields for soccer and baseball. There are two neighborhood parks in the city: Ocean View and Jewel's Terrace.  A third neighborhood park is planned in the former freeway right-of-way along Pierce Street just north of Calhoun Street.

**Community Park.**  Community parks are designed for active sports and structured recreation as well as un-programmed recreation for individuals and families.  They are larger than neighborhood parks, with more varied facilities and a service area of 1-2 miles.  In suburban settings, such parks are usually 10 acres or more. In an urban setting, a size range from 5 to 10 acres is more common.  Community parks typically have facilities such as rest rooms, parking, and recreation buildings.  Sports fields or similar facilities are often the central focus.  Memorial Park is the only Community Park in Albany.

**Linear Park/Greenway.**  Linear parks are landscaped areas that follow corridors such as streams, railroads, power lines, and other linear features.  This type of park usually contains trails, landscaped areas, viewpoints, and seating areas. Depending on their width, linear parks may also include features parks such as tot lots, par courses, picnic tables, and gardens.  Such parks may also include mid-block paths and staircases.  Albany's best known linear park is the Ohlone Greenway. Manor Walk and Catherine's Walk are also counted as linear parks, while also functioning as mid-block pedestrian paths.

**Special Use Area.**  Special Use Areas are public lands occupied by special-purpose recreational facilities, including recreation buildings. The two Special Use Areas in Albany are the Community Center and the Senior Center.  In larger cities, special use areas include unique facilities such as zoos, botanical gardens, and golf courses.

**Regional Park.**  Regional parks serve the city and beyond.  They are typically very large in area and often draw many visitors from other communities. Regional parks may have features such as beaches, forests, historic homesteads, and wetlands.  Their large size means that most of the land area is used for passive recreation. However, in an urban setting, regional parks may include ballfields, pools, nature centers, and activities that also occur in community parks.  The McLaughlin Eastshore State Park along the Albany waterfront meets regional park criteria. Many portions of the State Park also meet the criteria for Conservation Open Space (defined below).

**Conservation Open Space.**  Conservation open space consists of undeveloped land left in a relatively natural state.  Public access may be controlled, and recreation is a secondary objective or may not be compatible due to sensitive habitat. This type of park includes steep hillsides, wetlands, and areas with unique or endangered species. Creekside Park and Albany Hill Park are examples.  The Burrowing Owl Habitat area at the Albany Plateau is another example.  Hiking trails, interpretive facilities, and picnic areas are among the types of uses found in such parks, although in some cases the presence of sensitive habitat may limit facilities altogether.

**School Open Space.**  This includes areas on public school properties dedicated to recreational use, including schoolyards, playgrounds, and sports fields.  The City neither owns nor controls these properties, but they are an essential community resource.  School facilities accommodate athletic and recreational activities for youth and may be accessible to the public during non-school hours as a result of joint use agreements between the City and the School District.

**University Village Open Space.**  This category includes the Little League and Fielding Field ball fields on the University Village property, the playground area in the center of University Village, and the community garden on West End Way.  These are not City-owned facilities, but they provide recreational opportunities for a subset of the population and expand the options available to Albany residents.



*Memorial Park*



*Veterans Memorial Building, Memorial Park*

## Per Capita Service Standards

The adequacy of park systems is often measured using a per capita standard for the number of acres per 1,000 residents. On a national level, such standards are typically designed for growing suburban communities and are not always well-suited for densely populated cities with fixed boundaries. Nonetheless, the standards can provide benchmarks for estimating how much additional parkland may be needed to maintain current ratios, or to bring the city closer to national standards.

In 2015, Albany had 42.69 acres of active open space, including City parks and other public open spaces that were occasionally available for public use or programmed recreation (see Table 6-1). Based on a 2015 population of 18,500, this equates to 2.31 acres of parkland per 1,000 residents.

If passive open space is added to the standard, the per capita ratio rises to 7.24 acres per 1,000 residents. Hiwever, the active open space figure is a more useful per capita planning standard in a city such as Albany. A small built out city with fixed boundaries can create active open space more easily than it can create passive open space, and the need for active open space is more directly affected by increases in population.

The addition of 1,800 residents, as envisioned by the General Plan, would translate into a need for about 4.2 acres of additional active parkland if the existing ratio of 2.31 acres/1,000 residents is maintained. Most of this need will be met through the addition of a 4.1-acre neighborhood park on Pierce Street just north of Calhoun Street. The City's Parks, Recreation, and Open Space Master Plan also calls for improvements to the Key Route median, which would increase the per capita ratio to 2.37 acres/1,000 residents by 2035.

For planning purposes, the City is adopting a per capita goal of 3 acres of active parkland per 1,000 residents by 2035.  This is an aspirational target that exceeds the current ratio.  The target aligns with the standard for new subdivisions allowed under California's Quimby Act, which is the state legislation that enables cities to require the dedication of new parks or payment of in-lieu fees for new development.  Applying the standard of 3 acres per 1,000 to the Year 2035 projected population of 20,300 suggests the City should have 60.9 acres of active parkland and open space by 2035, an increase of 18 acres.

The City will continue to work toward this acreage goal through its park planning and capital improvement programs.  Future open spaces may include non-traditional parks, such as urban plazas, pocket parks, rooftop gardens, and new trails and linear parks.  It is also possible that some active open space may be created through park improvements along the waterfront.

Section 22-8.4 of the Albany Municipal Code establishes provisions for the collection of parkland in-lieu fees for large new developments.  The fees vary depending on the fair market value of the land being subdivided and the estimated fair market value of the land that would otherwise be required to be dedicated.  The Municipal Code requires that the fees be used on parks and facilities that bear a reasonable relationship to the residents of the project being developed.  Individual homes generally do not pay a park impact fee.

Per capita acreage standards are supplemented by distance standards (in other words, the distance a resident has to walk, bike, or drive to reach a park) and standards for specific types of facilities.  The National Recreation and Park Association (NRPA) has a guideline that all residents should be within ½ mile of a neighborhood (or community) park.  Some parts of Albany do not meet this standard, including the high-density areas along Pierce Street and the east side of Albany Hill.  Construction of the new Pierce Street Park should address this deficiency.



*Photo: Dave Donaldson*

*Ohlone Greenway near Codornices Creek*

## Needs and Planned Improvements

The 2004 Albany Parks, Recreation, and Open Space Master Plan included a needs assessment based on household surveys, interviews with stakeholders, and a comparison of how Albany fared against national standards for different types of recreational facilities. The assessment indicated a slight need for additional ball fields and soccer fields, a need for additional trails, and a need for an indoor recreation center or gymnasium.

The 2004 Plan has been used to identify funding priorities and capital improvement needs for the Albany Park system for the last decade. Many of the projects listed in the Master Plan have been completed, while others remain unfunded. In 2007, the City completed a major renovation of Ocean View Park, including reconfigured playfields, lighting, playground facilities, a restroom, a drinking fountain, and renovation of infrastructure.

A renovation was also completed at Terrace Park, with improvements to the restroom, replacement of turf and drainage, upgrades to the picnic area, and resurfacing of paths and basketball courts. Memorial Park was also refurbished, with a reconstructed ballfield, turf renovations, new support facilities, and landscaping improvements. The Ohlone Greenway has been upgraded with new lighting, irrigation, and trail surfaces. A number of upgrades to the Veterans Memorial Building were also completed, and playground equipment was replaced at the Dartmouth Mini-Park. Playground surfaces continue to be replaced as part of on-going renovation and maintenance programs.

There continue to unmet capital improvement needs in the park system. These include a major renovation of the Veterans Memorial Building, which is owned by Alameda County. City acquisition of this facility will continue to be explored, although the building needs costly seismic renovation and accessibility improvements. The School District has also considered acquisition. Any alterations must be sensitive to the historic features of the building and should maintain public access to the interior spaces.

The Ohlone Greenway continues to be evaluated for additional improvements, including a fitness trail, interpretive signage, fruit and nut trees, game courts, and drought-tolerant landscaping. A Greenway Preferred Concept Plan incorporating some of these improvements and relying on Measure WW funds for construction is presently moving forward. Opportunities to expand existing parks through acquisition of adjacent sites is being explored at several parks, again with serious cost constraints.

Plans for a new neighborhood park on Pierce Street are moving forward. The park will include an ADA-accessible path, an area for young children, and grassy lawn areas. Further improvements are being studied, subject to available funding and community input. As noted above, the City will consider future landscaping improvements to the Key Route median and beautification projects to enhance the usability of public space. Other plans for the park system include additional linear trails along sections of Codornices Creek and further trail improvements in Creekside Park and on Albany Hill. The 2004 Master Plan also suggested a park at the Albany Children's Center site, although the site is not available for park use at this time.

Albany is also working with the East Bay Regional Park District on transition planning for the City-owned lands along the waterfront. In late 2014, a planning process was initiated to implement the Eastshore State Park Plan along the Albany waterfront. Future projects include extension of the Bay Trail, improvements to some of the existing spur trails, interpretive signage, seating areas, and improvements to Albany Beach. Site clean-up and debris removal, shoreline stabilization, and ecological restoration projects are also under consideration. Additional recreational improvements could be considered through future planning processes.

The shoreline area projects are discussed in the Waterfront Element of the General Plan.



*Albany's Hotsy Totsy Unicorns Kickball Team*

# D. RECREATIONAL PROGRAMMING AND SERVICE DELIVERY

Recreational services are provided to Albany residents through Albany's Recreation and Community Services Department. The Department offers activities such as yoga, Aikido, tennis, ballet, and karate, as well as special interest classes such as cooking, calligraphy, painting, carpentry, writing, math, and more. Many of the programs are targeted to specific age groups, including pre-schoolers, youth, adults, and seniors. The Department also coordinates sports programs, such as softball, kickball, basketball, running, and soccer.

Albany's Recreation and Community Services Department hosts a number of special events, including Dinner with Albany (every two years), Music in the Park, Chinese New Year, Albany Local Week., the 4th of July celebration, and Bike About Town. The Department also provides staff support to the Parks and Recreation Commission, the Arts Committee, and a number of ad hoc and special focus committees. It also coordinates City volunteer services.

Major recreational programming needs in the city include arts, crafts, lifetime sport programs, career placement programs, informal sports activities, concerts in the parks, and after school programs. The City has limited indoor spaces where such activities can be carried out.

Recreational service demands are also changing in response to shifts in demographics and trends in leisure and sports. In the last 20 years, Albany has become more culturally and ethnically diverse, leading to the demand for new types of activities. Looking to the future, the City anticipates increased demand for recreational programs serving seniors. Emerging sports such as lacrosse and rugby may also change athletic programming and facility needs.

The Recreation and Community Services Department is responsible for operation of the Senior Center, the Memorial and Ocean View After-School Care Centers, the Senior/Youth Annex, and the Community Center.  Recreation and Community Services also maintains the Ocean View and Memorial Park ball fields.  Most park maintenance responsibilities are assigned to the Public Works Department.  Public Works also maintains medians, street trees, and municipal landscaping.  City maintenance is supplemented by the activities of Friends of Albany Parks, sports organizations, and volunteers.

In general, maintenance and rehabilitation needs have increased due to aging equipment and higher facility usage. The City relies on the General Fund to cover most of these costs.  Larger expenses, including major park renovations and new facilities, may be funded through the Capital Facilities Fund or through bond measures.



*Photo: Albany Recreation and Community Service*

*Recreation and Community Services Drawing Class*

# E. OTHER RECREATIONAL SERVICE PROVIDERS

As indicated in Table 6-1, almost half of the active open space in Albany is owned and operated by public agencies other than the City.  These facilities round out the recreational options available to Albany residents, and complement the services provided by the City.  For many residents, the closest playground or open space available is at their neighborhood school.

The City of Albany and the Albany Unified School District (AUSD) have adopted a Joint Use Agreement that formally establishes the terms and conditions for sharing facilities.  Its intent is to provide the highest level of service with the least possible expenditure of public funds, and to avoid redundancies in service delivery and facility development.

The Agreement provides AUSD students with access to Memorial Field, Ocean View Field and other City-owned facilities.  It also provides Albany residents with access to Cougar Field, schoolyards, playgrounds, and other AUSD facilities when school is not in session.  The City and AUSD may use each other's facilities free of charge provided the terms in the Agreement are followed.

School facilities include asphalt play areas and playgrounds at Cornell, Marin, Ocean View, and Vista Elementary Schools, hard court areas at the Middle and High School, the aquatic center at the High School, and Cougar Field.  Ocean View School includes a ball field which is functionally part of the City-owned ball field on an adjacent site.  Cougar Field is located in the City of El Cerrito but is owned by the Albany Unified School District and serves Albany residents.

The University of California owns approximately 10 acres of recreational open space at University Village. It also operates an urban farm on a roughly 9-acre agricultural tract on the south side of Buchanan Street between Jackson Street and San Pablo Avenue. The Master Plan for University Village includes a commitment by the University to maintain some level of public access to its open space in the future. However, the level of access and the location of the open space is subject to change.

Fielding West and East Fields (soccer and softball) and the adjacent 3-acre community garden are anticipated to remain in their current locations for the forseeable future. The fields are used by Albany-Berkeley Girls Softball League and Albany Berkeley Soccer Club, among others, and are part of a larger complex that includes the Gabe Catalfo Fields to the south in Berkeley. The two Little League Fields on 10th Street are used by Albany Little League. The UC fields provide an important complement to the City-owned facilities at Ocean View and Memorial Parks.

Albany sports organizations also utilize the Tom Bates sports complex in Berkeley, located west of Interstate 80 and south of Gilman Street. The $7 million complex opened in 2008, with funding provided through a joint powers agreement with the Cities of Albany, Berkeley, Emeryville, El Cerrito, and Richmond. The complex accommodates baseball, softball, and soccer.

The City's recreational services are further supplemented by non-profit organizations such as the YMCA, and by private service providers. The YMCA of the Central Bay Area has a health and wellness center on Kains Avenue in Albany. The Albany "Y" is one of the most well-established human services organizations in the East Bay. It provides workout facilities, classes, licensed child care, and a variety of summer camps.

Private recreational facilities in the City include Albany Bowl and Golden Gate Fields. Albany Bowl (540 San Pablo Avenue) has been in operation since 1949 and is a family style bowling center with 36 lanes. Golden Gate Fields is the only remaining racetrack in the Bay Area. It has been in continuous operation since 1947. The track offers live thoroughbred racing programs, simulcast broadcasts, and a variety of special events. The oval-shaped area inside the racing lanes is roughly 36 acres, making it the largest private open space in the city.



Photo: Doug Donaldson

*Ohlone Greenway path*

# F. Trails And Pathways

Walking and cycling are among the most popular recreational activities in the city and contribute to the health and wellness of Albany residents.  The city's trails and paths provide opportunities for recreation and non-motorized transportation.  The trails and pathways discussed here are those that are designed primarily for recreational uses.  Bike lanes, bike routes, and sidewalks within street rights-of-way are discussed in the Transportation Element.

The design of trails varies depending on their location, topography, soils, and intended function.  Some trails may be left in a natural condition.  Others may be supplemented with gravel, bark chips, sand, or another pervious material.  Trails may also be hard surfaced, using materials such as concrete or asphalt.  Regardless of materials, trails should be designed to protect the natural environment, ensure the safety of pedestrians and cyclists, and enhance the user experience.

Ideally, trails should provide a range of challenges, from easy walking on level terrain to more strenuous hiking on steeper slopes.  Albany is a compact city with limited terrain and open space, but it offers opportunities for such variation.

The city's trails include:

- short, relatively informal dirt paths through wooded areas on Albany Hill
- paved paths along segments of Cerrito and Codornices Creeks
- the paved Ohlone Trail, which extends from Richmond to Berkeley in a greenway beneath the elevated BART tracks
- the main spine of the Bay Trail, which has been completed along the shoreline from Buchanan Street northward
- Spur trails off the Bay Trail, including trails along the Albany Neck and Plateau, and informal trails at the Albany Bulb.

Some of these trails are local, others serve multiple cities, and the Bay Trail is regional.  The City's goal is to maximize the functionality and usability of these trails by connecting them to one another so that they serve as an integrated network. Connecting the trails can improve access to the shoreline, schools, shopping areas, and recreational facilities from Albany's neighborhoods, while providing a variety of recreational experiences.

Future projects include completion of the Bay Trail and improvement of the spur trail network within McLaughlin Eastshore State Park.  The Bay Trail is planned to extend from Buchanan Street southward, following the shoreline west of Golden Gate Fields over Fleming Point, linking to existing segments of the trail south of Gilman Street in Berkeley. Albany's Active Transportation Plan also raises the possibility of a new pedestrian and bicycle bridge between the shoreline and University Village, spanning Interstate 80 and the railroad.  However, the cost of such a project is substantial and no funding source or location has been identified.

Other planned improvements include the extension of trails along Cerrito and Codornices Creeks.  Opportunities for such trails exist west of San Pablo Avenue, where much of the land on the Albany side of the creek is already in public ownership.   The planned senior housing development at University Village will include trail improvements along Codornices Creek, linking San Pablo Avenue to the existing trail further west.  There is also a potential to improve the trail system along Cerrito Creek within Creekside Park, and to the east near El Cerrito Plaza. Opportunities for creekside trails are much more limited elsewhere along these creeks, since they are located in private backyards.



*Cerrito Creek Trail*

Trail improvements are also planned on Albany Hill and on the Key Route median.  On Albany Hill, the goal is to create an integrated system of loop trails that provides access between the top of the hill and Cerrito Creek on the north, Pierce Street on the west, and the residential neighborhoods to the south and east.  In the event the 11-acre vacant parcel on the southwest slopes of the hill is developed, a trail easement should be included to provide access through the parcel. Along Key Route Boulevard, the median trail would extend from Solano Avenue north into El Cerrito, providing access to the High School and Memorial Park.

# F. GOALS, POLICIES, AND ACTIONS

## GOAL PROS-1: OPEN SPACE PROTECTION

**Preserve and enhance open space in Albany for natural resource protection, food production, hazard prevention and abatement, aesthetics, and recreation.**

### POLICIES

**Policy PROS-1.1: Green Community**
Maintain Albany as a green community that integrates open space and nature with neighborhoods, protects natural habitat, and educates residents about local vegetation and wildlife.

**Policy PROS-1.2: Albany Hill**
Designate the crest of Albany Hill and adjacent upper slopes for open space and require dedication of this area for conservation and public access as a condition of approval for any proposed development on parcels along the ridgeline. Albany Hill should be considered an essential and valuable regional open space resource.

**Policy PROS-1.3:  Albany Waterfront**
Recognize the importance of the Albany waterfront as a multi-use open space area and a vital part of the cultural landscape of the East Bay. The City will work toward achieving the maximum feasible open space and recreational uses in the waterfront area and improved public access to and along the Albany shoreline.  All future land use decisions for the lands west of Interstate 80 shall be consistent with State and regional park plans, trail plans, and Bay conservation and shoreline access plans.

*See the General Plan Waterfront Element for a complete set of goals, policies, and actions for the shoreline open space area.*

**Policy PROS-1.4:  Urban Open Space**
Incorporate a variety of small open spaces, such as pocket parks, plazas, courtyards, rooftop gardens, tot lots, and landscaped areas, into new development.

**Policy PROS-1.5: Open Space in the Public Realm**
Enhance the open space value of Albany's streets and public spaces through street tree planting, landscaping, and maintenance and expansion of the urban tree canopy.

**Policy PROS-1.6:    Open Space as a Component of Capital Projects**
In planning public improvements such as streetscape projects and public buildings, consider opportunities for public art, landscaping, community gathering places, and other open spaces that beautify the community and supplement existing recreational facilities.

**Policy PROS-1.7:  Creeks**
Recognize creeks as an important open space element, and a means of defining the edges of the city and bringing open space and nature into neighborhoods.

**Policy PROS-1.8:  Residential Yards**
Maintain requirements for structural setbacks and minimum front yard areas on residential lots to create a sense of openness, provide space for plants and landscaping, and enhance the beauty of Albany.

**Policy PROS-1.9:  Stormwater Management**
Recognize the importance of open space in managing stormwater, improving water quality, and reducing flooding hazards.

*See the Conservation and Sustainability Element for policies on community gardening, urban agriculture, and urban forestry.*

## IMPLEMENTING ACTIONS

**Action PROS-1.A:  Priority Conservation Area**
Maintain the undeveloped portions of Albany Hill as a regionally designated "Priority Conservation Area."

**Action PROS-1.B:  Creekside Master Plan Implementation**
Implement the open space management recommendations of the 2012 Creekside Master Plan, including vegetation management, trail improvements, signage and other park improvements.

**Action PROS-1.C:  Albany Hill Conservation Easements**
Work with the owner of the 11-acre vacant parcel south of Gateway Towers and land conservation organizations to develop a site plan for the property which maximizes the conservation of open space on the upper slopes and ridgeline portions of the site.  Continue to work with owners of other private properties on Albany Hill to reduce fire hazards and manage the Hill's unique ecosystem.

**Action PROS-1.D:  Private Open Space Standards**
Maintain requirements for private open space, such as patios and balconies, for new residential units.

*Private open space is intended to complement public open space and meet the needs of individual households, particularly in multi-family and mixed use projects.*

**Action PROS-1.E:  Rooftop Open Space**
Develop guidelines or standards for including usable rooftop open space in new multi-family, mixed use, and commercial projects.

*This might include rooftops which are accessible as recreational spaces or gardening spaces for apartment residents or employees, spaces for solar power generation and rainwater collection, and similar activities. This action is primarily aimed at larger scale development along San Pablo and Solano Avenues.*

**Action PROS-1.F:  Eastshore State Park**
Actively participate in the planning and development of McLaughlin Eastshore State Park.

*The City will work closely with East Bay Regional Park District and local advocacy groups in the planning of the State Park and waterfront trail system.*

**Action PROS-1.G:  Freeway Open Space Improvements**
Work with Caltrans, Union Pacific Railroad, and other parties to explore enhancement of the underutilized open space along Interstate 80, particularly on the east side of the freeway at the Buchanan Street interchange.  Use of this space for landscaping, gateway signage, public art, stormwater management, and similar improvements should be considered.



*Dartmouth Mini Park*

## GOAL PROS-2:  PARKLAND EXPANSION AND IMPROVEMENT

**Expand and improve Albany's park system to keep pace with population growth and meet the demand for recreational facilities in the City.**

### POLICIES

**Policy PROS-2.1:  Park Hierarchy**
Maintain a hierarchy of mini-parks, neighborhood parks, and community parks in Albany, with guidelines to distinguish the types of uses and activities appropriate in each park type.

*Memorial Park should continue be designated as a community park, intended to meet citywide needs and host citywide activities.  Ocean View and Terrace Parks should both continue to be designated as neighborhood parks, as should the proposed new park at Pierce Street.  The text of the Parks, Recreation, and Open Space Element should be consulted for further detail on how parks are classified.*

**Policy PROS-2.2:  Non-Traditional Parks**
Supplement traditional City parks with linear parks, conservation open spaces, school facilities, regional parks, and other unique parks that complement the network.

*The text of the Parks, Recreation, and Open Space Element should be consulted for the definitions of each park category.*

**Policy PROS-2.3: Per Capita Service Standards**
Strive for a service standard of at least 3 acres of active parkland per 1,000 Albany residents.  This standard should provide the basis for parkland dedication and in-lieu fee requirements for new development.

*In 2015, there were 2.31 acres of active parkland per 1,000 residents, including City, School District, BART, and University recreational facilities but excluding passive open space along the waterfront and on Albany Hill.  The City hopes to raise the per capita total in the future through the development of new recreational facilities and open spaces such as Pierce Street park.  Under the Quimby Act, the City may require parkland dedication or collect in lieu fees based on a standard of 3 acres per 1,000 residents.*

**Policy PROS-2.4: Site Design and Planning Standards**
Observe standards for the design and development of parks and open space areas as presented in the Albany Parks, Recreation, and Open Space Master Plan.  The site plan for each park should be appropriate to its specific conditions and context, and should maximize public access and visibility.

**Policy PROS-2.5:  New Parks**
Pursue the development of new parks that accommodate services and facilities not present in Albany today and that respond to increased demand for park and recreational space and facilities.

**Policy PROS-2.6:  New Facilities in Existing Parks**
Balance the demand for new recreational facilities and structures with the need for unprogrammed open space that meets other recreational needs.  Where possible, the development of new recreational facilities and amenities should avoid displacing or crowding out other activities.  Maintaining a mix of passive and active open spaces is important to the function and aesthetics of community, neighborhood, and regional parks.

**Policy PROS-2.7:  Resource Preservation**
Design and plan new parks in a manner that preserves and enhances natural resources, protects trees and significant topographic features, and is consistent with the sustainability principles articulated in the General Plan Conservation Element.

**Policy PROS-2.8: Recreational Land Use Compatibility**

Ensure that park design and activity programming is sensitive to adjacent land uses, taking into consideration both the effect of the park on nearby uses and the effect of nearby uses on the park. This would include efforts to reduce noise and lighting conflicts due to potentially loud or night-time park activities near sensitive receptors (such as schools or homes), as well as consideration of parking and other impacts.

**Policy PROS-2.9: Park Expansion**

Explore opportunities to expand existing City parks on to vacant or underutilized land on the perimeter of each park site.

**Policy PROS-2.10: Public Participation**

Engage the public in the design and review of proposed new parks and park improvements, including public meetings and other activities which secure broad participation.

**Policy PROS-2.11: Private and Non-Profit Recreational Facilities**

Encourage the development of additional private and non-profit recreational facilities that are open to the general public, and that complement the array of leisure-time activities available to Albany residents.

## IMPLEMENTING ACTIONS

**Action PROS-2.A: Parkland Fees and Dedication**

Maintain park in-lieu fees and/or dedication requirements to ensure that new development pays its fair share or otherwise provides for the demand for parkland and recreational facilities it creates.

**Action PROS-2.B: Pierce Street Park**

Develop a new park on the 4.5-acre former freeway right-of-way site bounded by Pierce Street, Cleveland and Washington Avenues and the I-80 freeway. Development of the site should be phased based on the availability of funds and community input.

**Action PROS-2.C: Design Standards**

Continue efforts to establish recreational facility design standards, potentially including specifications for signage and the types of equipment, models and materials to be used in park development.

**Action PROS-2.D: Master Plan Updates**

Periodically update the Parks, Recreation, and Open Space Master Plan to identify specific projects, funding sources, and time schedules for implementation. This should include detailed improvement and maintenance plans for the City's parks, which are coordinated with the five-year Capital Improvements Program.

**Action PROS-2.E: Signage Program**

Develop and implement a uniform signage program for Albany's parks, including signage within the parks and directional (wayfinding) signage outside park boundaries.

*See the Waterfront Element for additional policies on park improvements.*

**Action PROS-2.F: Dog Play Areas**

Maintain the fenced dog play area at Memorial Park, and address the need for additional dog play areas in an update of the Parks, Recreation, and Open Space Master Plan.

**Action PROS-2.G: Golden Gate Fields Open Space**

Support the inclusion of new publicly accessible open space or recreational facilities in any future plans for the reuse of Golden Gate Fields.

## GOAL PROS-3:  PARK MANAGEMENT AND MAINTENANCE

**Maintain and enhance Albany's parks so that they provide attractive open spaces and high-quality recreational facilities that serve children, youth, families, and seniors.**

### POLICIES

**Policy PROS-3.1:  Planning for Diverse User Groups**
Ensure that Albany's parks are designed to provide for residents of all ages, cultural backgrounds, and physical capabilities.  This should include outdoor spaces for varied activities which serve the needs of different user groups.

**Policy PROS-3.2:  Modernization**
Continue to enhance and modernize recreational buildings such as the pre-school building and the senior center.

**Policy PROS-3.3:  Sports Fields**
Renovate and maintain City sports fields and continue to collaborate with areawide sports field users on field programming and maintenance. Explore opportunities to create new sports fields, including fields on locations outside of Albany, through joint powers agreements, and joint efforts with field users.  In addition, to increase the usefulness of athletic fields, encourage field designs and configurations that can accommodate multiple sports rather than one sport alone.



*Photo: Albany Recreation and Community Services*

*Chinese New Year tumbling performance*

**Policy PROS-3.4:  Outdoor Cultural Space**
Provide flexible outdoor spaces in City parks that can be programmed for community gatherings, art displays, performances and other cultural activities.

**Policy PROS-3.5:  Dogs**
Continue to work with local dog owners, park users, and community organizations to balance the demand for dog play areas with other considerations such as habitat protection, safety, and accommodation of active open space uses.

**Policy PROS-3.6:  Maintenance**
Maintain park and recreation facilities in a manner which keeps them safe, attractive, clean, and a positive part of their neighborhoods.  In the annual budgeting process, a priority should be placed on the repair, rehabilitation and preventive maintenance of park facilities.

**Policy PROS-3.7:  Vegetation Management**
Ensure that park landscaping and maintenance practices are consistent with City policies to reduce wildfire hazards and manage vegetation. These practices should also reinforce City programs to conserve water, promote Bay-friendly landscaping such as native, non-invasive, drought-tolerant plants, and use reclaimed water for irrigation.

**Policy PROS-3.8:  Volunteers**
Use volunteers to supplement City staff and extend the range of recreational services that are provided to Albany residents.  The City should offer volunteer opportunities for such tasks as assistance with special events, administrative tasks, and "adopt a park" maintenance and stewardship programs.

**Policy PROS-3.9:  Security**
Ensure that the design and operation of City parks maximizes the security and personal safety of park users.

**Policy PROS-3.10:  Integrated Pest Management**
Apply integrated pest management principles in park maintenance, with an emphasis on non-toxic, environmentally-safe pest control methods

**Policy PROS-3.11:  Scheduling**
Coordinate the scheduling of activities in recreation centers, on sports fields, at playgrounds, and in parks in general to avoid conflicts, reduce wear and tear, and more evenly distribute activities among parks.  As noted in Goal 4, this should include coordination with the Albany Unified School District.

**Policy PROS-3.12:  Funding and Grants**
Consider a variety of strategies to increase funding for capital projects and to enhance park maintenance, such as local fundraising, grants, development partnerships, and special taxing districts such as Landscape and Lighting Assessment Districts.

## IMPLEMENTING ACTIONS

**Action PROS-3.A:  Parks and Recreation Commission**
Maintain a City Parks and Recreation Commission with the responsibility for reviewing plans for parks, open space, landscaping, and street beautification, and considering public input on such plans.  The Parks and Recreation Commission should also advise on park maintenance activities and other matters concerning the delivery of park and recreation services.

**Action PROS-3.B: Memorial Park Master Plan**
Update the 1998 Memorial Park Master Plan to reflect current conditions and identify needed improvements for the coming years. This may include improvements to the entry promenade, as called for by the 2004 Parks, Recreation, and Open Space Master Plan.

**Action PROS-3.C: Improvement Programs**
Conduct periodic needs assessments, master planning, and improvement programs for City parks, including Ocean View Park, Terrace Park, Dartmouth Tot Lot, and the Ohlone Greenway.

**Action PROS-3.D:  Playground Improvements**
Develop an improvement and/or replacement program for Albany's playgrounds.  As part of this program, consideration should be given to expanding the Dartmouth Tot Lot.

**Action PROS-3.E:  Maintenance Programs**
Develop and periodically update maintenance standards and programs for parks, sports fields, and other recreational facilities, including budgets for the various tasks required to keep each park and field in good condition.

*Citywide budgeting practices and procedures should ensure that adequate funds are set aside for park maintenance and that line items are established for specific park maintenance activities (e.g., sports field maintenance, building maintenance, medians and traffic islands, etc.). Maintenance practices should aim for reduced costs through minor improvements such as installation of automated irrigation systems and drought-tolerant landscaping.*

**Action PROS-3.F:  Maintenance Assessment**
Regularly evaluate the distribution of maintenance tasks between City workers and other parties, including contractors, non-profits, park user groups and neighborhood residents.  Clear operating procedures should be followed for all maintenance activities, and for the delegation of maintenance tasks to entities other than City staff.

**Action PROS-3.G:  Reclaimed Water Use**
Continue to explore opportunities for reclaimed water use on City parks, and on medians and planting strips.

**Action PROS-3.H: Measure R**
Prior to the expiration of the Measure R Landscape and Lighting Assessment District (No. 1996-1) in 2020, utilize available funds to acquire additional open space and implement vegetation management programs on Albany Hill, and to undertake continued restoration of Cerrito and Codornices Creeks. If approved by voters, broaden use of Measure R funds to include additional open space projects.

# GOAL PROS-4: RECREATIONAL PROGRAMMING

**Provide high quality services and recreational programs that meet the diverse sports, fitness, and leisure time needs of Albany residents.**

## POLICIES

**Policy PROS-4.1:  Responsiveness to Demographic Change**
Ensure that recreational programs are periodically evaluated and adjusted in response to demographic changes in the city, recreational trends, changes in technology and consumer preferences, and other factors.

**Policy PROS-4.2:  Children and Teen Programs**
Continue to provide and maintain facilities for child care, early childhood education, and teen programs operated by the City or by private interests.

**Policy PROS-4.3:  Senior Services**
Maintain and enhance programs for senior citizens at the Albany Senior Center and at other locations in the City.  Expand off-site activities such as tours and travel.

**Policy PROS-4.4:  General Interest Programs**
Provide a range of recreational activities and life-long learning classes for adults, such as computer instruction, job training, crafts, sports, and fitness.

**Policy PROS-4.5:  Community Events**
Hold communitywide events such as concerts and festivals in City parks and at school facilities as a way to build community spirit, bring residents together, and celebrate the value of parks and schools to Albany.  Such events should be managed to ensure that maintenance needs, parking, noise, litter, and other impacts are addressed.

**Policy PROS-4.6:  Fitness**
Support exercise and fitness programs which contribute to the health and wellness of Albany residents, including martial arts and other physical activities.

**Policy PROS-4.7:  Arts and Leisure**
Incorporate arts, leisure, cultural, and continuing education programming into recreational programs, to complement sports, play, and active recreation.

*See policies under Goal 5 for references to the School District's role as a partner in the delivery of recreational services and programs.*



*Photo: Albany Recreation and Community Services*

*Teens prepare for Dinner with Albany, 2014*

## IMPLEMENTING ACTIONS

**Action PROS-4.A:  Evaluations**
Continually evaluate programs in terms of costs, fee structure, persons served, community interests, and the level of subsidy required.

*See the Community Services and Facilities Element for additional policies and actions on arts and cultural programs, senior services, and child care.*

## GOAL PROS-5:  JOINT USE AND COLLABORATION

**Promote joint planning, acquisition, development, maintenance, and use of park sites, school sites, UC Village open space, and other recreational and community facilities.**

## POLICIES

**Policy PROS-5.1:  School District Facilities**
Support joint use agreements between the City of Albany and the Albany Unified School District to increase after-hours access to school facilities for Albany residents and school day access to facilities in City parks for Albany students.

**Policy PROS-5.2:  University Village**
Work with the University of California to maintain baseball/ softball fields, a recreation center for Village residents, a community garden, and other amenities which benefit University Village residents and Albany as a whole.  Promote access to the parks and athletic fields within University Village by Albany residents and sports teams, and encourage the University to maintain a "no net loss" policy for the recreational open space acreage within the University Village property.

*In accordance with the UC Village Master Plan, space should be provided for at least one youth soccer and youth softball field, and two youth baseball fields, on the UC Village property.  In addition, outdoor recreation should be provided near the UC Village Community Center.*

**Policy PROS-5.3:  Gill Tract**
Coordinate with the University of California for mutually beneficial uses of the Gill Tract.  Such plans should protect and enhance Village Creek and other natural environmental features, including significant trees.

*See the Land Use Element for additional policies on the Gill Tract.*

**Policy PROS-5.4:  Veterans Memorial Building**
Collaborate with Alameda County on the operation and management of the Veterans Memorial Building.  The ultimate goal should be to transfer ownership of the building to the City, pending a seismic evaluation and plan for seismic improvements. The interior of the building should be maintained as publicly accessible space and its historic features should be maintained and restored to the greatest extent feasible.

**Policy PROS-5.5:   East Bay Regional Park District**
Work with the EBRPD to improve awareness of regional recreational facilities and parks among Albany residents, and to expand the regional park system for the benefit of all residents in Alameda and Contra Costa Counties, including those in Albany.

*See the Waterfront Element for additional discussion of EBRPD's planned improvements in Albany.*

**Policy PROS-5.6:  Adjacent Cities**
Continue to foster partnerships and joint use opportunities with the cities of Berkeley, Richmond, and El Cerrito to improve park and recreational services and ensure the most efficient use of local resources.

*See the Waterfront Element for a discussion of coordination with regional, state, and federal agencies on waterfront park improvements.*

**Policy PROS-5.7:  Program Development**
Coordinate the development of recreational and community service programs with other agencies and organizations, including the School District, UC Village, the YMCA, and other service providers, to avoid redundancy and maximize the choices available to Albany residents.

## IMPLEMENTING ACTIONS

**Action   PROS-5.A:     Tom   Bates   Sports Complex (Gilman Street Fields)**
Periodically evaluate existing joint powers agreements to operate sports facilities in nearby communities, including the Tom Bates Regional Sports Complex at the west end of Gilman Street in Berkeley. Ensure that the City is benefitting from these agreements and receiving services that are commensurate with the cost.

**Action PROS-5.B: Albany Children's Center**
Work with the Albany Unified School District to explore improvements on the Albany Children's Center (Vista School) site which would augment the recreational options available to residents in the surrounding neighborhood.

**Action PROS-5.C:  Funding and Community Access Improvements at Veterans Memorial Building**
Continue to explore potential funding sources for the maintenance, improvement, and acquisition of the Veterans Memorial Building, consistent with the Parks, Recreation, and Open Space Master Plan.  Until the building can be acquired, the City will work with Alameda County on improving building operations and increasing community access.

**Action   PROS-5.D:     Joint   Use   Agreement Updates**
Periodically update joint use agreements between the City and Albany Unified School District so that both parties have access to the greatest range of recreational services and facilities possible. Pursue future joint use or joint powers agreements with the University of California for access to University Village facilities.

**Action PROS- 5.E:  Former Library Site**
Explore the feasibility of using the former library building on Solano Avenue (now owned by the School District and used by the YMCA) for additional recreational programs.



*Photo: Doug Donaldson*

*Waterfront Spur Trail to the Albany Bulb*

## GOAL PROS-6: TRAILS AND PATHWAYS

**Develop an integrated, comprehensive system of trails linking neighborhoods and schools to recreational facilities and open spaces, including the waterfront**.

### POLICIES

**Policy PROS-6.1:  Trail Sustainability**
Ensure that the planning and design of trails is sensitive to environmental protection priorities and issues such as sea level rise, habitat protection, and hillside erosion. If necessary, identify secondary alignments in the event trails must be seasonally closed for habitat protection purposes.

**Policy PROS-6.2:  Connecting Trails**
Focus trail development in Albany on improvements that connect existing pathway and trail systems and make it safer and easier to travel around the city on foot or by bicycle.

*See the Transportation Element for additional policies on trails and connectivity.*

**Policy PROS-6.3:  Trail Safety**
Ensure that trails are designed to maximize user safety and personal security, and to reduce potential conflicts between pedestrians, bicycles, motor vehicles, and trains.

*See the Transportation Element for additional policies on trail safety.*

**Policy PROS-6.4:  Signage**
Encourage directional signage along local trails, and interpretive signage that educates trail users about Albany's natural resources and history.

**Policy PROS-6.5:  Waterfront Access**
Improve trail connections to the Albany waterfront, particularly between the Ohlone Greenway and the Bay Trail.

**Policy PROS-6.6:  Bay Trail**
Work cooperatively with appropriate agencies in completing local segments of the Bay Trail, including spur trails between the waterfront and Albany neighborhoods.  The City supports the long-term vision of a continuous shoreline trail for non-motorized vehicles around San Francisco Bay.

*See the Waterfront Element for additional policies on shoreline access and trail improvements.*

**Policy PROS-6.7:  Albany Hill**
Maintain and expand the system of trails on Albany Hill, including connections between Creekside Park and the neighborhoods on the hill's perimeter.

**Policy PROS-6.8:  Creek Trails**
Coordinate trail planning and improvement programs for Cerrito and Codornices Creeks with the cities of Berkeley, Richmond and El Cerrito, non-profit organizations such as Friends of Five Creeks, and appropriate county, state and federal regulatory agencies.

*See the Conservation and Sustainability Element for policies on creek restoration and daylighting.*

**Policy PROS-6.9:  Transportation ROWs**
Continue to support the enhancement of transportation rights-of-way (ROWs) for linear parks and trails, such as the Ohlone Greenway beneath the elevated BART line..

**Policy PROS-6.10:  Mid-Block Paths**
Maintain existing pathways that provide mid-block connections within neighborhoods, including Manor Way, Catherine's Walk, and the Jackson Street steps.

## IMPLEMENTING ACTIONS

**Action PROS-6.A:  Bay Trail Improvements**
Continue implementation of the Bay Trail Plan along the Albany shoreline, and ensure that provisions for Bay Trail spurs and improvements are included in any future plans for Golden Gate Fields.  The City will work with landowners, appropriate citizen and environmental groups, the State Department of Parks and Recreation, Caltrans, the Regional Park District, the Coastal Conservancy, and ABAG to implement this action.

**Action PROS-6.B:  Albany Hill Trails**
Provide for a dedicated trail easement through the 11-acre parcel on the west side of Albany Hill, with connections between Pierce Street, the end of Hillside Avenue, and existing trails in Creekside Park.  Future trail alignments on Albany Hill should be sensitive to topography and avoid excessively steep grades.

**Action PROS-6.C:  Cerrito Creek Trail**
Provide for a pedestrian bridge across Cerrito Creek between Albany Hill and the north side of the Creek in El Cerrito, consistent with the adopted Creekside Master Plan.  Explore options to provide additional linear creek access between San Pablo Avenue and Albany Hill, including a potential future trail easement on the north end of the Orientation Center for the Blind.

**Action PROS-6.D:  Codornices Creek Trail**
Continue joint planning with the University of California and the City of Berkeley on improvements to the Codornices Creek Trail. Explore options for eventual spur connections to the Bay Trail.

*See the Transportation Element for additional policies and actions on connections between the waterfront and UC Village.*

**Action PROS-6.E:  Community-Based Creek Restoration**
Continue to support the work of Friends of Albany Hill, Friends of Five Creeks, and other community based organizations to enhance the open space and trail potential of Codornices Creek, Cerrito Creek, Village Creek, and other natural areas in the city.

**Action PROS-6.F:  Ohlone Greenway**
Pursue improvements to the Ohlone Greenway, such as game courts, interpretive signage (historic, natural, cultural, etc.), tot lots, toddler play facilities, a par course, and community gardens, where appropriate and compatible with noise levels, nearby residences, and other design factors.

**Action PROS-6.G:  Key Route Median**
Pursue trail improvements, landscaping, and other amenities on the Key Route Boulevard median between Solano Avenue and El Cerrito.  These efforts should be coordinated with the Albany Unified School District, who own a portion of the median.

**Action PROS-6.H:  Active Transportation Plan Updates**
Periodically update the Albany Active Transportation Plan to update information and plans for pedestrian and bicycle trails and pathways in and around the city.

EXHIBIT 8



CITY OF ALBANY
NORTHERN GATEWAY TO ALAMEDA COUNTY
CALIFORNIA
Official Zoning Map
*DISCLAIMER: Zoning Map is believed to be accurate but accuracy is not guaranteed. No liability is assumed either expressed or implied.*
*For questions regarding a specific parcel, please contact Albany Planning Dept.*
City of Richmond
City of El Cerrito
City of Berkeley
San Francisco Bay
Zoning Designations
Residential
RHD: Residential Hillside Development
R-1: Residential Single Family
R-2: Residential Medium Density
R-3: Residential High Density
R-4: Residential Towers
Commercial
SC: Solano Commercial
SPC: San Pablo Commercial
CMX: Commercial Mixed Use
Other
PF: Public Facilities
WF: Waterfront
Unclassified
Overlay Districts
Commercial Node Overlay District
Hillside Overlay District
Planned Residential/Commercial Overlay District
Professional Overlay District
Residential-Commercial Transition District
Watercourse Overlay District
SAN PABLO AV
SOLANO AV
MARIN AV
BUCHANAN ST
WASHINGTON AV
PORTLAND AV
KEY ROUTE BL
MASONIC AV
CLEVELAND AV
EASTSHORE HW
PIERCE ST
BRIGHTON AV
GARFIELD AV
CASTRO ST
CLAY ST
THOUSAND OAKS BL
SANTA FE AV
NEILSON ST
PERALTA AV
DARTMOUTH ST
FRANCIS ST
MONROE ST
OHLONE AV
Revision History
Adopted: Ordinance #04-09
Adopted: Ordinance #06-014
Date Published: March 3, 2009
0 300 600 900 1,200
Feet
N
LYNX TECHNOLOGIES
DIGITAL MAPPING CONSULTANTS

EXHIBIT 9

ROBERT E. NICHOLS (SBN 100028)
RICHARD W. COVERT (SBN 34582)
713 Key Route Blvd.
Albany, California 94706
Telephone: (510) 710-7033
renichols01@comcast.net

*Attorneys for Plaintiff,*
*The Lions Club of Albany, California*

## UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE LIONS CLUB OF ALBANY, CALIFORNIA, A Nonprofit Corporation, <br><br> Plaintiff, <br><br> v. <br><br> THE CITY OF ALBANY, a Charter City; and DOES 1 through 25; <br><br> Defendants. | Case No. <br><br> **COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF** <br><br> **DEMAND FOR JURY TRIAL** <br><br> **1. Violation First Amendment** (Immediate Deprivation of Free Exercise of Religion) (42 USC § 1983,1988); <br> **2. Violation First Amendment** (Deprivation of Free Exercise of Religion) (42 USC § 1983,1988) <br> **3. Violation of First Amendment** (Deprivation of Exercise of Free Speech) (42USC § 1983,1988) <br> **4. Violation of Fourteenth Amendment** (Deprivation of Due Process) (42 USC § 1983,1988) |

Plaintiff, The Lions Club of Albany, California, alleges as follows:

## PARTIES

1.      The Lions Club of Albany, California, is a nonprofit corporation with its agent for service of process located in Kensington, California. The Lions Club of Albany, California, (Hereafter Lions Cub) is a public service organization chartered by Lions Clubs International.

2.      Plaintiff is informed and believes that Defendant, City of Albany, is a municipal

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

entity with the capacity to sue and be sued. The City of Albany is a charter city organized pursuant to the Constitution and laws of the State of California, and located in Alameda County, California.

3. The identities and capacities of Defendants Does 1 through 25 are presently unknown to Plaintiff, and on this basis, Plaintiff sues these Defendants by fictitious names. Plaintiff will amend the Complaint to substitute the true names and capacities of the DOE Defendants when ascertained. Plaintiff is informed, believes, and thereon alleges that DOES 1 through 25 are, and were at all times relevant herein, employees and or agents of Defendant City of Albany and are responsible for the acts and omissions complained of herein. Defendants DOES 1 through 25 are sued in both their official and individual capacities.

## JURISDICTION

4. This is a civil action seeking damages and injunctive relief for acts committed by Defendant under color of state law for deprivation of and interference with the right of free speech, interference with the free exercise of religion, and violation of the Establishment Clause pursuant to 42 U.S.C. §§1983 and 1988. Jurisdiction over these claims is vested in this Court by 28 U.S.C. §§ 1331 and 1343.

## VENUE

5. Venue is proper in the Northern District of California, pursuant to 28 U.S.C. §1391 because all or substantial part of the events giving rise to this action occurred in Alameda County, California and because Defendant is located in Alameda County, in the state of California.

## STATEMENT OF FACTS

6. In 1971, Plaintiff constructed an electrically illuminated steel and Plexiglass Cross on the east side of Albany Hill in the City of Albany on real property owned by Albany Lions Club member Hubert F. Call and his wife Ruth Call. The Cross stands approximately 28 feet high, 8 feet wide and is firmly anchored in a 6 foot by four-foot permanent concrete base.

7. The Call property consisted of 1.1 acres subdivided into 18 lots.

8. The Cross can be seen from many areas in the Albany and Berkeley communities on most days. Many members of the community view the Cross daily and in so doing receive comfort, hope and inspiration.

2

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

9. The cross is illuminated at night during Christmas season and at Easter. When illuminated the Cross is visible to thousands of residents of Albany and Berkeley.

10. Almost every day the Cross is visited by members of the community who receive its message and engage in prayer, religious thought and reflection.

11. The Albany Hill Cross stands in a unique location, high on a hill in a location of natural beauty, calm, and quiet.

12. People in the community gather at the Cross to rejoice, seek solace, mourn, and grieve

13. The Cross has stood for 50 years providing the community continuity of Christian worship and faith.

14. Since its construction Plaintiff has continued the community tradition of annually holding Easter Morning religious services at the Cross on Albany hill.

15. In 1972 a developer, Interstate General Corporation, sought to develop high-rise condominiums on the western slope of Albany Hill. The City wanting a park on Albany Hill and required the developer to purchase private property, including the Call property, and convey it to the City.

16. On August 17, 1973, Hubert and Ruth Call granted to the Lions Club an easement for ingress, egress and to maintain the Lions' Cross standing on the Call property on Albany Hill.

17. Plaintiff is informed and believes and based upon such information and belief alleges that on August 17, 1973, Hubert and Ruth Call sold to Cebert Properties, Inc., an agent of Interstate General Corporation, the Albany Hill property including the property upon which the Cross was located and more particularly described as Lots 1 through 18, in Block 8, as shown on a plat of Cerrito Hill, Alameda County, California, filed in the office of the Recorder of said county on May 13, 1909, in Map Book 24, Page 70; excepting there from that portion thereof conveyed to the City of Albany, A Municipal Corporation, by Deed dated August 29, 1960, Recorded January 4, 1961, under Recorder's Series No. AS/637, Alameda County Records.

18. Plaintiff is informed and believes and based upon such information and belief alleges that Cebert Properties, Inc., and its principal, Interstate General Corporation knew the Call property

3

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

was or would be burdened by the easement for the Lions' Club Cross at the time of its purchase.

19.     Plaintiff is informed and believes and based upon such information and belief alleges that on or about August 21, 1973, the Albany City Council adopted a resolution accepting the donation of the former Call property from Cebert Properties, Inc. subject to the Lions Club's easement.

20.     Plaintiff is informed and believes and based upon such information and belief alleges that the City of Albany accepted, acknowledged, acquiesced and permitted the Albany Lions Club to exercise its easement for the Cross after the property was acquired by the City in 1973.

21.     Plaintiff is in formed and believes and upon such information and belief alleges that in November 2015, a group calling themselves the "East Bay Atheists" contacted the City of Albany objecting to the Cross resting on City property; and claimed the Cross was structurally unsound and that the utility line connected to the Cross was dangerous.

22.     Plaintiff is informed and believes and based upon such information and belief alleges that the City investigated the East Bay Atheist claims and found the Cross to be structurally sound, but the City expressed concerns regarding the safety of the electrical service line between the pole and the top of the cross because it ran through the branches of a tree.

23.     On February 1, 2016, the Albany City Council conducted a public hearing concerning the Cross. The members of the City Council unanimous expressed their desire that the Cross be removed from Albany Hill.

24.     At the public hearing Council Member Ana Rochelle Nason admitted the Lions' Cross conveys "a message, a religious message." but nonetheless concurred with the Council that the Cross should be removed from the property.

25.     On or about February 4, 2016, Councilmembers Maass and Nason attended a regular meeting of the Albany Lions Club and expressed the City's dissatisfaction with the Cross because it is a religious symbol. The councilmembers stated that the City wished the Cross removed from Albany Hill and the Lions Club's easement relinquished to the City.

26.     Plaintiff is informed and believes and upon such information and belief alleges that on September 1, 2016, having failed to obtain the Lions Club's agreement and acquiescence to the

4

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

removal of the Cross and relinquishment of the easement, Defendant caused the electrical utility service to the Lions Club's Cross to be disconnected.

27.     Plaintiff is informed and believes and upon such information and belief alleges that Defendant caused the disconnection of the electrical utility service to the Cross preventing the Lions Club from illuminating the Cross and believing that the electrical disconnection would ultimately force the Lions Club to relinquish the Cross and easement to the City.

28.     The Lions Club informed the City that pursuant to the California Public Utility Commission, the utility, PG&E, owned the powerline and that the utility was responsible for maintenance of the powerline.

29.     The City acting in excess of its authority demanded the Lions Club install an intermediate power pole to support the electrical line between the street pole and the Cross but refused the Lions permission to install such a pole or to otherwise restore electrical power to the Cross.

30.     On or about November 18, 2016, Councilmember Nason issued a public statement expressing the City's plan for removal of the cross stating, "[T]he Albany City Council (including me) would like to replace it [the cross] with something nonsectarian.  We envision a site that could still be used for Easter services and other Christian and non-religious purposes."

31.     On November 19, 2016, Councilmember Nason stated, "I am about to be sued by the Albany Lions Club for advocating that the cross on Albany Hill be replaced by a nonsectarian substitute site that would be appropriate for use by non-Christians and non-religious people as well as Christians."

32.     On December 14, 2016, the City published a public statement saying, "The presence of the cross in the public park is at odds with the inclusive values the City encourages, and the City will continue to explore all options for its removal."

33.     On or about December 14, 2016, Defendant admitted that PG&E was responsible for addressing issues related to the utility service line providing electrical power to the Lions' Cross.

34.     On December 16, 2016, after the electrical utilities had been restored to the Cross, the Albany City Council issued a public statement saying, in part, "[T]he City Council feels the

5

1   presence of the cross in the public park is inappropriate. . . The presence of the cross in the public

2   park is at odds with the inclusive values the City encourages and the City will continue to explore

3   all options for its removal."

4       35.    On September 11, 2017, the Lions Club filed an action in the United States District

5   Court for the Northern District of California, Case Number 3:17- cv-05236-WHA, alleging

6   Constitutional violations of the First and Fourteenth Amendments under 42 USC § 1983, 1988 and

7   2000cc.

8       36.    On November 11, 2017, Councilmember Peggy McQuaid issued a statement saying

9   in part, "I want to reiterate that the neither City Council nor the City of Albany endorses in any way

10  the lighting of the cross for any occasion, religious or nationalistic, or supports its continued

11  presence on public property."

12      37.    On December 8, 2017, the City of Albany filed a counterclaim for Quiet Title,

13  Trespassing, Nuisance, and Declaratory relief. These counterclaims sought to terminate the Lions

14  Clubs property rights in its easement and Cross.

15      38.    On June 15, 2018, the District Court granted summary judgment against the City as

16  to the Quiet Title, Trespassing and Nuisance causes of action. The Court found the Lion's easement

17  valid and declared in *dicta* that the City must remedy its First Amendment Violation but the Court

18  could not compel the City to do so because no plaintiff with standing had intervened in the case.

19      39.    The City appealed the District Court's decision and the 9th Circuit Court of sustained

20  the lower Court's ruling.

21      40.    The Lions Club settled its action against the city for $125,000.

22      41.    On April 12, 2018, Councilmember Nason wrote a Declaration in the *Lions Club v.*

23  *City of Albany* action stating in part, "When, as a member of the City Council in 2014, I learned

24  that atheist groups were asking that the cross be removed, I was supportive of their efforts and

25   assumed that this would be an uncomplicated matter."

26      42.    On April 6, 2000, the City Council again discussed the Albany Hill Cross. Two City

27  Councilmembers discussed the possibility of planting fast growing trees or erecting a large sign to

28  disrupt the view so that the Cross could not be seen from most of the community.

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

43. On March 3, 2021, the City of Albany provided an appraisal and offered to purchase the Lions easement for $30,000. The Lions Club rejected the offer.

44. On November 12, 2021, the City of Albany provided the Lions with a new and different appraisal and offered to purchase the Lions easement for $500,000.00

45. On March 11, 2022, the City of Albany notified the Lions that the City intended to adopt a "Resolution of Necessity," A valid Resolution of Necessity is required prior to filing an eminent domain action.

46. In a letter of March 23, 2022, addressed to the City Council, the Lions Club offered to purchase a lot or lots on which the Cross stands and thereby eliminating any potential Establishment Clause problem.

47. On April 4, 2022 Albany City Council met to consider a "Resolution of Necessity" and the Lions again verbally articulated the offer to purchase the lot or lots upon which the Cross stands.

48. At the hearing the City's attorney informed the City Council it could accept the Lions Clubs offer.

49. In the letter and at the hearing the Lions Club advised the City that in light of the Lions' a neutral alternative to eminent domain the City was showing a preference in favor of atheists and non-Christian religions against Christians and that such preference was forbidden by the Establishment Clause.

50. In the letter and at the hearing the Lions Club explained to the City that it would suffer great injury if the Cross was taken down.

51. At the hearing, after receiving comments from representatives of the Lions and members of the public the City Council enacted the Resolution of Necessity unanimously without any questions, discussion, or debate.

52. Plaintiff is informed and believes and upon such information and belief alleges the hearing on the Resolution of Necessity was a sham and that the City completely disregarded the Lions Club's rights to free exercise of religion and free speech.

53. California law provides that the power of eminent domain may be exercised to

7

acquire property for a proposed project **only if** all of the following are established: (a) The public interest and necessity require the project; (b) The project is planned or located in the manner that will be most compatible with the greatest public good and the least private injury; and (c) The property sought to be acquired is necessary for the project.

54.     The Lions Club's offer to purchase the property upon which the Cross rests eliminated any public necessity to condemn the Lions easement as the cross would then be on private property.

55.     When a neutral alternative exists and the "project" property is no longer necessary, and eminent domain is not appropriately exercised.

56.     When a neutral alternative exists, the property sought to be acquired is not necessary for the project and eminent domain is not appropriately exercised.

57.     California law also provides that eminent domain is not authorized when "the stated purpose is not a public use. The City's stated purpose was "the elimination of a potential establishment clause violation and to provide an unencumbered public park in the city of Albany..." This proposed use does not state a public purpose.

58.     On May 4, 2022, the City of Albany filed a complaint in eminent domain.

59.     On May 6, 2022, the City of Albany filed a motion for prejudgment possession of the easement seeking to allow the City to remove the Cross prior to any trial on the City's right to take and proper compensation under eminent domain.

60.     The Lions Club filed an Answer contesting the City's right to take the Lions easement and remove the Cross and asserted Ten Affirmative Defenses.

61.     On August 30, 2022, over the Lions Club's objections, the Superior Court of California for the County of Alameda granted the City's Motion for pretrial possession of the Lions' easement but stayed the effective date for removal of the Cross until after October 4, 2022.

### FIRST CAUSE OF ACTION

**Violation of the First Amendment to the United States Constitution**
**(Immediate Deprivation of Lions Right to Religious Expression 42 U.S.C. 1983, 1988)**

62.     Plaintiff incorporates and realleges each and every allegation contained in the

8

preceding paragraphs of this complaint.

63.     The City of Albany, acting under color of law, adopted a Resolution of Necessity seeking to take the Lions Club's easement and remove the Cross on Albany Hill without regard to the burden the City's action placed upon the Lions exercise of religious expression and free speech.

64.     The City of Albany, acting under color of law filed an eminent domain action seeking to take the Lions Club's easement and remove the Cross on Albany Hill without regard to the burden the City's action placed upon the Lions exercise of religious expression and free speech.

65.     Defendant, the City of Albany has obtained an order from the Superior Court of California in and for the County of Alameda granting the City **Possession of the Property Prior to Judgment** allowing the City to remove the Cross from Albany Hill after October 4, 2022.

66.     The Superior Court Order provides for "preservation of the cross in a safe location pending trial and final judgment" but does not consider the damages and irreparable injuries the Lions Club will suffer if the Cross on Albany Hill is removed either temporarily or permanently.

67.     The Albany Lions Club is a small non-profit public service organization which lacks the funding to identify, locate, rent, purchase, construct and obtain governmental approvals to create an alternate site for display of a Christian Cross immediately and for the years following the removal of the Cross.

68.     Plaintiff is informed and believes and upon such information and belief alleges that no alternate location exists whereby the Lions could quickly construct and display a cross for this coming Christmas, Easter Morning services and allow sufficient opportunity for community members to attend religious devotions at the site.

69.     Plaintiff is informed and believes and upon such information and belief alleges that any alternate site or location which would allow a Cross to be seen by the community will be extremely costly and require significant site modification and structural engineering which the Lions Club cannot afford.

70.     Plaintiff is informed and believes and upon such information and belief alleges that the neither the City of Albany nor the surrounding community are likely to issue a building permit to construct and maintain a lighted cross.

9

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

71.     Plaintiff is informed and believes and upon such information and belief alleges that public habits and traditions are easily changed such that once traditions and events are terminated and locations are moved, members of the public forget, disregard, abandon and fail to return to such traditions and events if and when they can be reinstated.

72.     Plaintiff is informed and believes and upon such information and belief alleges that a trial on Defendant City of Albany's right to take by eminent domain and, if necessary, a determination of the value of the easement interest might not occur for up to five years.

73.     Plaintiff is informed and believes and upon such information and belief alleges that the subsequent reconstruction of the Cross or the construction of the Cross at a new location, if reconstruction or movement is possible, will only exacerbate the damage and injury to the Lions during the pendency of the eminent domain action.

74.     Unless enjoined by this Court the Lions will be deprived of their rights to freely exercise the Christian religion by displaying the Cross in the Albany community, lighting and displaying the Cross at Christmas, Easter and on other special occasions resulting in irreparable injury to the Lions Club.

75.     Unless enjoined by this Court the Lions annual tradition of Easter Morning services at the Cross will be ended and future Easter observations will be hindered or abandoned resulting in irreparable to the Lions Club.

76.     Unless enjoined by this Court the Lions will be deprived of their rights to symbolically communicate the religious solace, comfort and well-being which the display of the Christian Cross conveys to residents of the community, resulting in irreparable injury to the Lions Club.

77.     Unless enjoined by this Court the Lions will suffer significant and substantial injury from the deprivation of their First Amendment rights.

**SECOND CAUSE OF ACTION**

**Violation of the First Amendment to the United States Constitution**
**(Deprivation of Free Exercise of Religious 42 U.S.C. 1983, 1988)**

78.     Plaintiff incorporates and realleges each and every allegation contained in the

10

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

preceding paragraphs of this complaint.

79.     The City's exercise of eminent domain against the Lions Club's easement and permanent removal of the Cross will permanently deprive the Lions of their ability to freely exercise their religion by displaying the Cross in the Albany community, lighting and displaying the Cross at Christmas, Easter and on other special occasions.

80.     Unless enjoined by this Court the Lions will be deprived of their rights to freely exercise the Christian religion by displaying the Cross daily resulting in irreparable injury to the Lions.

81.     Unless enjoined by this Court the Lions Club will be deprived of their right to provide a location and share a Christian Cross where people in the community may gather, rejoice, engage in religious fellowship, seek solace, mourn and grieve, resulting in irreparable injury to the Lions Club.

82.     Unless enjoined by this Court the Lions will be deprived of their rights to symbolically communicate the religious solace, comfort and well-being which the display of the Christian Cross conveys to residents of the community resulting in injury irreparable to the Lions Club.

83.     Unless enjoined by this Court the Lions will be deprived of their First Amendment Right of Free exercise of religious expression by the Defendant's removal of the Cross from Albany Hill and termination of Easter Morning Services at the Cross on Albany Hill, a religious tradition dating back over 80 years resulting in irreparable injury to the Lions Club.

## THIRD CAUSE OF ACTION

### Violation of the First Amendment to the United States Constitution
### (Freedom of Speech - 42 USC §1983, 1988 \)

84.     Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this complaint.

85.     The display of symbols such as a Christian Cross is a form of nonverbal communication intended to communicate Christian ideas, concepts, hope and comfort.

86.     The display of the Christian Cross also communicates a location where individuals

11

may communicate with their God as well as exchange thoughts and ideas of a religious nature.

87.     The Defendant is seeking to take down and remove the Cross on Albany Hill thereby preventing the Lions Club from engaging in free speech sharing Christian thoughts, ideas and communications with the public through the symbol of the Cross.

88.     Unless enjoined by this Court the Lions will be deprived of their rights to freely exercise the Christian religion by displaying the Cross in the Albany community, lighting and displaying the Cross at Christmas, Easter and on other special occasions resulting in irreparable injury to the Lions Club.

89.     Unless enjoined by this Court the Lions will be deprived of their rights to symbolically communicate the religious solace, comfort and well-being which the display of the Christian Cross conveys to residents of the community resulting in irreparable injury to the Lions Club.

90.     Unless enjoined by this Court the Lions will be deprived of their First Amendment Right of Free exercise of religious expression by the Defendant's removal of the Cross from Albany Hill and termination of Easter Morning Services at the Cross on Albany Hill, a religious tradition dating back over 80 years resulting in irreparable injury to the Lions Club.

## FORTH CAUSE OF ACTION

**Violation of the Fourteenth Amendment to the United States Constitution**
**(Violation of Equal Protection– Preference for Atheist and Non-Christian Religions**
**42 U.S.C. 1983, 1988)**

91.     Plaintiff incorporates and realleges each and every allegation contained in the preceding paragraphs of this complaint.

92.     Since 2015, Defendant, the City of Albany, has made statements and taken actions that prefer atheism and non-Christian religions to the detriment of the Albany Hill Cross, a Christian religious symbol, thereby violating the Establishment and the Free Exercise or Religion Clauses of the First Amendment.

93.     Plaintiff is informed and believes and based upon such information and belief alleges that the Defendant now seeks to permanently remove the Cross on Albany Hill simply because it is a Christian Cross and the City does not like or approve of the prominent public display of Christian

12

symbols such as the Cross.

94.     The City Council has repeatedly expressed bias and opposition to the Cross on Albany Hill merely because it is a Christian Cross.

95.     The City has failed and refused to consider a neutral, non-religion based alternative to eminent domain, which resolves any claimed Establishment Clause problem and obviates any perceived "necessity" for removal of the Cross.

96.     Defendant has summarily rejected without comment or discussion the alternatives option of allowing the small parcel of land upon which the Cross rests to be sold to private, nongovernmental, persons thereby eliminating any perceived Establishment Clause problem.

97.     In rejecting the neutral alternative of selling the property, the Defendant has relied upon unsubstantiated conclusionary statements that merely repeat statutory language and fail to state any material facts supporting the need to exercise eminent domain and remove the Cross.

98.     In rejecting the neutral alternative, the City has failed to establish its right to exercise eminent domain under California Code of Civil Procedure §1240.030  because removal of the Cross is not necessary to resolve any perceived City violation of the Establishment Clause.

99.     The City has failed to establish its right to exercise eminent domain under California Code of Civil Procedure § 1240.030 because the Resolution of Necessity as well as the hearing on the resolution of necessity are devoid of any factual discussion or consideration establishing that acquisition of the Lions Club's easement and removal of the Cross will be compatible with the greatest public good and the least private injury particularly when a neutral alternative exists.

100.     Plaintiff is informed and believes and upon such information and belief alleges that the City has improperly and unlawfully acted to remove the Cross on Albany Hill because of its expressed dislike and disapproval of the Cross as a Christian religious symbol and is clearly expressing a religious preference in favor of atheists and non-Christians.

101.     Unless enjoined by this Court Defendant, the City of Albany will take possession of the Lions' easement and remove the Cross from Albany Hill shortly after October 4, 2022, prior to any trial or adjudication of the City's right to take.

102.     Unless enjoined by this Court the Lions Club will be deprived of their rights to freely

13

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

exercise the Christian religion by displaying the Cross in the Albany community by lighting and displaying the Cross at Christmas, Easter and on other special occasions resulting in injury and damages to the Lions Club.

103. Unless enjoined by this Court the Lions Club will be deprived of their right to continue a religious tradition of over 80 years of holding Easter Morning services at a cross on Albany Hill (A tradition dating back to a time prior to the construction of the current Cross) resulting in irreparable injury to the Lions Club.

104. Unless enjoined by this Court the Lions Club will be deprived of their right to provide and share a Christian Cross where members of the community can join with the Lions in receiving the message of the Cross and engage in prayer, religious thought, and reflection, resulting in irreparable injury to the Lions Club.

105. The City's express dislike of the Cross and desire to have the Cross removed constitute a preference for atheism and non-Christian religions in violation of the Establishment Clause of the First Amendment and such preference is a violation of the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution.

106. Unless enjoined by this Court the Lions Club will be deprived of their right to provide a location and share a Christian Cross where people in the community may gather, rejoice, engage in religious fellowship, seek solace, mourn and grieve resulting in irreparable injury to the Lions Club.

107. Unless enjoined by this Court the Lions will be deprived of their rights to symbolically communicate the religious solace, comfort and well-being which the display of the Christian Cross conveys to residents of the community resulting in irreparable injury to the Lions Club.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays as follows:

1. For an injunction, enjoining and restraining Defendants, their officers, agents, servants, employees and all persons in concert or participation with them from taking, limiting, restricting, disrupting, hampering, interfering with or depriving the Albany Lions Club of the use

14

and enjoyment of the Lions Club easement for the Cross on Albany Hill;

2. For an injunction, enjoining and restraining Defendants, their officers, agents, servants, employees and all persons acting in concert or participation with them from taking, removing, deconstructing or otherwise injuring with the Cross on Albany Hill;

3. For an injunction, enjoining and restraining Defendants, their officers, agents, servants, employees and all persons in concert or participation with them from limiting, restricting, disrupting, hampering or interfering Plaintiff's free exercise of religion;

4. For preliminary and permanent injunctions, enjoining and restraining Defendants, their officers, agents, servants, employees and all persons in concert or participation with them from limiting, restricting, disrupting, hampering or interfering Plaintiff's exercise of free speech;

5. For damages for in an amount to be determined according to proof;

6. For reasonable attorney's fees pursuant to 42 U.S.C. §1988(b);

7. For costs of suit; and,

8. For such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury in this action on any issue triable of right by a jury on any and all of Plaintiff's claims.

Dated: September 21, 2022

Respectfully submitted,

/S/ Robert E. Nichols

_____

ROBERT E. NICHOLS
Attorney for Plaintiff
Lions Club of Albany, California

15

**COMPLAINT FOR DAMAGES, AND INJUNCTIVE RELIEF**

# EXHIBIT 10

2/27/23, 4:33 PM
Case 3:22-cv-05377-WHA Document 30-2 Filed 02/27/23 Page 132 of 134
Xfinity Connect RE_ A Notice of Application for RO or Extension of Stay Pending a Noticed Motion Printout

**Scott Ditfurth <scott.ditfurth@bbklaw.com>**

2/27/2023 4:16 PM

2/27/23, 4:33 PM
Xfinity Connect RE: Notice of Application for TRO or Extension of Stay Pending a Noticed Motion Printout
Case 3:22-cv-05377-WHA Document 30-2 Filed 02/27/23 Page 133 of 134

## RE: Notice of Application for TRO or Extension of Stay Pending a Noticed Motion

To ROBERT NICHOLS <renichols01@comcast.net>   Copy Andrew Saghian <andrew.saghian@bbklaw.com>

Bob

I will speak with the City about your request and get back to you after I speak with them, but no later than tomorrow.  If the Lions Club elects to file something in advance of hearing back from the City, we will note our objection that the Lions Club provided an inadequate opportunity for the City to evaluate your request.  Your phone call and email provide no basis for why any motion needs to be filed today.  Thanks.



**Scott Ditfurth**
**Partner**
**scott.ditfurth@bbklaw.com**
**T: (951) 826-8209  C: (909) 261-9853**

**www.BBKlaw.com**

---

**From:** ROBERT NICHOLS <renichols01@comcast.net>
**Sent:** Monday, February 27, 2023 1:11 PM
**To:** Scott Ditfurth <Scott.Ditfurth@bbklaw.com>
**Subject:** Notice of Application for TRO or Extension of Stay Pending a Noticed Motion

CAUTION - EXTERNAL SENDER.

---

Dear Mr. Ditfurth:

Thank you for returning my telephone call of this morning.  I telephoned you to request an extension of the stay for removing the Cross on Albany Hill from March 3, 2023, so that the Lions may file a noticed motion for preliminary injunction.

If you cannot grant the Lions a stay on the removal of the cross the Lions will be forced to seek relief from the stay imposed by Judge Alsup regarding the District Court proceedings and seek a Temporary Restraining Order to prevent removal of the cross.

My understand is that your client is not willing to grant a stay on the removal of the cross so that we can file a noticed motion. This will therefore serve as notice of our intent to seek a TRO staying removal of the cross.

I understand that you will respond to this email with and provide your written comments on this request.

Thanks you for returning my call.

Robert E. Nichols

This email and any files or attachments transmitted with it may contain privileged or otherwise confidential information. If you are not the intended recipient, or believe that you may have received this communication in error, please advise the sender via reply email and immediately delete the email you received.