UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LIONS CLUB OF ALBANY, CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF ALBANY,<br><br>Defendant. | No. C 22-05377 WHA<br><br>*Related to* C 17-05236 WHA<br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE** |

   Having lost a motion in state court, plaintiff Lions Club of Albany returns to federal court seeking a temporary restraining order to prevent the removal of its Latin cross in a public park. For the following reasons, the motion is **DENIED**.

   The relevant facts have been recounted already with which the parties are well familiar (Dkt. No. 28). In short, an electrically-illuminated Latin cross has stood 28 feet tall atop Albany Hill since 1971. The City of Albany owns the land beneath it and around it for use as a public park. The Lions Club owns an easement for ingress and egress to maintain the cross. In recent years, friction between the Lions Club and the City of Albany has arisen regarding the cross. In September 2017, the Lions Club initiated a federal lawsuit against the City for

1  alleged First Amendment violations when the City allegedly prevented the Lions Club from
2  lighting the cross during the Christmas holiday (*Lions Club v. City of Albany et. al*., 3:17-cv-
3  05236 WHA).  In an exhaustive order on cross motions for summary judgment (Dkt. No. 83 in
4  earlier case), this judge found the Lions Club had a valid easement but that the City had
5  violated the Establishment Clause when it purchased the land and left the cross standing in the
6  middle of a public park.  Although acknowledging that there was no one with standing in that
7  case requesting such relief, a dictum advised the City of possible ways to cure its ongoing
8  Establishment Clause violation, including selling a parcel encompassing the cross to a private
9  party (like the Lions Club) or condemning the cross easement through eminent domain.  That
10 case settled and a few years went by.
11        In May 2022, however, the City finally commenced an eminent domain action against
12 the Lions Club in the Superior Court of the County of Alameda.  Judge Somnath Raj Chatterjee
13 granted the City "prejudgment possession" of the Lions Club's easement, which permitted the
14 City to take down the cross and store it in a safe space pending the outcome of the eminent
15 domain trial in July 2023.  Rather than seeking relief from the California Court of Appeal, the
16 Lions Club came here, commencing this new federal lawsuit and requesting a temporary
17 restraining order to prevent the preliminary removal of the cross.  It seemed Judge Chatterjee's
18 decision had been based in part on a misunderstanding of this Court's dicta.  He appeared to
19 have treated it as an official order directing the City to take action.  So, I issued a clarifying
20 order in November 2022, stating that there had been no federal directive, only a federal dictum,
21 and temporarily enjoined the cross's removal until such time Judge Chatterjee could consider
22 the clarification.  The ultimate decision, of course, always remained entirely in the hands of
23 Judge Chatterjee — the clarification order specified that "once he rules anew, this injunction
24 shall automatically end" (Dkt. No. 28 at 6).  The clarification order further advised that "[i]f
25 the Lions Club disapproves of any ruling of Judge Chatterjee in the past or future, it should
26 take its disagreement to the California Court of Appeal."
27        In January 2023, after reviewing the clarification and hearing further argument from the
28 parties, Judge Chatterjee reaffirmed his prior order allowing prejudgment possession.  In

United States District Court
Northern District of California

February 2023, the Lions Club filed a petition for a writ of mandate to the California Court of Appeal to request a stay of the prejudgment possession grant, but it was quickly denied for technical albeit curable reasons. Instead of trying to cure the problems, the Lions Club has returned here seeking an order to keep the cross up.

This order **DENIES** the relief requested for the following reasons.

Judge Chatterjee reassessed his prior order "based on all the submissions and arguments on th[e] motion" and reaffirmed his decision to grant the City prejudgment possession of the cross easement. Jurisdiction rightly remains in the state court system. United States District Courts are not appeals courts for orders issued by state trial courts, even when those state orders allegedly violate the Constitution.

What plaintiff seeks is, in essence, a de facto appeal from Judge Chatterjee's recent order. Such a de facto appeal, however, is forbidden by the *Rooker-Feldman* doctrine. Named after the two seminal Supreme Court cases, *Rooker v. Fidelity Trust,* 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983), the *Rooker-Feldman* doctrine "prohibits a federal district court from exercising subject-matter jurisdiction over a suit that is a de facto appeal from a state court judgment" and "requires that the district court dismiss the suit for lack of subject-matter jurisdiction." *Kougasian v. TMSL*, Inc., 359 F.3d 1136, 1139 (9th Cir. 2004). Our court of appeals has provided the following formulation as guidance on how to identify what constitutes a forbidden de facto appeal:

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker–Feldman* bars subject-matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker–Feldman* does not bar jurisdiction . . . *Rooker–Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment.

*Id.* at 1140. Put differently, when a federal plaintiff is "complaining of legal injury caused by a state court judgment because of a legal error committed by the state court," the federal case offends *Rooker-Feldman*. *Noel v. Hall*, 341 F.3d 1148, 1164 (9th Cir. 2003). The doctrine

3

applies here. *First*, plaintiff asserts that Judge Chatterjee's recent reaffirmation order is erroneous because it allegedly failed to weigh competing constitutional considerations, namely free exercise of religion, refused to consider submitted declarations, and failed to account for significant hardships (Br. 5). *Second*, plaintiff requests this federal court to remedy the alleged error by the state court, stating "[t]he recent order of Judge Chatterjee reconfirming his original order . . . makes it crystal clear that the State Court will not recognize the Lions Club's constitutional rights — that only this Court will give the Lions Club a fair and impartial hearing" (Reply 12). What *Rooker-Feldman* makes crystal clear, however, is that when plaintiffs are in state court, they cannot flee to federal district court in an attempt to appeal an order from the state court. The fundamental structure of our system of dual sovereignty has long been:

> a party disappointed by a decision of a state court may seek reversal of that decision by appealing to a higher state court. A party disappointed by a decision of the highest state court in which a decision may be had may seek reversal of that decision by appeal to the United States Supreme Court. In neither case may the disappointed party appeal to a federal district court, even if a federal question is present . . .

*Noel* at 1155. Quite simply, plaintiffs must go through the correct channels of the system.

At the hearing, citing *Porter v. Jones*, the Lions Club argued that because of the First Amendment issues at play, abstention is inappropriate here, as it is an area of particular federal concern that "the federal courts are particularly well-suited to hear." 319 F.3d 483, 492 (9th Cir. 2003). That case, however, did not involve an attempt by state court litigants to de facto appeal a state court ruling. Rather, plaintiffs there originally brought suit in district court, and the decision found staying the case under *Pullman* abstention was inappropriate. *Id*. at 494. Of course, abstention and subject-matter jurisdiction are two different concepts. "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). This order finds there is no subject-matter jurisdiction under the *Rooker-Feldman* doctrine.

In so holding, this order requests (but, of course, does not order) that the state courts entertain the First Amendment argument being made by the Lions Club. Please allow the Lions Club to make its "appeal" to the California Court of Appeal, provided the Lions Club substantially complies with the appellate rules. In this connection, there is a point in the Lions Club's favor on the issue of "timeliness," namely that this judge's clarification asked Judge

Chatterjee to clarify his own order in light of the clarification described above. So, it was reasonable for the Lions Club to seek Judge Chatterjee's further ruling before seeking appellate relief. This point may help explain the timeliness question. This order expresses no view one way or the other on the merits of the free exercise of religion point — that is a matter for the state court to decide, provided the Lions Club complies with state court rules.

This order further requests (but does not order) the cross not be disturbed for **14 DAYS** to give the Lion's Club an opportunity to seek such appellate relief. Plaintiff's request for further injunction is **DENIED**. Within **14 CALENDAR DAYS**, both sides shall **SHOW CAUSE** why this civil action should not be dismissed for lack of subject-matter jurisdiction.

**IT IS SO ORDERED.**

Dated: March 9, 2023.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

5